UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PRINELL PAUL,

                              Plaintiff,

         v.                                                    5:23-cv-01385
                                                               (GTS/TWD)

ONONDAGA COUNTY DISTRICT ATTORNEY'S
OFFICE, et al.,

                              Defendants.
_____

APPEARANCES:

PRINELL PAUL
*Plaintiff, pro se*
05002328
Onondaga County Correctional Facility
6660 E. Seneca Turnpike
Jamesville, NY 13078

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## <u>ORDER AND REPORT-RECOMMENDATION</u>

### I.       INTRODUCTION

The Clerk has sent to the Court for review a complaint filed by *pro se* plaintiff Prinell

Paul pursuant to 42 U.S.C. § 1983 ("Section 1983") asserting claims against the Onondaga

County District Attorney's Office; William Fitzpatrick, District Attorney ("DA Fitzpatrick");

and Shea Maloy, Assistant District Attorney ("ADA Maloy").  (Dkt. No. 1.)  Plaintiff has not

paid the filing fee for this action and seeks leave to proceed *in forma pauperis* ("IFP").  (Dkt.

No. 6.)  Plaintiff also filed a motion for counsel.  (Dkt. No. 3.)

## II.     IFP APPLICATON[1]

Section 1915 of Title 28 of the United States Code ("Section 1915") "permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged."[2]  *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).  "Although an indigent, incarcerated individual need not prepay the filing fee at the time . . . of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts."  *Id*. (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review, Plaintiff's IFP application (Dkt. No. 6.), he has demonstrated sufficient economic need.  *See* 28 U.S.C. § 1915(a)(2).  Plaintiff has also filed the inmate authorization form required in this District.  (Dkt. No. 4.)  Accordingly, Plaintiff's IFP application is granted. (Dkt. No. 6.)

## III.    SUFFICIENCY OF THE COMPLAINT

### A.     Standard of Review

Having found Plaintiff meets the financial criteria for commencing this action IFP, and because he seeks relief from an officer or employee of a governmental entity, the Court must

---

[1]  On November 6, 2023, Plaintiff's first IFP application was denied and this action was administratively closed.  (Dkt. No. 5.)  The case was reopened on November 17, 2023, upon receipt of the required filing.  (Dkt. Nos. 6, 7.)

[2]  Section 1915(g) prohibits a prisoner from proceeding IFP where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted.  28 U.S.C. § 1915(g).  The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service.  PACER Case Locator, https://pcl.uscourts.gov/pcl/pages/search/findPartyAdvanced.jsf (last visited Jan. 31, 2024).  Based on that review, it does not appear that Plaintiff had acquired three strikes for purposes of Section 1915(g) as of the date this action was commenced.

consider the sufficiency of the allegations set forth in complain in light of  28 U.S.C. §§ 1915(e) and 1915A.  Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).[3]

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).  The term "prisoner" includes pretrial detainees.  28 U.S.C. § 1915A(c).

Additionally, when reviewing a complaint, the Court looks to the Federal Rules of Civil Procedure.  Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See* Fed. R. Civ. P. 8(a)(2).  The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of *res*

---

[3]  To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

*judicata* is applicable." *Hudson v. Artuz*, No. 95 Civ. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995)) (other citations omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

The Court will construe the allegations in the complaint with the utmost leniency. *See, e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers").

### B. Summary of the Complaint

The incidents that form the foundation for the complaint occurred while Plaintiff was confined as at Onondaga County Correctional Facility. The following facts are set forth as alleged by Plaintiff in the complaint.

Since July 2, 2023, Plaintiff has been "held unlawfully" as a New York State prisoner at the Onondaga County Correctional Facility after he "copped out on parole" and was sentenced to 14 months for a parole violation.  (Dkt. No. 1 at 1;[4] Dkt. No. 6 at 7.[5])

On June 8, 2023, Plaintiff was "denied to go" to his grand jury and ADA Maloy "held" his grand jury without him.  *Id.* at 2.  Plaintiff's lawyer, Eric Jerscske, also "denied" Plaintiff "his grand jury."  (Dkt. No. 6 at 6, 7.)  During the grand jury proceeding, ADA Maloy "lied" and "committed perjury" by stating the "gun was operable" even though "they never recovered a gun."  (Dkt. No. 1 at 2-3.)  *Id.* DA Fitzpatrick "allowed this and did not stop it."  *Id.* at 3.  Plaintiff was "indicted on a sole possession of a gun charge a C-Felony criminal possession of a weapon in the 2nd degree in front of a Grand Jury."  (Dkt. No. 6 at 6.)  On June 29, 2023, Plaintiff was arraigned on that charge and has been unlawfully held since June 2, 2023.  *Id.* at 7.

Plaintiff sent "multiple dismissal of the case due to insufficient evidence and it was ignored."  (Dkt. No. 6 at 8.)  Judge Doran has "refused to hear them" and has "denied his motion to review the grand jury minutes."  *Id.*  Plaintiff claims he is "being unlawfully held on a BS indictment" all because of ADA Maloy lying under oath."  *Id.*  DA Fitzpatrick has also "ignored" Plaintiff's written complaints.  *Id.*

---

[4]  Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office. Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

[5]  Plaintiff's complaint consists of four pages handwritten.  (Dkt. No. 1.)  Plaintiff also submitted a seven-page handwritten "complaint" with his IFP application.  (*See* Dkt. No. 6 at 5-12.)  At this early juncture, and in deference to Plaintiff's *pro se* status, rather than treat this additional complaint as a superseding pleading, the Court will consider the allegations as a supplement to his original complaint and consider them as a single pleading for purposes of initial review.

Plaintiff also claims that on June 4, 2023, he was "gang assaulted by 4 to 6 Deputies and Lieutenant Sheriff Deputy Jarvis due to the lie Asst. D.A Shae Maloy told the Grand Jury and due to the fact I was not informed to go to the Grand Jury or offered."  (Dkt. No. 1 a 3.)  During this assault, Plaintiff's tooth was "knocked out" and another was "chipped . . . all because of this false baseless indictment."  (Dkt. No. 6 at 8.)

Plaintiff's "motions and letters to press charges against the Lieutenant Deputy Sheriff Jarvis who commanded and partook in the gang assault and motion to dismiss charges" has been "denied" and "not at all heard by" ADA Maloy and DA Fitzpatrick.  *Id.*

Plaintiff alleges his constitutional rights were violated under the First, Sixth, Eighth, and Fourteenth Amendments.  (Dkt. No. 1 at 3.)  Plaintiff seeks monetary damages, injunctive relief, declaratory relief, "costs," and any "additional relief this Court deems proper and equitable." (Dkt. No. 6 at 9; Dkt. No. 1 at 4.)

### C.    Nature of Action

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States."  *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (citations omitted); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (finding that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights").  "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).  "To state a claim under § 1983, a plaintiff must allege that defendants violated plaintiff's federal rights while acting under color of state law." *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014) (citations omitted).

IV.   **ANALYSIS**

A.   **Onondaga County District Attorney's Office**

Plaintiff names Onondaga County District Attorney's Office as a defendant.  (Dkt. No. 1 at 1-2; Dkt. No. 6 at 1-2.)  Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and therefore, cannot sue or be sued.  *See Henry v. Cnty. of Nassau*, 6 F.4th 324, 336 (2d Cir. 2021) (citing *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007)).  "Courts have routinely applied this rule to conclude that 'the District Attorney's Office is not a suable entity.'"  *Harris v. Tioga Cnty.*, 663 F. Supp. 3d 212, 233 (N.D.N.Y. 2023) (quoting *Woodward v. Office of Dist. Att'y*, 689 F. Supp. 2d 655, 658 (S.D.N.Y. 2010)); *see, e.g.*, *Griffith v. Sadri*, No. 07-cv-4824, 2009 WL 2524961, at *8 (E.D.N.Y. Aug. 14, 2009) ("[A] district attorney's office is not a separate legal entity capable of being sued pursuant to § 1983."); *see also Adames v. Cnty. of Suffolk Court*, No. 18-CV-4069, 2019 WL 2107261, at *2 (E.D.N.Y. May 14, 2019) ("Plaintiff's Section 1983 claims against the Jail, the County Court, and DA's Office are not plausible because none of these entities have independent legal identities.").

Accordingly, the Court recommends that Plaintiff's Section 1983 claims against Onondaga County District Attorney's Office be dismissed with prejudice pursuant 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

B.   **DA Fitzpatrick and ADA Malay**

Plaintiff seeks to sue DA Fitzpatrick and ADA Malay in their individual and official capacities.  (Dkt. No. 1 at 1-2; Dkt. No. 6 at 1-2.)

### 1.       Individual Capacity

"It is by now well established that a state prosecuting attorney who acted within the scope of his duties in initiating and pursing a criminal prosecution is immune from a civil suit for damages under § 1983." *Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005) (citation and internal quotation marks omitted) (collecting cases).  "Because the immunity attaches to the official prosecutorial function . . .  and because the initiation and pursuit of a criminal prosecution are quintessential prosecutorial functions . . . the prosecutor has absolute immunity for the initiation and conduct of a prosecution unless he proceeds in the clear absence of all jurisdiction."  *Id*. at 237 (citations and internal quotation marks omitted).

"Prosecutorial immunity from § 1983 liability is broadly defined, covering virtually all acts, regardless of motivation, associated with the prosecutor's function as an advocate." *Kroemer v. Tantillo*, 758 F. App'x 84, 86-87 (2d Cir. 2018).  This includes "the decision to bring charges against a defendant, presenting evidence to a grand jury, and the evaluation of evidence prior to trial."  *Moye v. City of New York*, No. 11-cv- 316, 2012 WL 2569085, at *5 (S.D.N.Y. July 3, 2012) (internal quotation marks and citations omitted).

"[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused."  *Bernard v. Cnty. of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004) (citation omitted).  Immunity even extends to the falsification of evidence and the coercion of witnesses, the knowing use of perjured testimony, the deliberate withholding of exculpatory information, the making of false or defamatory statements in judicial proceedings, and conspiring to present false evidence at a criminal trial.  *See Taylor v.*

*Kavanagh*, 640 F.2d 450, 452 (2d Cir. 1981); *Imbler v. Pachtman*, 424 U.S. 409, 431 n.34

(1976); *Burns v. Reed*, 500 U.S. 478, 490 (1991); *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994).

Here, the allegations against DA Fitzpatrick and ADA Maloy arise out of acts intimately

associated with the judicial phase of the criminal process, in their role as advocates, including the

initiation of criminal proceedings against Plaintiff and presenting evidence to a grand jury.  *See*

*Ogunkoya v. Monaghan*, 913 F.3d 64, 71 (2d Cir. 2019) ("The decision to initiate prosecution,

what charges to bring, and how to perfect and consolidate those charges is a quintessential

prosecutorial function.") (citation omitted); *Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1149 (2d

Cir. 1995) (holding district attorneys absolutely immune from claim for malicious prosecution

and presentation of false evidence to the grand jury); *Hill v. City of New York*, 45 F.3d 653, 660-

61 (2d Cir. 1995) (holding prosecutors and those working under their direction absolutely

immune for initiating prosecution and for conduct before a grand jury).  Therefore, the

prosecutors are entitled to absolute prosecutorial immunity.[6]

As both DA Fitzpatrick and ADA Maloy are entitled to prosecutorial immunity, it is

recommended the complaint against them be dismissed with prejudice pursuant 28 U.S.C. §§

1915(e)(2)(B)(ii) and 1915A(b)(1).

### 2.     Official Capacity

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall

not be construed to extend to any suit in law or equity, commenced or prosecuted against one of

---

[6] Aside from this deficiency, "there is no federal constitutional right to testify before a grand jury, nor, for that matter, is there even a federal right to a grand jury in state criminal proceedings." *Franklin v. Warren Cnty. D.A.'s Off.*, No. 08-CV-0801, 2009 WL 161314, at *2 (N.D.N.Y. Jan. 21, 2009) (*sua sponte* dismissing Fourteenth Amendment claims as not cognizable under Section 1983, "as the factual basis for such claims – the lack of a preliminary hearing or appearance before the grand jury – do not implicate federal rights") (citations omitted).  As such, Plaintiff's Section 1983 claims related to the grand jury are not plausible.

the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."
U.S. CONST. amend. XI.  Regardless of the nature of the relief sought, in the absence of the
State's consent or waiver of immunity, a suit against the State or one of its agencies or
departments is proscribed by the Eleventh Amendment. *Pennhurst State Sch. & Hosp. v.
Halderman*, 465 U.S. 89, 100 (1984).  "New York State has not consented to suit in federal
court." *Abrahams v. Appellate Div. of Supreme Court*, 473 F. Supp. 2d 550, 556 (S.D.N.Y.
2007) (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d. Cir. 1977)).
Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states. *See
Quern v. Jordan*, 440 U.S. 332, 340-41 (1979).

"When a defendant is sued in his official capacity, we treat the suit as one against the
'entity of which an officer is an agent.'" *D'Alessandro v. City of New York*, 713 F. App'x 1, 8
(2d Cir. 2017) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)).  "[I]f a district
attorney or an assistant district attorney acts as a prosecutor, she is an agent of the state, and
therefore immune from suit in her official capacity." *Id.* (citing *Ying Jing Gan v. City of New
York*, 996 F.2d 522, 536 (2d Cir. 1993)); *see Rich v. New York*, No. 21-CV-3835, 2022 WL
992885, at *5 n.4 (S.D.N.Y. Mar. 31, 2022) ("[A]ny claims Plaintiff may raise against the DA
Defendants in their 'official capacity' would be precluded by immunity under the Eleventh
Amendment."); *Gentry v. New York*, No. 21-CV-0319 (GTS/ML), 2021 WL 3037709, at *6
(N.D.N.Y. June 14, 2021) (recommending dismissal of the plaintiff's claims against the
defendant assistant district attorneys in their official capacities—which were effectively claims
against the State of New York—as barred by the Eleventh Amendment), *report and
recommendation adopted*, 2021 WL 3032691 (N.D.N.Y. July 19, 2021).

As both DA Fitzpatrick and ADA Maloy are arms of the state, they are entitled to Eleventh Amendment immunity, and it is recommended that the complaint against them be dismissed with prejudice pursuant 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

**C.      Rule 10**

Throughout the complaint, Plaintiff refers to various individuals and entities who are not identified in the caption, or list of parties, as defendants.  (Dkt. No. 1 at 1, 2, 3; Dkt. No. 6 at 1, 2, 6, 7.)  Plaintiff refers to Eric Jerscske, Judge Doran, Lieutenant Sheriff Deputy Jarvis, and "4 to 6" Deputies.  (Dkt. No. 1 at 4; Dkt. No. 6 at 6, 7.)

Rule 10(a) of the Federal Rules of Civil Procedure provides that, "the title of the complaint must name all the parties."  Fed. R. Civ. P. 10(a).  A party not named in the caption of the complaint is not a party to the action.  *Abbas v. U.S.*, No. 10-CV-0141, 2014 WL 3858398, at *2 (W.D.N.Y. Aug. 1, 2014) (holding that the failure to name the individual defendants against whom the plaintiff intends to assert claims makes it "infeasible for the Court to determine which of the individual officers mentioned in the body of the complaint should be deemed to be defendants to which claims").

"If people are not also named in the caption of the [ ] complaint, they will not be defendants in the case."  *Whitley v. Krinser*, No. 06-CV-0575, 2007 WL 2375814, at *1 (W.D.N.Y. Aug. 15, 2007); *see also Robles v. Armstrong*, No. 3:03-CV-1634, 2006 WL 752857, at *1 n.1 (D. Conn. Mar. 17, 2006) ("The plaintiff refers to John Doe/Jane Doe of the Correctional Managed Health Care Program and John Doe/Jane Doe Members of the Revitalization Committee in the body of the amended complaint.  Rule 10(a) of the Federal Rules of Civil Procedure requires that all defendants be listed in the caption of the complaint.

Because the John and Jane Does are not listed in the caption of the amended complaint, they are not defendants and the court does not consider claims against them.").

In this instance, while Plaintiff claims he was "gang assaulted" on June 4, 2023, by Lieutenant Sheriff Deputy Jarvis and "4 to 6" Deputies, whereby his tooth was knocked out and another one was chipped, the aforementioned individuals are not identified as defendants in the caption of the complaint or the list of parties.  Thus, the Court will not construe the complaint to assert an excessive force claim against these individuals.  *See Gosier v. Paolozzi*, No. 9:23-CV-1135 (GTS/MJK), 2024 WL 340776, at *2 (N.D.N.Y. Jan. 30, 2024).[7]

For the same reason, the Court will not construe the complaint to include any claims or cause of actions against other private individuals referenced in the body of the complaint, Eric Jerscske or Judge Doran, as they are not identified as defendants in the caption of the complaint or list of parties.[8]

---

[7] Because better pleading could cure this deficiency, the Court recommends granting Plaintiff leave to amend.

[8] The Court notes however, insofar as Plaintiff seeks to impose liability on his attorney based on the allegations in the complaint, such claims are not plausible because attorneys, whether court appointed or privately retained, are generally not state actors for purposes of Section 1983.  *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981).  Regardless, Section 1983 claims related to grand jury proceeding are not plausible.  *See supra* note 7 and accompanying text.  Moreover, insofar as Plaintiff seeks to impose liability on Judge Doran based on the allegations in the complaint, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions.  *See Mireless v. Waco*, 502 U.S. 9, 9-10 (1991).  This is true however erroneous an act may have been, and however injurious its consequences were to the plaintiff.  *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994); *see also Stump v. Sparkman*, 435 U.S. 349, 357 (1978) ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.").  This immunity applies to state court judges who are sued in federal court pursuant to Section 1983.  *Pizzolato v. Baer*, 551 F. Supp. 355, 356 (S.D.N.Y. 1982), *aff'd sub nom. Pizzolato v. City of New York*, 742 F.2d 1430 (2d Cir. 1983).

### D.      Injunctive and Declaratory Relief

As noted, Plaintiff seeks injunctive and declaratory relief.  Among other things, Plaintiff asks the Court to issue a "preliminary and permanent injunction ordering" DA Fitzpatrick and ADA Maloy "to drop the indictment and free me immediately" and "cease their unlawful imprisonment against Paul."  (Dkt. No. 6 at 9; Dkt. No. 1 at 4.)

However, the Supreme Court has established that habeas relief is the exclusive remedy in federal court for a state prisoner seeking a release from custody.  *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (holding that when a prisoner is challenging "the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.").

Moreover, notwithstanding the deficiencies identified above, any claims seeking equitable relief likely would be subject to dismissal under abstention principles because it would require the Court to intervene in a state-court criminal proceeding.  *See, e.g.*, *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013); *see, e.g.*, *Haskell v. Cuomo*, No. 20-CV-3965, 2021 WL 861802, at *3 (E.D.N.Y. Mar. 8, 2021) ("[I]nsofar as Plaintiff seeks to have this Court dismiss the indictments against him, this Court cannot intervene in his state criminal proceedings."); *Henderson v. Fludd*, No. 19-CV-2675, 2019 WL 4306376, at *3 (E.D.N.Y. Sept. 11, 2019) (dismissing the claims "insofar as plaintiff seeks injunctive relief relating to his on-going state court criminal prosecution.").

## V.      OPPORTUNITY TO AMEND

Generally, before the Court dismisses a *pro se* complaint or any part of the complaint *sua sponte*, the Court should afford the plaintiff the opportunity to amend at least once; however,

leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Upon review, and with due regard for Plaintiff's status as a *pro se* litigant, Plaintiff's complaint is subject to dismissal pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim upon which relief may be granted. In light of his *pro se* status, the Court recommends that Plaintiff be afforded the opportunity to file an amended complaint.

Notwithstanding the recommendation that each of the named defendants be dismissed with prejudice, the Court cannot say at this early stage of the litigation that Plaintiff would be unable to amend his complaint to state a viable Section 1983 claim related to the alleged June 4, 2023, gang assault. Thus, the Court recommends providing Plaintiff the opportunity to amend his complaint against the appropriate defendants.

If the District Court adopts this recommendation, and Plaintiff chooses to amend the complaint, Plaintiff must provide a short and plain statement of the relevant facts supporting his claims against each defendant named in the amended complaint. If Plaintiff does not know the name of a defendant, he may refer to the that individual as "John Doe" or "Jane Doe" in both the caption, list of parties, and body of the amended complaint. To the greatest extent possible, Plaintiff's amended complaint should describe all relevant facts supporting his case, including the dates and times, to his best approximation. Plaintiff must also describe how each defendant's acts or omissions violated his rights. The amended pleading must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. No facts or claims from the original complaint may be

incorporated by reference, and piece pleadings are not permitted.  Plaintiff must not reassert in his amended complaint claims that the Court has dismissed with prejudice.

## VI.   MOTION FOR COUNSEL

Plaintiff has also moved for the appointment of counsel.  (Dkt. No. 3.[9])  Plaintiffs bringing civil actions have no constitutional right to the appointment of counsel.  *See, e.g.*, *United States v. Coven*, 662 F.2d 162, 176 (2d Cir. 1981).  However, the court may request an attorney to represent an indigent party.  *See* 28 U.S.C. § 1915(e)(1).  Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party.  *See Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997).  Instead, a number of factors must be carefully considered by the court in ruling upon such a motion:

> [The Court] should first determine whether the indigent's position seems likely to be of substance.  If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)) (internal quotation marks omitted).  This is not to say that all, or indeed any, of these factors are controlling in a particular case.  Rather, each case must be decided on its own facts.  *See Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (citing *Hodge*, 802 F.2d at 621).  The Court must consider the issue of appointment carefully because "every assignment of a volunteer lawyer to an undeserving client

---

[9]  Plaintiff states he has made repeated efforts to obtain a lawyer, and he "attached" the letters to the motion.  However, no letters are attached.  (Dkt. No. 3.)

deprives society of a volunteer lawyer available for a deserving cause." *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989).

At this juncture, the Court has found that the complaint fails to state a claim upon which relief may be granted.  Consequently, until plaintiff files an amended complaint that the Court accepts for service, the Court cannot make the necessary assessment of plaintiff's claims under the standards promulgated by *Hendricks*.  Therefore, Plaintiff's motion for appointment of counsel is denied without prejudice to renew.  Any renewed motion for counsel must be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector.

## VII.   CONCLUSION

Accordingly, it is hereby,

**ORDERED** that Plaintiff's IFP application (Dkt. No. 6) is **GRANTED**,[10] and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 3) is **DENIED WITHOUT PREJUDICE**; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITH PREJUDICE AND WITHOUT LEAVE TO AMEND** as against defendants Onondaga County District Attorney's Office, William Fitzpatrick, and Shea Maloy pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; and it is further

**RECOMMENDED** that Onondaga County District Attorney's Office, William Fitzpatrick, and Shea Maloy be **TERMINATED** as defendants; and it is further

---

[10]  Plaintiff is reminded that, although the application to proceed in IFP has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**RECOMMENDED** that Plaintiff be granted leave to file an amended complaint consistent with the foregoing recommendations; and it is further

**RECOMMENDED** that if the District Court adopts this Order and Report-Recommendation, Plaintiff be permitted thirty (30) days from the filing date of the District Court's Order to file an amended complaint and that if Plaintiff fails to file an amended complaint within the time allowed and without requesting an extension of time to do so, this case be **CLOSED** without further order of the Court; and it is further

**ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation on Plaintiff, along with a copy of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[11]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

**IT IS SO ORDERED.**

Dated: February 6, 2024
Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[11]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2010 WL 5185047
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

David J. CASH, Plaintiff,

v.

BERNSTEIN, MD, Defendant.

No. 09 Civ.1922(BSJ)(HBP).
|
Oct. 26, 2010.

*REPORT AND RECOMMENDATION* [1]

[1]    At the time the action was originally filed,
the Honorable Leonard B. Sand, United States
District Judge, granted plaintiff's application for *in
forma pauperis* status based on plaintiff's *ex parte*
submission (Docket Item 1). Although the present
application seeking to revoke plaintiff's *in forma
pauperis* status is non-dispositive, I address it by
way of a report and recommendation to eliminate
any appearance of a conflict between the decision
of a district judge and that of a magistrate judge.

PITMAN, United States Magistrate Judge.

**\*1**  TO THE HONORABLE BARBARA S. JONES, United
States District Judge,

I. *Introduction*
By notice of motion dated March 4, 2010 (Docket Item 11),
defendant moves pursuant to 28 U.S.C. § 1915(g) to revoke
plaintiff's *in forma pauperis* ("IFP") status on the ground that
plaintiff has previously had at least three Section 1983 actions
dismissed as frivolous, malicious or failing to state a claim
upon which relief could be granted, and has not shown that he
is in imminent danger of serious physical injury. Defendant
further seeks an order directing that the action be dismissed
unless plaintiff pays the full filing fee within thirty (30) days.
For the reasons set forth below, I respectfully recommend that
defendant's motion be granted.

II. *Facts*

Plaintiff, a sentenced inmate in the custody of the New
York State Department of Correctional Services, commenced
this action on or about January 12, 2009 by submitting his
complaint to the Court's Pro Se office. Plaintiff alleges, in
pertinent part, that he has "a non-healing ulcer that is gane
green [*sic* ]" and that defendant Bernstein "did not want
to treat the ulcer right" (Complaint, dated March 3, 3009
(Docket Item 2) ("Compl."), at 3).

The action was originally commenced against two defendants
—Dr. Bernstein and Dr. Finkelstein. The action was dismissed
as to Dr. Finkelstein because the complaint contained no
allegations whatsoever concerning Dr. Finkelstein (Order
dated February 18, 2010 (Docket Item 9)).

On March 4, 2010, the sole remaining defendant—Dr.
Bernstein—filed the current motion. Plaintiff failed to submit
a response. Accordingly, on August 20, 2010, I issued an
Order advising plaintiff that if he wished to oppose the
motion, he must submit his opposition by September 15, 2010
and that after that date I would consider the motion fully
submitted and ripe for decision (Order dated August 20, 2010
(Docket Item 15)). The only submission plaintiff has made
in response to my Order is a multi-part form issued by the
New York State Department of Correctional Services entitled
"Disbursement or Refund Request." [2] By this form, plaintiff
appears to request that the New York State Department of
Correctional Services pay the filing fee for this action. The
form is marked "Denied."

[2]    Plaintiff sent this form directly to my chambers,
and it has not been docketed by the Clerk of the
Court. The form will be docketed at the time this
Report and Recommendation is issued.

III. *Analysis*
28 U.S.C. § 1915 permits an indigent litigant to commence
an action in a federal court without prepayment of the filing
fee that would ordinarily be charged. Although an indigent,
incarcerated individual need not prepay the filing fee at the
time at the time of filing, he must subsequently pay the fee,
to the extent he is able to do so, through periodic withdrawals
from his inmate accounts. 28 U.S.C. § 1915(b); *Harris v.
City of New York,* 607 F.3d 18, 21 (2d Cir.2010). To prevent
abuse of the judicial system by inmates, paragraph (g) of
this provision denies incarcerated individuals the right to
proceed without prepayment of the filing fee if they have
repeatedly filed meritless actions, unless such an individual
shows that he or she is in imminent danger of serious

2010 WL 5185047

physical injury. *See Ortiz v. McBride,* 380 F.3d 649, 658 (2d Cir.2004) ("[T]he purpose of the PLRA ... was plainly to curtail what Congress perceived to be inmate abuses of the judicial process."); *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997). Specifically, paragraph (g) provides:

> **\*2** In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

If an inmate plaintiff seeks to avoid prepayment of the filing fee by alleging imminent danger of serious physical injury, there must be a nexus between the serious physical injury asserted and the claims alleged. *Pettus v. Morgenthau,* 554 F.3d 293, 298 (2d Cir.2009).

Section 1915(g) clearly prevents plaintiff from proceeding in this action without prepayment of the filing fee. The memorandum submitted by defendant establishes that plaintiff has had his IFP status revoked on at least four prior occasions as a result of his repeatedly filing meritless actions.

- In 2005, plaintiff commenced an action in the United States District Court for the Northern District of New York seeking to have his infected leg amputated. *Nelson[3] v. Lee,* No. 9:05–CV–1096 (NAM)(DEP), 2007 WL 4333776 (N.D.N.Y. Dec. 5, 2007). In that matter, the Honorable Norman A. Mordue, Chief United States District Judge, accepted and adopted the Report and Recommendation of the Honorable David E. Peebles, United States Magistrate Judge, that plaintiff had brought three or more prior actions that had been dismissed for failure to state a claim and that plaintiff's IFP status should, therefore, be revoked. 2007 WL 4333776 at \*1–\*2.

3  It appears that plaintiff uses the names David J. Cash and Dennis Nelson interchangeably. In his complaint in this matter, plaintiff states that the Departmental Identification Number, or DIN, assigned to him by the New York State Department of Correctional Services ("DOCS") is 94–B–0694 (Compl. at 7). DOCS inmate account records submitted by plaintiff in connection with his application for IFP status indicate that DIN 94–B–0694 is assigned to Dennis Nelson. In addition, the DOCS form described in footnote two bears the docket number of this action, but is signed in the name of Dennis Nelson and was sent in an envelope identifying the sender as Dennis Nelson. A subsequent action has been filed in this Court in which the plaintiff identifies himself as Dennis Nelson but lists his DIN as 94–B–0694, the same DIN used by plaintiff here. Finally, plaintiff has submitted nothing to controvert the assertion in defendant's papers that David Cash and Dennis Nelson are the same person. In light of all these facts, I conclude that David Cash and Dennis Nelson are both names used by plaintiff.

- In *Nelson v. Nesmith,* No. 9:06–CV–1177 (TJM)(DEP), 2008 WL 3836387 (N.D.N.Y. Aug. 13, 2008), plaintiff again filed an action concerning the medical care he was receiving for his left leg. The Honorable Thomas J. McAvoy, United States District Judge, accepted the Report and Recommendation of Magistrate Judge Peebles, and revoked plaintiff's IFP status and dismissed the action on the ground that plaintiff had previously commenced at least three actions that had been dismissed on the merits. 2008 WL 3836387 at \*1, \*7.

  - In *Nelson v. Spitzer,* No. 9:07–CV–1241 (TJM) (RFT), 2008 WL 268215 (N.D.N.Y. Jan. 29, 2008), Judge McAvoy again revoked plaintiff's IFP status on the ground that plaintiff had commenced three or more actions that constituted "strikes" under Section 1915(g) and had not shown an imminent threat of serious physical injury. 2008 WL 268215 at \*1–\*2.

  - Finally, in *Nelson v. Chang,* No. 08–CV–1261 (KAM)(LB), 2009 WL 367576 (E.D.N.Y. Feb. 10, 2009), the Honorable Kiyo A. Matsumoto, United

States District Judge, also found, based on the cases discussed above, that plaintiff had exhausted the three strikes permitted by Section 1915(g) and could not proceed IFP in the absence of a demonstration of an imminent threat of serious physical injury. 2009 WL 367576 at *2–*3.

**\*3** As defendant candidly admits, there is one case in which plaintiff's leg infection was found to support a finding of an imminent threat of serious physical injury sufficient to come within the exception to Section 1915(g). *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2008 WL 4401874 at *2 (N.D.N.Y. Sept. 24, 2008). Nevertheless, summary judgment was subsequently granted for defendants in that case, and the complaint was dismissed. Judge Mordue concluded that there was no genuine issue of fact that plaintiff had received adequate medical care for his leg wound and that the failure of the leg to heal was the result of plaintiff's own acts of self-mutilation and interference with the treatment provided. *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2009 WL 5216955 at *3–*4 (N.D.N.Y. Dec. 30, 2009).[4]

[4]   Although the form complaint utilized by plaintiff expressly asks about prior actions involving the same facts, plaintiff disclosed only the *Scoggy* action and expressly denied the existence of any other actions relating to his imprisonment (Compl. at 6).

In light of the foregoing, there can be no reasonable dispute that plaintiff has exceeded the three "strikes" allowed by Section 1915(g) and that he cannot, therefore, proceed here without prepaying the filing fee unless he demonstrates an imminent threat of serious physical injury. Plaintiff has declined to attempt to make this showing in response to defendant's motion, and the only suggestion in the record of serious physical injury is the bare statement in the complaint that plaintiff "need[s] to go back to a wound speci [a]list before the gane green [*sic* ] kills [him]" (Compl. at 5). "However, unsupported, vague, self-serving, conclusory speculation is not sufficient to show that Plaintiff is, in fact, in imminent danger of serious physical harm." *Merriweather v. Reynolds,* 586 F.Supp.2d 548, 552 (D.S.C.2008), *citing Ciarpaglini v. Saini,* 352 F.3d 328, 330 (7th Cir.2003) *and White v. Colorado,* 157 F.3d 1226, 1231–32 (10th Cir.1998); *see also Martin v. Shelton,* 319 F.3d 1048, 1050 (8th Cir.2003) (imminent danger exception to Section 1915(g) requires "specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury"). Given the plaintiff's

history, as set forth in the cases described above, I conclude that this vague statement is insufficient to support a finding that plaintiff is in imminent danger of serious physical injury.[5]

[5]

Plaintiff has sent me several letters describing his wound and its symptoms in detail, and I have no doubt that the wound is serious. However, in granting summary judgment dismissing an action last year based on the same allegations, Judge Mordue of the Northern District found that there was no genuine issue of fact that plaintiff's own conduct was responsible for the ineffectiveness of the treatment he was provided:

Furthermore, to the extent that Nelson's medical treatment was delayed, much of the delay was due to his own refusal to cooperate with medical staff and his self-mutilations. Nelson's actions to thwart the medical treatment of his wound cannot be construed as interference or indifference by anyone else.... [T]he medical treatment Nelson received complied with constitutional guarantees as it was appropriate, timely, and delayed only by Nelson's own actions.

*Nelson v. Scoggy, supra,* 2009 WL 5216955 at *4. Given plaintiff's total failure to respond to the pending motion and his failure to even deny that he is actively thwarting treatment of his wound, it would be sheer speculation for me to conclude that he is in imminent danger of a serious injury as a result of defendant's conduct.

IV. *Conclusion*

Accordingly, for all the foregoing reasons, I find that plaintiff has had three or more prior actions dismissed as being frivolous, malicious or failing to state a claim and that plaintiff's *in forma pauperis* status should, therfore, be revoked. If your Honor accepts this recommendation, I further recommend that the action be dismissed unless plaintiff pays the filing fee in full within thirty (30) days of your Honor's final resolution of this motion.

V. *OBJECTIONS*

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6(a). Such objections (and

responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Barbara S. Jones, United States District Judge, 500 Pearl Street, Room 1920, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Jones. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW. *Thomas v. Arn,* 474 U.S. 140, 155

(1985); *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 5185047

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

1998 WL 832708

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

Theodore HUDSON, Plaintiff,

v.

Christopher ARTUZ, Warden Philip
Coombe, Commissioner Sergeant
Ambrosino Doctor Manion Defendants.

No. 95 CIV. 4768(JSR).

|

Nov. 30, 1998.

**Attorneys and Law Firms**

Mr. Theodore Hudson, Great Meadow Correctional Facility,
Comstock.

Alfred A. Delicata, Esq., Assistant Attorney General, New
York.

MEMORANDUM AND ORDER

BUCHWALD, Magistrate J.

**\*1** Plaintiff Theodore Hudson filed this *pro se* action
pursuant to 42 U.S.C. § 1983 on April 26, 1995. Plaintiff's
complaint alleges defendants violated his constitutional rights
while he was an inmate at Green Haven Correctional
Facility. [1] Plaintiff's complaint was dismissed *sua sponte* by
Judge Thomas P. Griesa on June 26, 1995 pursuant to 28
U.S.C. § 1915(d). On September 26, 1995, the Second Circuit
Court of Appeals vacated the judgment and remanded the case
to the district court for further proceedings.

[1]     Plaintiff is presently incarcerated at Sullivan
        Correctional Facility.

The case was reassigned to Judge Barbara S. Jones on
January 31, 1996. Defendants moved to dismiss the complaint
pursuant to Fed.R.Civ.P. 12(c) on November 25, 1996.
Thereafter, the case was reassigned to Judge Jed S. Rakoff
on February 26, 1997. On February 26, 1998, Judge Rakoff
granted defendants' motion to dismiss, but vacated the
judgment on April 10, 1998 in response to plaintiff's motion
for reconsideration in which plaintiff claimed that he never
received defendants' motion to dismiss.

By Judge Rakoff's Order dated April 14, 1998, this case was
referred to me for general pretrial purposes and for a Report
and Recommendation on any dispositive motion. Presently
pending is defendants' renewed motion to dismiss. Plaintiff
filed a reply on July 6, 1998. For the reasons discussed
below, plaintiff's complaint is dismissed without prejudice,
and plaintiff is granted leave to replead within thirty (30) days
of the date of the entry of this order.

FACTS

Plaintiff alleges that he was assaulted by four inmates in the
Green Haven Correctional Facility mess hall on March 14,
1995. (Complaint at 4.) He alleges that he was struck with
a pipe and a fork while in the "pop room" between 6:00
p.m. and 6:30 p.m. (Complaint at 4–5.) Plaintiff contends
that the attack left him with 11 stitches in his head, chronic
headaches, nightmares, and pain in his arm, shoulder, and
back. (*Id.*) Plaintiff also states that Sergeant Ambrosino
"failed to secure [the] area and separate" him from his
attackers. (Reply at 5.) Plaintiff's claim against Warden Artuz
is that he "fail [sic] to qualify as warden." (Complaint at
4.) Plaintiff names Commissioner Coombes as a defendant,
alleging Coombes "fail [sic] to appoint a qualified warden
over security." (Amended Complaint at 5.) Plaintiff further
alleges that Dr. Manion refused to give him pain medication.
(Complaint at 5.) Plaintiff seeks to "prevent violent crimes"
and demands $6,000,000 in damages. (Amended Complaint
at 5.)

Defendants moved to dismiss the complaint, arguing that: (1)
the Eleventh Amendment bars suit against state defendants
for money damages; (2) the plaintiff's allegations fail to state
a claim for a constitutional violation; (3) the defendants are
qualifiedly immune from damages; and (4) plaintiff must
exhaust his administrative remedies before bringing this suit.

DISCUSSION

I find that plaintiff's complaint runs afoul of Rules 8 and
10 of the Federal Rules of Civil Procedure and dismiss the
complaint without prejudice and with leave to amend. Federal
Rule 8 requires that a complaint contain "a short and plain
statement of the claim showing that the pleader is entitled to
relief." Fed.R.Civ.P. 8(a)(2). The purpose of this Rule "is to
give fair notice of the claim being asserted so as to permit the

adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Powell v. Marine Midland Bank,* 162 F.R.D. 15, 16 (N.D.N.Y.1995) (quoting *Brown v. Califano,* 75 F.R.D. 497, 498 (D.D.C.1977)); *see Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988) (stating that the "principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial").

**\*2** Rule 10 of the Federal Rules of Civil Procedure requires, *inter alia,* that the allegations in a plaintiff's complaint be made in numbered paragraphs, each of which should recite, as far as practicable, only a single set of circumstances. *Moore's Federal Practice,* Vol. 2A, ¶ 10.03 (1996). Rule 10 also requires that each claim upon which plaintiff seeks relief be founded upon a separate transaction or occurrence. *Id.*[2] The purpose of Rule 10 is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading." *Sandler v. Capanna,* 92 Civ. 4838, 1992 WL 392597, \*3 (E.D.Pa. Dec.17, 1992) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure,* § 1323 at 735 (1990)).

[2]   Rule 10 states:

(b) Paragraphs; Separate Statements. All averments of claim or defense shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances; and a paragraph may be referred to by number in all succeeding pleadings. Each claim founded upon a separate transaction or occurrence and each defense other than denials shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth.

A complaint that fails to comply with these pleading rules "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of" a plaintiff's claims. *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996). It may therefore be dismissed by the court. *Id.; see also Salahuddin v. Cuomo,* 861 F.2d at 42 ("When a complaint does not comply with the requirement that it be short and plain, the court has the power to, on its own initiative, ... dismiss the complaint"). Dismissal, however, is "usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible

that its true substance, if any, is well disguised." *Id.* In those cases in which the court dismisses a *pro se* complaint for failure to comply with Rule 8, it should give the plaintiff leave to amend when the complaint states a claim that is on its face nonfrivolous. *Simmons v. Abruzzo,* 49 F.3d 83, 87 (2d Cir.1995).

In determining whether a nonfrivolous claim is stated, the complaint's allegations are taken as true, and the "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v.. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The complaint of a *pro se* litigant is to be liberally construed in his favor when determining whether he has stated a meritorious claim. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Even if it is difficult to determine the actual substance of the plaintiff's complaint, outright dismissal without leave to amend the complaint is generally disfavored as an abuse of discretion. *See Salahuddin,* 861 F.2d at 42–42; *see also Doe v. City of New York,* No. 97 Civ. 420, 1997 WL 124214, at \*2 (E.D.N.Y. Mar.12, 1997).

Here, plaintiff's *pro se* complaint fails to satisfy the requirements of Federal Rules 8 and 10. The complaint is often illegible and largely incomprehensible, scattering what appear to be allegations specific to plaintiff within a forest of headnotes copied from prior opinions. Defendants have answered with a boilerplate brief, which is perhaps all a defendant can do when faced with such a complaint. The Court is left with an insurmountable burden in attempting to make a reasoned ruling on such muddled pleadings.

**\*3** Although plaintiff's complaint is substantially incomprehensible, it appears to plead at least some claims that cannot be termed frivolous on their face. For example, plaintiff clearly alleges that inmates assaulted him and that Dr. Manion refused to provide him medical attention. He also appears to assert that Sergeant Ambrosino failed to protect him from the attack or take steps to prevent future attacks. (Plaintiff's Reply at 5). It is well established that an inmate's constitutional rights are violated when prison officials act with deliberate indifference to his safety or with intent to cause him harm. *Hendricks v. Coughlin,* 942 F.2d 109 (2d Cir.1991). It is similarly well established that an inmate's constitutional rights are violated when a prison doctor denies his request for medical care with deliberate indifference to the inmate's serious medical needs. *Estelle v. Gamble,* 429

U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Hathaway v. Coughlin,* 37 F.3d 63 (2d Cir.1994), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995). Although plaintiff provides few facts to support his allegations, I disagree with defendants' assertion that outright dismissal is appropriate because it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Defendant's Memorandum at 5 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Because plaintiff's complaint does not comply with Rules 8 and 10, it is hereby dismissed without prejudice, and plaintiff is granted leave to replead within thirty (30) days of the date of the entry of this Order. In drafting his second amended complaint, plaintiff is directed to number each paragraph and order the paragraphs chronologically, so that each incident in which he alleges a constitutional violation is described in the order that it occurred. Plaintiff is also directed to specifically describe the actions of each defendant that caused plaintiff harm, and to do so in separate paragraphs for each defendant. Plaintiff's complaint shall contain the facts specific to the incidents plaintiff alleges occurred, and not any facts relating to any case that has been decided previously by a court of law. Plaintiff's complaint shall also contain a clear statement of the relief he seeks in addition to monetary damages.

CONCLUSION

For the reasons set forth above, plaintiff's complaint is dismissed without prejudice, and plaintiff is granted leave to replead within thirty (30) days of the date of the entry of this Order.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 1998 WL 832708

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Myers v. Wollowitz, Not Reported in F.Supp. (1995)

1995 WL 236245

1995 WL 236245
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

James N. MYERS, Jr., Plaintiff,

v.

Heather WOLLOWITZ, Attorney, Defendant.

No. 95–CV–0272 (TJM) (RWS).
|
April 10, 1995.

**Attorneys and Law Firms**

James N. Myers, Jr., Troy, NY, pro se.

*DECISION AND ORDER*

McAVOY, Chief Judge.

*I. Background*

**\*1** Presently before this Court is the above-captioned plaintiff's application to proceed in forma pauperis and civil rights complaint. Plaintiff has not paid the partial filing fee required to maintain this action.

For the reasons stated below, plaintiff's complaint is dismissed pursuant to 28 U.S.C. § 1915(d) and Local Rule 5.4(a) of the General Rules of this Court as without arguable basis in law.

In his *pro se* complaint, plaintiff seems to claim that plaintiff was represented by defendant Wollowitz, a public defender for the County of Rensselaer, in a County Court proceeding. Plaintiff alleges that after a criminal proceeding in that Court, plaintiff was "sentenced to a illegal sentence." *Id.* at 2. Plaintiff contends that due to the ineffective assistance of his counsel, defendant Wollowitz, his constitutional rights were violated. For a more complete statement of plaintiff's claims, reference is made to the entire complaint filed herein.

*II. Discussion*

Consideration of whether a *pro se* plaintiff should be permitted to proceed in forma pauperis is a two-step process. First, the court must determine whether the plaintiff's economic status warrants waiver of fees and costs under 28 U.S.C. § 1915(a). If the plaintiff qualifies by economic status, the court must then consider whether the cause of action

stated in the complaint is frivolous or malicious. *Moreman v. Douglas,* 848 F.Supp. 332, 333 (N.D.N.Y.1994) (Scullin, J.); *Potnick v. Eastern State Hosp.,* 701 F.2d 243, 244 (2d Cir.1983) (per curiam).

In the present case, upon review of the plaintiff's inmate account statements, the Court has determined that plaintiff's financial status qualifies him to file or "commence" this action in forma pauperis. 28 U.S.C. § 1915(a). Turning to the second inquiry, a court may "dismiss the proceeding under 28 U.S.C. § 1915(d) if the court thereafter determines that ... the action is frivolous or malicious." *Moreman,* 848 F.Supp. at 333 (citation omitted).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). Although the court has the duty to show liberality towards *pro se* litigants, *Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990) (per curiam), and extreme caution should be exercised in ordering sua sponte dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983), there is a responsibility on the court to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action in forma pauperis. Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915(d) is appropriate to prevent abuses of the process of the court, *Harkins v. Eldredge,* 505 F.2d 802, 804 (8th Cir.1974), as well as to discourage the waste of judicial resources. *Neitzke,* 490 U.S. at 327. *See generally Moreman,* 848 F.Supp. at 334.

**\*2** 42 U.S.C. § 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights. *See, e.g., Von Ritter v. Heald,* 91–CV–612, 1994 WL 688306, \*3, 1994 U.S.Dist. LEXIS 17698, \*8–9 (N.D.N.Y. Nov. 14, 1994) (McAvoy, C.J.). A party may not be held liable under this section unless it can be established that the defendant has acted under the color of state law. *See, e.g., Rounseville v. Zahl,* 13 F.3rd 625, 628 (2d Cir.1994) (noting state action requirement under § 1983); *Wise v. Battistoni,* 92–Civ–4288, 1992 WL 380914, \*1, 1992 U.S.Dist. LEXIS 18864, \*2–3 (S.D.N.Y. Dec. 10, 1992) (same) (citations omitted).

In the present case, the sole defendant named by plaintiff is the Rensselaer County public defender who apparently represented plaintiff in the criminal proceeding discussed in

Myers v. Wolfowitz, Not Reported in F.Supp. (1995)

Case 5:23-cv-01385-GTS-TWD    Document 8    Filed 02/06/24    Page 26 of 101

1995 WL 236245

his complaint. *See* Complaint at 2. However, "[i]t is well settled that an attorney's representation of a party to a court proceeding does not satisfy the Section 1983 requirement that the defendant is alleged to have acted under color of state law...." *Wise,* 1992 WL 380914 at *1, 1992 U.S.Dist. LEXIS 18864 at *2–3; *see also D'Ottavio v. Depetris,* 91–Civ–6133, 1991 WL 206278, *1, 1991 U.S.Dist. LEXIS 13526, *1–2 (S.D.N.Y. Sept. 26, 1991).

Since the plaintiff has not alleged any state action with respect to the Section 1983 claim presently before the Court, plaintiff's complaint, as presented to this Court, cannot be supported by any arguable basis in law and must therefore be dismissed pursuant to 28 U.S.C. § 1915(d). *Neitzke,* 490 U.S. at 328.

Accordingly, it is hereby

ORDERED, that leave to proceed or prosecute this action in forma pauperis is denied, and it is further

ORDERED, that this action is dismissed pursuant to 28 U.S.C. § 1915(d) and Local Rule 5.4(a) of the General Rules of this Court as lacking any arguable basis in law, and it is further

ORDERED, that the Clerk serve a copy of this Order on the plaintiff by regular mail.

I further certify that any appeal from this matter would not be taken in good faith pursuant to 28 U.S.C. § 1915(a).

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1995 WL 236245

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

Distinguished by   In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation,   E.D.N.Y.,   August 30, 2018

2009 WL 2524961
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Jeric GRIFFITH, Plaintiff,

v.

Yas SADRI, et al., Defendants.

No. CV-07-4824 (BMC)(LB).
|
Aug. 14, 2009.

**Attorneys and Law Firms**

Jeric Griffith, Marcy, NY, pro se.

Brian Francolla, Sarah Beth Evans, New York City Law Department, New York, NY, for Defendants.

*ORDER ON REPORT AND RECOMMENDATION*

COGAN, District Judge.

 **\*1**  This case is before me on plaintiff's objections to the Report and Recommendation of Magistrate Judge Bloom, in which she denied plaintiff's motion for leave to amend his complaint to add a claim for excessive force as well as to add District Attorney Charles Hynes, the New York City Police Department ("NYPD"), the City of New York and the King's County District Attorney's Office as defendants. For the reasons set forth below, the Report and Recommendation is adopted and plaintiff's motion to amend the complaint is denied.

Under   Fed.R.Civ.P.   72(b)(3),   a   "district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." A proper objection requires reference to a specific portion of the magistrate judge's recommendation; if a party "makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." *Pall Corp. v. Entegris, Inc.,* 249 F.R.D. 48, 51 (E.D.N.Y.2008) (quoting *Barratt v.*

*Joie,* No. 96 CIV 0324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002)). Furthermore, even in a de novo review of a party's specific objections, the court ordinarily will not consider "arguments, case law and/or evidentiary material which could have been, but [were] not, presented to the magistrate judge in the first instance." *Kennedy v. Adamo,* No. 02 CV 01776, 2006 WL 3704784, at *1 (E.D.N.Y. Sept. 1, 2006) (quoting *Haynes v. Quality Markets,* No. 02-CV-250, 2003 WL 23610575, at *3 (E.D.N.Y. Sept.22, 2003)).

*BACKGROUND*

Plaintiff filed this *pro se* case pursuant to 42 U.S.C. § 1983 alleging false arrest and malicious prosecution. The original complaint states that on February 25, 2006, plaintiff "was arrested inside the Seventh Day Adventist Church" for a robbery of a nearby grocery store and describes the grand jury proceedings and trial. It further alleges that plaintiff suffers from emotional stress as a result of being held for ten months at Rikers Island Correctional Facility, awaiting trial, and that he has suffered pain and mental anguish due to the deliberate indifference and intentional misconduct of defendants.

Plaintiff's proposed amended complaint seeks to add a cause of action for excessive force and assault, alleging that he was "thrown to the ground" and that an officer "placed his hand on plaintiff's chest to check his heart rate." The proposed complaint also seeks to add four additional defendants: District Attorney Charles J. Hynes, the NYPD, Kings County District Attorney's Office and the City of New York as defendants. Defendants opposed the motion to amend on the grounds that plaintiff's amendments fail to set forth any cognizable claims.

By Report and Recommendation dated May 19, 2009, Magistrate Judge Bloom denied plaintiff's motion to amend his complaint as futile, finding that plaintiff's excessive force claim is barred by the statute of limitations and does not "relate back" to any transaction or occurrence alleged in the original complaint. Magistrate Judge Bloom also denied plaintiff's motion to add new defendants, finding that (1) District Attorney Charles Hynes is shielded from liability for the prosecutorial-related decisions of his subordinates; (2) the NYPD and Kings County District Attorney's Office are not separately suable legal entities; and (3) plaintiff failed to allege a custom, policy or practice sufficient to impose municipal liability.

**\*2** Plaintiff now objects to Magistrate Judge Bloom's Report and Recommendation. With respect to the excessive force and assault claim, plaintiff contends that he has had difficulty amending his complaint as a result of his incarceration. Plaintiff further maintains that the excessive force claim is timely because his interrogatory responses indicate that he has suffered "physical, emotional and psychological injuries" and because he described the "assault by officer defendants" in his deposition. Both submissions, plaintiff contends, put defendants on notice before the expiration of the statute of limitations, of the excessive force claim.

Plaintiff evidently concedes that the New York Police Department and the Kings County District Attorney's Office are non-suable entities but reiterates his contention that District Attorney Hynes is a principal and subject to the alleged criminal acts of his agents or subordinates. Plaintiff asserts that the cognizable official custom, policy or practice of the City of New York is to prosecute "anyone who is indicted whether there is real probable cause or not."

Defendants have not opposed plaintiff's objections.

### *DISCUSSION*

### I. Standard for Futility of Amendment

The Magistrate Judge correctly recognized that, pursuant to Rule 15(a)(2), leave to amend should be freely given, but the court may deny leave to amend in cases of futility. *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Van Buskirk v. N.Y. Times Co.,* 325 F.3d 87, 91-92 (2d Cir.2003). Case law within the Second Circuit is clear that if, upon amendment, a Rule 12(b) motion would have to be granted, the proposed amendment should be deemed futile. *See Holt v. Katy Industries, Inc.,* 71 F.R.D. 424, 427 (S.D.N.Y.1976) ("amendments to a complaint may be denied if the proposed changes fail to state a claim on which relief can be granted.") (citing *Vine v. Beneficial Finance Co.,* 374 F.2d 627, 636-7 (2d Cir.1967); *Billy Baxter, Inc. v. The Coca-Cola Co., et al.,* 47 F.R.D. 345, 346 (S.D.N.Y.1969), aff'd, 431 F.2d 183 (2d Cir.1970)); *Ganthier v. North Shore-Long Island Jewish Health Sys.,* 298 F.Supp.2d 342, 350 (E.D.N.Y.2004) (An amendment is futile "if the proposed amended complaint would be subject to 'immediate dismissal' for failure to state a claim or on some other ground.") (quoting *Jones v. New York Div. of Military & Naval Affairs,* 166 F.3d 45, 55 (2d Cir.1999)). To hold otherwise would simply engender needless duplicate litigation, first on the motion to amend

and then again on a motion to dismiss. Thus, where the proposed amendment is attacked as futile because it is legally insufficient, the Court should determine futility, in the first instance, by assessing the legal sufficiency of the proposed amendment. For this analysis, a *pro se* litigant's complaint must be read liberally and the "freely given" leave to amend standard must be applied with particular force. *Pangburn v. Culbertson,* 200 F.3d 275, 283 (2d Cir.1999).

### II. Plaintiff's New Claim for Excessive Force and Assault

**\*3** Plaintiff's new claim for excessive force and assault is futile, as it would be subject to immediate dismissal as untimely. The amended complaint alleges that during the February 25, 2006 arrest, plaintiff was thrown to the floor and that an officer "placed his hand on plaintiff's chest to check his heart rate." The Magistrate Judge correctly recognized that the applicable three year statute of limitations for an excessive force claim accrues at the time of the use of force. *Perez v. Cuomo,* No. 09-CV-1109 (SLT), 2009 WL 1046137, at \*6 (E.D.N.Y. Apr.17, 2009). The limitations period for filing an excessive force claim based on plaintiff's February 25, 2006 arrest expired on February 25, 2009. The Eastern District of New York Pro Se Office received plaintiff's proposed amended complaint in May 2009-more than two months after the statute of limitations had run. Plaintiff's excessive force claim is thus barred by the statute of limitations.

To resist this result, plaintiff, who is currently incarcerated, argues that he has had inadequate access to a typewriter and a law library and that he has been moved "from one jail to the next" over the past few months. In effect, plaintiff argues for an equitable toll of the statute of limitations.

However, equitable tolling is permitted only "in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights." *Haghpassand v. Reuters America Inc.,* 120 Fed. Appx. 859, 862, No. 04-2463, 2005 WL 195092 (2d Cir. Jan.28, 2005); *see also Walker v. Jastremski,* 430 F.3d 560 (2d Cir.2005) (declining to equitably toll the limitations period for a prisoner's § 1983 claim because the case did not present "extraordinary circumstances"). Plaintiff's described difficulties do not constitute the "extraordinary circumstances" sufficient to justify equitable tolling. *See, e.g., Cross v. McGinnis,* No. 05 Civ. 504, 2006 WL 1788955, at \*5-6 (S.D.N.Y. June 28, 2006) ("A petitioner's restricted access to library facilities does not merit equitable tolling"); *Asencio v. Senkowski,* 00 Civ. 6418, 2000 WL 1760908, at \*1-2 (S.D.N.Y. Nov.30, 2000) ("hardships associated with

prison conditions do not constitute the rare circumstances under which equitable tolling is granted.").

A slightly closer question is plaintiff's objection-supported by the letter annexed to his objection as Exhibit B-that he inquired of the Clerk of the Court of how he could amend his complaint on February 4, 2009, before the expiration of the statute of limitations. [1] That inquiry, however, does not extend the limitations period for two reasons.

[1]    As noted above, ordinarily a district court will refuse to consider evidentiary material that could have been, but was not presented to the Magistrate Judge in the first instance. *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137-38 (2d Cir.1994). However, I will assume, for purposes of addressing these objections, that since he is appearing *pro se,* plaintiff was unaware of the statute of limitations until the Magistrate issued her Report and Recommendation. Thus, plaintiff would not have presented the letter sent to the Clerk of the Court, in the first instance, to Magistrate Judge Bloom.

First, it is well-settled that unfamiliarity with the law or legal procedure is not sufficiently extraordinary to toll the statute of limitations. *Fennel v. Artuz,* 14 F.Supp.2d 374, 377 (S.D.N.Y.1997) (excuse of "being uneducated and not familiar with legal research and legal procedures" did not warrant equitable tolling because it could be made by "virtually all inmates.").

 **\*4**  Second-and perhaps more probative in this equitable balancing-any plaintiff seeking to toll the statute of limitations must show reasonable diligence in asserting his claims, in addition to exceptional or extraordinary circumstances. Plaintiff waited over a year and eight months after his complaint had been filed and after the close of discovery to first inquire about amending his complaint. He waited two years and eleven months after the incident complained of to first allege the excessive use of force and he waited over three months after his inquiry to the Clerk of the Court to file his motion to amend the complaint. Plaintiff did not exercise reasonable diligence.

Magistrate Judge Bloom's determination that plaintiff's excessive force claim does not "relate back" to his earlier complaint is also correct. The relation back test, of course, is not one of temporal proximity but rather of adequate notice to

defendants. *Rosenberg v. Martin,* 478 F.2d 520 (2d Cir.1975). Thus, it is of no moment that the arrest complained of in the original complaint occurred at the same time as the newly alleged excessive force. As the Second Circuit has previously held in a similar context, when, even under the most liberal reading, "not a word in the complaint even suggested a claim of physical assault," the defendants cannot be said to have been on notice of a claim for excessive force. *Id* . The operational facts set forth in the original complaint assert an illegal arrest and prosecution for lack of probable cause. There is not the slightest intimation that the arrest was conducted with excessive force.

Plaintiff's objection that his interrogatory responses and deposition testimony put defendant's on adequate notice of the excessive force claim is unavailing. As the Magistrate Judge recognized, the inquiry under Rule 15 is whether adequate notice has been given to the opposing party *in the original pleading. Slayton v. American Express Corp,* 460 F.3d 215, 228 (2d Cir.2006) (emphasis added).

Therefore, plaintiff's motion to amend the complaint to add an excessive force cause of action is denied as futile.

### III. Plaintiff's Proposed New Defendants

The Report and Recommendation correctly concludes that, as a matter of law, District Attorney Charles J. Hynes, the New York Police Department, Kings County District Attorney's Office and the City of New York cannot be sued in this action. Plaintiff's objections are reiterations of his original argument and have not sufficiently countered or cured any of the legal infirmities identified in the Report and Recommendation. Allowing plaintiff to add these defendants at this time would be futile. Therefore, plaintiff's motion to amend his complaint is denied.

*CONCLUSION*

The Report and Recommendation is adopted and plaintiff's motion to amend his complaint is denied.

**SO ORDERED.**

JERIC GRIFFITH, Plaintiff,

-against-

ASSISTANT DISTRICT ATTORNEY SADRI; POLICE OFFICER (PO) FREDDY LOPEZ; PO KATHY PAPPAS; PO MATHEW GALLAGER; PO JIANYUE GUO; PO FURIA; SERGEANT DANIEL HEANEY; SERGEANT CHRIS CORREA; DETECTIVE KEITH MANGAN; MS. AMY DORSEY; PO ERIC MERIZALDE; LIEUTENANT SCHLOEMAN; PO BAEZ; PO RYAN; PO ZAJAC; PO PERAZZO; CAPTAIN SCOLARO; CAPTAIN NIKAS; SERGEANT JESKE; DETECTIVE CALLAGHAN; PO CHADWICK; PO FAZAL; and PO GARCIA, individually and in their official capacities, Defendants.

### REPORT & RECOMMENDATION DENYING PLAINTIFF'S MOTION TO AMEND HIS COMPLAINT

BLOOM, United States Magistrate Judge.

**\*5** Plaintiff filed this *pro se* case on November 16, 2007, pursuant to 42 U.S.C. § 1983, alleging defendants falsely arrested and imprisoned him, maliciously prosecuted him and defamed him. [1] Complaint; Document 1. Plaintiff names Assistant District Attorney Sadri and a number of officers from the 78th Precinct as defendants. [2] Complaint at 1. Defendants filed answers, documents 17, 22, 44, and the parties conducted discovery. [3] Plaintiff now moves to amend the complaint to include an excessive force claim as well as to add District Attorney Charles Hynes, the New York City Police Department ("NYPD"), the City of New York and the King's County District Attorney's Office as defendants. [4] Proposed Amended Complaint; Document 94-2. Defendants oppose plaintiff's motion to amend. Document 95. Defendants served and filed their motion for summary judgment on May 11, 2009. Document 96. For the reasons stated below, it is respectfully recommended pursuant to 28 U.S.C. § 636(b) that plaintiff's motion to amend should be denied.

[1]   Plaintiff's complaint also alleges that defendants violated his 4th, 6th and 14th Amendment rights. Complaint at 6.

[2]   By Order dated November 28, 2007, the claims against defendants Small, Poteau and Parish were dismissed. Document 3.

[3]   The Court's December 19, 2008 Order extended the deadline for the parties to complete discovery to February 5, 2009. By endorsed Order dated March

9, 2009, the deadline was extended to March 30, 2009 for the limited purpose of providing plaintiff with his criminal trial transcript. Documents 76, 87.

[4]   Plaintiff summarily states that his 4th, 5th, 8th and 14th Amendment rights were violated without any additional supporting statements. Proposed Complaint at 10.

### DISCUSSION

### I. Standard for Motion to Amend

Under Rule 15(a), "[a] party may amend its pleading once as a matter of course ... before being served with a responsive pleading.... In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a). A motion for leave to amend should be denied only for good reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Ruotolo v. City of New York,* 514 F.3d 184, 191 (2d Cir.2008) (quoting *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (U.S.1962)). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)." *Lucente v. Int'l Bus. Machs. Corp.,* 310 F.3d 243, 258 (2d Cir.2002); *see also Crippen v. Town of Hempstead,* No. 07-CV-3478, 2009 U.S. Dist. LEXIS 24820, 2009 WL 803117 (E.D.N.Y. Mar. 25, 2009) ("The standard for futility with respect to a motion to amend under Rule 15 is identical to the standard for a Rule 12(b) (6) motion to dismiss-namely, the court must determine whether the allegations in the complaint state a claim upon which relief can be granted.") Moreover, a pro se plaintiff's complaint must be read liberally and interpreted as raising the strongest arguments it suggests. See *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004); *Daniel v. Safir,* 175 F.Supp.2d 474, 479 (E.D.N.Y.2001) (citing *Boddie v. Schnieder,* 105 F.3d 857, 860 (2d Cir.1997) (*pro se* complaints are liberally construed and held to less stringent standards than formal pleadings drafted by lawyers.)

### II. Plaintiff's Proposed Excessive Force Claim

**\*6** Plaintiff's proposed amended complaint alleges that on February 25, 2006 he was thrown on the floor and that an officer "placed his hand on plaintiff's chest to check his heart

rate." Proposed Amended Complaint at 6. Defendants argue that plaintiff's motion for leave to amend should be denied as futile because plaintiff's excessive force claim would be barred by the applicable statute of limitations. Document 95 at 1-2. The Court agrees. *See Diallo v. Williams,* No. 04 Civ. 4556(SHS)(DF), 2006 WL 156158, 2 (S.D.N.Y. January 20, 2006) (denying plaintiff's motion to amend to include 42 U.S.C § 1983 claims as futile where the claims would be barred by the statute of limitations); *see also Mackensworth v. S.S. Am. Merchant,* 28 F.3d 246, 251 (2d Cir.1994) (finding denial of leave to amend complaint proper on futility grounds because proposed claim would have been barred by the statute of limitations). The three year statute of limitations for an excessive force claim accrues at the time the use of force occurred. *Jefferson v. Kelly,* No. 06-CV-6616 (NGG)(LB), 2008 WL 1840767 at *3 (E.D.N.Y. Apr. 22, 2008) (citing *Singleton v. City of New York,* 632 F.2d 185, 191 (2d Cir.1980)); *see also Cotto v. Pabon,* No. 07 Civ. 7656(AJP), 2008 WL 4962986, 10 (S.D.N.Y. November 20, 2008) (plaintiff's excessive force claim accrued at the time of his arrest). The three year statute of limitations period for plaintiff's proposed excessive force claim based on the February 25, 2006 incident expired on February 25, 2009. Therefore plaintiff's excessive force claim is untimely.

However, where an amended complaint asserts a claim that would otherwise be untimely, it may "relate back" to the earlier complaint if it "arises out of the same transaction or occurrence as the one that the plaintiff originally alleged." *Ruiz v. Suffolk County Sheriff's Dept,* No. 03 CV 3545(DLI) (ETB), 2008 WL 4516222, 5 (E.D.N.Y. October 2, 2008) (citing *Wilson v. Fairchild Republic Co.,* 143 F.3d 733, 738 (2d Cir.1998)). The central inquiry under Rule 15 is "whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading." *Id.* (quoting *Slayton v. American Express Corp.,* 460 F.3d 215, 228 (2d Cir.2006)) (internal citations omitted). Plaintiff's original complaint states that "plaintiff was arrested inside the Seventh Day Adventist church" and describes the grand jury proceedings and trial. Liberally construing plaintiff's complaint, plaintiff fails to allege any facts regarding excessive force that would put defendants on notice of an excessive force claim. See *Fleming v. Department of Justice,* No. 90 Civ. 0896(CPS), 1993 WL 16117, 2 (E.D.N.Y. January 20, 1993) (although "the proffered amendment allege[s] facts that occurred on the same day[ ] as the alleged facts made in the original complaint, there is no 'factual nexus' between the new claims of ...

excessive force and ... illegal searches.") Furthermore, "an amendment will not relate back if it sets forth a new set of operational facts; it can only make more specific what has already been alleged." *Lederman v. Giuliani,* No. 98 Civ.2024(LMM), 2002 WL 31357810, 2 (S.D.N.Y. October 17, 2002) (citing *Pruiss v. Bosse,* 912 F.Supp. 104, 106 (S.D.N.Y.1996)). Plaintiff's allegation that some unnamed defendant threw him to the floor and touched his chest are new facts that do not relate back to plaintiff's original false arrest, malicious prosecution and defamation claims. Therefore, plaintiff's motion to amend to add a proposed excessive force claim should be denied as futile.

### III. Plaintiff's Proposed New Defendants

**\*7** Plaintiff's proposed amended complaint alleges that the "custom of being able to prosecute a defendant just because the grand jury indicted is a flawed one." Proposed Complaint at 9. Plaintiff states, "Sadri was able to get a grand jury to indict even though no proof leaning toward plaintiffs guilt was provided and even though defendant Sadri knew she could not succeed in her prosecution, she was able to continue the prosecution following a custom and policy allowed and practiced by her supervisor['s] office[ ] and the City of New York." *Id.* Plaintiff further alleges that "District Attorney Charles J. Hynes is responsible for the wrong doings of those employed in his office and the Kings County District Attorney's Office is liable for his actions and failure to train and supervise his underlings." *Id.* Plaintiff also alleges that the NYPD is responsible and liable for its employees' actions and defendant New York City is responsible for its agencies. *Id.* at 7.

### A. District Attorney Charles J. Hynes

In lawsuits brought pursuant to 42 U.S.C. § 1983, prosecutors are absolutely immune from liability for prosecutorial actions that are "intimately associated with the judicial phase of the criminal process." *Van De Kamp et al. v. Goldstein,* 555 U.S. ----, 129 S.Ct. 855, 859-60, 172 L.Ed.2d 706 (Jan. 26, 2009) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128(1976)). While plaintiff states that District Attorney Charles J. Hynes is responsible for the wrong doings of those employed in his office and that his constitutional rights were violated when defendant Sadri prosecuted him knowing she could not succeed in her prosecution, absolute immunity shields a "prosecutor's decision to bring an indictment, whether he has probable cause or not." *Coleman v. City of New York,* No. 08 Civ. 5276(DLI)(LB), 2009 WL 909742, 2 (E.D.N.Y. April 1,

2009) (citing *Buckley v. Fitzsimmons,* 509 U.S. 259, 274 n. 5, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993)); *see also Pinaud v. County of Suffolk,* 52 F.3d 1139, 1149 (2d Cir.1995) (holding district attorneys absolutely immune from claim for malicious prosecution and presentation of false evidence to the grand jury); *Ying Jing Gan v. City of New York,* 996 F.2d 522, 530 (2d Cir.1993) (the decision whether or not to commence a prosecution is protected by absolute prosecutorial immunity). "To the extent the supervision or policies concern the prosecutorial decisions for which the ADAs have absolute immunity, then those derivative allegations against supervisors must also be dismissed on the ground that the supervising district attorneys have absolute immunity for the prosecution-related decisions of their subordinates and because Section 1983 supervisory liability depends upon the existence of an underlying constitutional violation." *Bodie v. Morgenthau,* 342 F.Supp.2d 193, 205 (S.D.N.Y.2004); *see also Pinaud v. County of Suffolk.* 798 F.Supp. 913, 918 (E.D.N.Y.1992), aff'd in part, rev'd in part, 52 F.3d 1139 (2d Cir.1995) ("[W]hen the actions of a prosecutor are subject to absolute immunity, a supervising prosecuting attorney is also covered by that immunity.") Plaintiff's proposed complaint fails to state a claim against District Attorney Charles J. Hynes and therefore plaintiff's motion to amend should be denied as futile.

**B. New York Police Department and the Kings County District Attorney's Office**

**\*8** While under *Monell v. Dep't of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a municipality may be subject to suit pursuant to 42 U.S .C. § 1983, a police department, which is an administrative arm of a municipality, does not have a legal identity separate and apart from the municipality and cannot sue or be sued, *Hall v. City of White Plains,* 185 F.Supp.2d 293, 303 (S.D.N.Y.2002). *See also Jenkins v. City of New York,* 478 F.3d 76, 93 n. 19 (2d Cir.2007) (The New York City Police Department is not a suable entity); *Wray v. City of New York,* 340 F.Supp.2d 291, 303 (E.D.N.Y.2004) (quoting N.Y.C. Charter § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law.")); *Walker v. U.S. Marshals,* No. 08 Civ. 959(JG)(AKT), 2009 WL 261527, 2 (E.D.N.Y. February 4, 2009) (a municipal police department is not a suable entity "because it is a sub-unit or agency of the municipal government, which fulfills the municipality's policing function.") Similarly, a district attorney's office is not a separate legal entity capable of being

sued pursuant to § 1983. *McCray v. City of New York,* Nos. 03 Civ. 9685(DAB), 03 Civ. 9974(DAB), 03 Civ. 10080(DAB), 2007 WL 4352748 at \*26 (S.D.N.Y.2007) (citing *Michels v. Greenwood Lake Police Dept.,* 387 F.Supp.2d 361, 367 (S.D.N.Y.2005)). Therefore, plaintiff's motion to amend his complaint to add the defendants NYPD and Kings County District Attorney's Office should be denied as futile.

**C. City of New York**

In order to state a claim against a municipality or municipal agency, plaintiff must present evidence that the alleged deprivation of his constitutional rights was caused by an official custom, policy or practice. *See Monell,* 436 U.S. 658 at 691-94, 98 S.Ct. 2018, 56 L.Ed.2d 611. Plaintiff alleges that the grand jury system is a "flawed one" and defendant Sadri was able to "succeed in her prosecution," and obtain an indictment without proof after "following a custom and policy allowed and practiced by her supervisor [']s." However, these conclusory statements fail to allege a custom, policy or practice that deprived him of his constitutional rights. Therefore, plaintiff's motion to amend the complaint to add the City of New York should be denied. *See Davis v. City of New York,* No. 07 Civ. 1395(RPP), 2008 WL 2511734 at \*6 (S.D.N.Y. June 19, 2008) (holding that plaintiff failed to sufficiently plead municipal liability because "conclusory allegations that a municipality failed to train and supervise its employees is insufficient to state a *Monell* claim"); *see also Oparaji v. City of New York,* No. 96 Civ. 6233, 1997 WL 139160 at \*3 (E.D.N.Y. Mar.21, 1997) (granting defendant's motion to dismiss because plaintiff's *Monell* claim "[did] not contain a single fact in support of [the] conclusory allegation").

Moreover, even if plaintiff's proposed complaint alleged a constitutional violation, a single incident of unconstitutional activity is insufficient to infer a custom, policy or practice as required by *Monell* to impose municipal liability. *Santiago v. C.O. Campisi Shield,* F.Supp.2d 665, 675-676 (S.D.N.Y.2000) (citing *City of Oklahoma City v. Turtle,* 471 U.S. 808, 823-24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993)). Plaintiff's proposed amended complaint fails to state a claim against the City of New York and therefore his motion to amend should be denied as futile.

**CONCLUSION**

**Griffith v. Sadri, Not Reported in F.Supp.2d (2009)**
Case 5:23-cv-01385-GTS-TWD   Document 8   Filed 02/06/24   Page 33 of 101
2009 WL 2524961

**\*9** Accordingly, plaintiff's motion to amend the complaint should be denied.

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Fed.R.Civ.P., the parties shall have ten days from service of this Report to file written objectives. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the ten-day period. Failure to file a timely objection to this Report generally waives any further judicial review. *Marcella v. Capital Dist. Phyisicians' Health Plan, Inc.,* 293 F.3d 42 (2d Cir.2002); *Small v. Sec'y of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *see Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 2524961

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:23-cv-01385-GTS-TWD   Document 8   Filed 02/06/24   Page 34 of 101

Adames v. County of Suffolk Court, Not Reported in Fed. Supp. (2019)

2019 WL 2107261

2019 WL 2107261
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Willi ADAMES, Plaintiff,

v.

The COUNTY OF SUFFOLK COURT; Detective
Arnold Hillian, PID: 3362, Det. 1404; Timothy D. Sini,
District Attorney of Suffolk County; Suffolk County
Jail; and Suffolk County DA's Office, Defendants.

18-CV-4069(JS)(SIL)
|
Signed 05/14/2019

**Attorneys and Law Firms**

For Plaintiff: Willi Adames, pro se, A#046775189, Bergen
County Jail, E-44202, 160 South River Street, Hackensack,
New Jersey 07601.

For Defendants: No appearances.

MEMORANDUM & ORDER

Joanna Seybert, U.S.D.J.

**\*1** On July 12, 2018, incarcerated pro se plaintiff Willi
Adames ("Plaintiff") filed a Complaint (see, D.E. 1) in this
Court pursuant to 42 U.S.C. § 1983 ("Section 1983") against
the County of Suffolk Court ("County Court"), Detective
Arnold Hillian ("Det. Hillian"), Suffolk County District
Attorney Timothy D. Sini ("D.A. Sini"), the Suffolk County
Jail (the "Jail"), and the Suffolk County DA's Office (the
"DA's Office" and collectively, "Defendants"), accompanied
by an application to proceed in forma pauperis, (IFP Mot.,
D.E. 2). On October 1, 2018, Plaintiff filed an application for
the appointment of pro bono counsel to represent him in this
case. (Mot., D.E. 10.)

Upon review of the declaration in support of the application
to proceed in forma pauperis, the Court finds that Plaintiff
is qualified to commence this action without prepayment
of the filing fee. See 28 U.S.C. §§ 1914(a); 1915(a)(1).
Therefore, Plaintiff's request to proceed in forma pauperis is
GRANTED. However, for the reasons that follow, Plaintiff's
Section 1983 claims against the County Court, the Jail,
and the DA's Office are DISMISSED WITH PREJUDICE.

Plaintiff's Section 1983 claims against D.A. Sini and Det.
Hillian are DISMISSED WITHOUT PREJUDICE. Given
the dismissal of the Complaint, Plaintiff's application for the
appointment of pro bono counsel is DENIED.

THE COMPLAINT [1]

[1]   The following facts are taken from Plaintiff's
      Complaint and are presumed to be true for the
      purposes of this Memorandum and Order. Excerpts
      from the Complaint as reproduced here exactly
      as they appear in the original. Errors in spelling,
      punctuation, and grammar have not been corrected
      or noted.

Plaintiff's Complaint is submitted on the Court's Section 1983
Complaint form and is brief. The following facts, in their
entirety, are alleged:

> I was arrested on 12-16-2017 and I
> sat in Riverhead County Jail located
> in Suffolk County, New York. My
> case was dismissed on 5-2-2018.
> Docket # CR-025969-17SU. Log #
> 2017SU025969. I would like to be
> compensated for the time I was
> held in Suffolk County Jail for the
> false charges I've been accused of.
> I've spent 5 months incarcerated for
> something that never happened. I've
> lost my job, my place of residence
> and my reputation. All stemming from
> malicious prosecution where I've only
> time and time again stood by my
> innocents, plus mental health issues.

(Compl. ¶ II.) In the space on the Complaint form that calls
for a description of any claimed injuries, Plaintiff alleges:
"Mental health--experiencing nightmares, depression, can't
sleep, anxiety." (Compl. ¶ II.A.) Plaintiff also alleges that he
has received "mental health counseling." (Compl. ¶ II.A.) For
relief, Plaintiff seeks an unspecified sum "for pain suffering
false arrested on going mental health issues. And of course
my reputation as a man and farther." (Compl. ¶ III.)

Case 5:23-cv-01385-GTS-TWD    Document 8    Filed 02/06/24    Page 35 of 101

Adames v. County of Suffolk Court, Not Reported in Fed. Supp. (2019)

2019 WL 2107261

DISCUSSION

I. In Forma Pauperis Application

Upon review of Plaintiff's declarations in support of his application to proceed in forma pauperis, the Court finds that Plaintiff is qualified to commence this action without prepayment of the filing fees. See 28 U.S.C. § 1915(a)(1). Therefore, Plaintiff's request to proceed in forma pauperis is GRANTED.

II. Application of 28 U.S.C. § 1915

**\*2** Section 1915 of Title 28 requires a district court to dismiss an in forma pauperis complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. §§ 1915(e) (2)(B)(i)-(iii), 1915A(b). The Court is required to dismiss the action as soon as it makes such a determination. See id. § 1915A(b).

Courts are obliged to construe the pleadings of a pro se plaintiff liberally. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008); McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004). However, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L.Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed. 2d 868 (2009) (citations omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678; accord Wilson v. Merrill Lynch & Co., 671 F.3d 120, 128 (2d Cir. 2011). While " 'detailed factual allegations' " are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

III. Section 1983

Section 1983 provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom,

> or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

42 U.S.C. § 1983; accord Rehberg v. Paulk, 566 U.S. 356, 361, 132 S. Ct. 1497, 1501-02, 182 L.Ed. 2d 593 (2012). To state a claim under Section 1983, a plaintiff must " 'allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States.' " Rae v. Cty. of Suffolk, 693 F. Supp. 2d 217, 223 (E.D.N.Y. 2010) (quoting Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999)).

A. Claims Against the Jail, the County Court, and the DA's Office

Plaintiff's Section 1983 claims against the Jail, the County Court, and DA's Office are not plausible because none of these entities have independent legal identities. It is well-established that "under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." Davis v. Lynbrook Police Dep't, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002); Trahan v. Suffolk Cty. Corr. Fac., 12-CV-4353, 2012 WL 5904730, \*3 (E.D.N.Y. Nov. 26, 2012) (dismissing claims against the Suffolk County Jail because it "is an administrative arm of Suffolk County, without an independent legal identity."); see also Gollomp v. Spitzer, 568 F.3d 355, 366–67 (2d Cir. 2009) ("[E]very court to consider the question of whether the New York State Unified Court System is an arm of the State has concluded that it is ..."); Woodward v. Office of Dist. Atty., 689 F. Supp. 2d 655, 658 (S.D.N.Y. 2010) ("[T]he District Attorney's Office is not a suable entity[.]"). Thus, Plaintiff's Section 1983 claims against the Jail, the County Court and the DA's Office are not plausible and are DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. §§ 1915(e)(2)(b)(ii); 1915A(b). Given Plaintiff's pro se status and affording his Complaint a liberal construction, the Court has considered whether Plaintiff has alleged a plausible Section 1983 claim against the respective municipalities, namely Suffolk County and New York State, and finds that he has not for the reasons that follow.

Adames v. County of Suffolk Court, Not Reported in Fed. Supp. (2019)

2019 WL 2107261

### 1. Claims As Construed Against Suffolk County

**\*3** It is well-established that a municipality such as Suffolk County cannot be held liable under § 1983 on a respondeat superior theory. See Monell v. Dep't of Soc. Servs. of N.Y.C., 436 U.S. 658, 691, 98 S. Ct. 2018, 2036, 56 L.Ed. 2d 611 (1978); Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008). To prevail on a Section 1983 claim against a municipality, a plaintiff must show "that 'action pursuant to official municipal policy' caused the alleged constitutional injury." Cash v. Cty. of Erie, 654 F.3d 324, 333 (2d Cir. 2011) (quoting Connick v. Thompson, 131 S. Ct. 1350, 1359, 179 L.Ed. 2d 417 (2011)); see also Monell, 436 U.S. at 690-91. "[L]ocal governments ... may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Monell, 436 U.S. at 690-691 (internal citation omitted).

To establish the existence of a municipal policy or custom, the plaintiff must allege: (1) the existence of a formal policy which is officially endorsed by the municipality, see Connick, 131 S. Ct. at 1359; (2) actions taken or decisions made by municipal policymaking officials, i.e., officials with final decisionmaking authority, which caused the alleged violation of the plaintiff's civil rights, see Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 126 (2d Cir. 2004); Jeffes v. Barnes, 208 F.3d 49, 57 (2d Cir. 2000); (3) a practice "so persistent and widespread as to practically have the force of law," Connick, 131 S. Ct. at 1359; see also Green v. City of N.Y., 465 F.3d 65, 80 (2d Cir. 2006), or that "was so manifest as to imply the constructive acquiescence of senior policy-making officials," Patterson v. Cty. of Oneida, N.Y., 375 F.3d 206, 226 (2d Cir. 2004) (internal quotation marks and citations omitted); or (4) that "a policymaking official exhibit[ed] deliberate indifference to constitutional deprivations caused by subordinates." Cash, 654 F.3d at 334 (internal quotation marks and citations omitted); see also Okin v. Vill. of Cornwall-on-Hudson Police Dep't, 577 F.3d 415, 439 (2d Cir. 2009) (A municipal custom may be found when " 'faced with a pattern of misconduct, [the municipality] does nothing, compelling the conclusion that [it] has acquiesced in or tacitly authorized its subordinates' unlawful actions.' ") (quoting Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007) (second alteration in original)).

Here, even affording the pro se Complaint a liberal construction, there are no factual allegations from which the Court could reasonably construe a plausible Section 1983 cause of action against Suffolk County. Accordingly, Plaintiff's Complaint, as construed against Suffolk County does not allege a plausible Section 1983 claim.

### 2. Claims as Construed against New York State

Even construing Plaintiff's Section 1983 claims as against the State of New York, Plaintiff has not alleged a plausible claim. It is well-established that the Eleventh Amendment bars Plaintiff's claims seeking exclusively monetary damages against the State of New York. See Gollomp, 568 F.3d at 366 ("[T]he New York State Unified Court System is an arm of the State [ ], and is therefore protected by Eleventh Amendment sovereign immunity"); see also Quiles v. City of N.Y., No. 01–CV–10934, 2002 WL 31886117, at \*2 (S.D.N.Y. Dec. 27, 2002) ("[T]he Eleventh Amendment prohibits individuals from suing the District Attorney's Office, an arm of the state, for damages under 42 U.S.C. § 1983 arising from prosecutorial decisions.") Thus, even when construed as against the State of New York, Plaintiff has not alleged a plausible claim for relief.

### B. Claims Against Det. Hillian and DA Sini

**\*4** In order to state a claim for relief under Section 1983 against an individual defendant, a plaintiff must allege the personal involvement of the defendant in the alleged constitutional deprivation. Farid v. Elle, 593 F.3d 233, 249 (2d Cir. 2010). The Supreme Court held in Iqbal that "[b]ecause vicarious liability is inapplicable to ... [section] 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." 556 U.S. at 676, 129 S. Ct. at 1948. Thus, a "plaintiff asserting a Section 1983 claim against a supervisory official in his individual capacity" must sufficiently plead that the "supervisor was personally involved in the alleged constitutional deprivation." Rivera v. Fischer, 655 F. Supp. 2d 235, 237 (W.D.N.Y. 2009). A complaint based upon a violation under Section 1983 that does not allege the personal involvement of a defendant fails as a matter of law and should be dismissed. Johnson v. Barney, 360 F. App'x 199, 201 (2d Cir. 2010).

Here, Plaintiff's brief Complaint does not include any factual allegations sufficient to demonstrate personal involvement

Case 5:23-cv-01385-GTS-TWD   Document 8   Filed 02/06/24   Page 37 of 101

Adames v. County of Suffolk Court, Not Reported in Fed. Supp. (2019)

2019 WL 2107261

by Det. Hillian and DA Sini regarding the events alleged in the Complaint. To the extent that Plaintiff seeks to impose liability against DA Sini, it appears that Plaintiff's claim is based solely on the supervisory position he holds. Wholly absent, however, are any allegations sufficient to establish any personal involvement by DA Sini in the conduct of which Plaintiff complains. A supervisor cannot be liable for damage under Section 1983 solely by virtue of being a supervisor because there is no respondeat superior liability under Section 1983. Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003). Accordingly, because Plaintiff has not alleged any factual allegations of conduct or inaction by Det. Hillian or DA Sini, Plaintiff's claims against these Defendants are not plausible and are DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. §§ 1915(e)(2)(b)(ii); 1915A(b).

### C. Leave to Amend

Given the Second Circuit's guidance that a pro se complaint should not be dismissed without leave to amend unless amendment would be futile, Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000), the Court has carefully considered whether leave to amend is warranted here. Because the defects in Plaintiff's claims against the Jail, the County Court, and the DA's Office are substantive and would not be cured if afforded an opportunity to amend, leave to amend the Complaint against the Jail, the County Court, and the DA's Office is DENIED. However, in an abundance of caution, Plaintiff is GRANTED leave to file an Amended Complaint in order to allege any valid claims he may have against Det. Hillian, DA Sini, and/or any other proper Defendant. Any Amended Complaint shall be clearly labeled "Amended Complaint", shall bear the same docket number as this Memorandum and Order ("M&O"), 18-CV-4069(JS)(SIL), and shall be filed

within thirty (30) days from the date of this M&O. Plaintiff is cautioned that an Amended Complaint completely replaces the original. Therefore, Plaintiff must include any and all claims against any Defendant(s) he seeks to pursue in the Amended Complaint.

### CONCLUSION

For the reasons set forth above, Plaintiff's application to proceed in forma pauperis is GRANTED, however the Complaint is sua sponte DISMISSED WITH PREJUDICE as against the Jail, the County Court, and the DA's Office for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1). Plaintiff is GRANTED LEAVE TO FILE AN AMENDED COMPLAINT IN ACCORDANCE WITH THIS M&O WITHIN THIRTY (30) DAYS FROM THE DATE AT THE BOTTOM OF THIS PAGE. Given the dismissal of the Complaint, Plaintiff's application for the appointment of pro bono counsel is DENIED.

**\*5** The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is DENIED for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L.Ed. 2d 21 (1962).

SO ORDERED.

### All Citations

Not Reported in Fed. Supp., 2019 WL 2107261

---

**End of Document**                     © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 2569085
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Ronald MOYE, Plaintiff,
v.
The CITY OF NEW YORK; Sgt. Nelson Caban,
P.O. Paul Jeselon, P.O. Samuel Fontanez, P.O.
Edward Simonetti, P.O. Matthew Boorman, P.O.
Frank Papa, P.O. Tawaina O'Neal, P.O. Brennan;
P.O. John; and A.D.A. Dustin Chao, Defendants.

No. 11 Civ. 316(PGG).
|
July 3, 2012.

### *MEMORANDUM OPINION & ORDER*

PAUL G. GARDEPHE, District Judge.

**\*1** Plaintiff Ronald Moye has brought claims against the City of New York, former New York County Assistant District Attorney Dustin Chao, and eight members of the New York City Police Department ("NYPD") under 42 U.S.C. § 1983 and state law. Moye claims that Chao is liable for damages under Section 1983 and state law for malicious prosecution, abuse of process, denial of a fair trial, fabrication of evidence, conspiracy "to inflict an unconstitutional injury," and intentional and negligent infliction of emotional distress. (Am. Cmplt., Second, Third, Fourth, Fifth, Sixth, Seventh, and Ninth Claims) Chao has moved to dismiss the Amended Complaint on grounds of absolute immunity. For the reasons stated below, Chao's motion to dismiss will be granted.

### *BACKGROUND*

For purposes of deciding Defendant Chao's motion to dismiss, the Court has assumed that the following facts presented in the Amended Complaint are true.

### I. *MOYE'S ARREST*
On or about March 12, 2002, at approximately 8:00 p.m., NYPD officers Paul Jeselson and Tawaina O'Neal were stationed on the rooftop of an apartment building on the south side of West 118th Street near the corner of Morningside Avenue conducting nighttime narcotics surveillance. (Am.Cmplt.¶¶ 19, 22) Plaintiff's car was located on the north side of West 118th Street, near Manhattan Avenue. (*Id.* ¶ 21) Officer Jeselson claimed that he observed Plaintiff "extend his hand from the driver's side window and hand a small glassine" to another individual—later arrested—who, in turn, handed it to an unapprehended customer. (*Id.* ¶ 20) The Defendant officers moved in and arrested Moye in the vicinity of 352 West 118th Street. (Am.Cmplt.¶¶ 12, 25)

At the time of the arrest, and later at the 28th Precinct, the officers searched Moye and his car and found United States currency, both in Moye's possession and inside the vehicle. (*Id.* ¶ 27) The Defendant officers unnecessarily grabbed Moye, pushed him, and placed excessively tight handcuffs on him (*id.* ¶ 30), causing him to suffer bruises to and numbness in his wrists. (*Id.* ¶ 32)

Moye was indicted on March 22, 2002, for Criminal Possession of a Controlled Substance in the Third Degree. (Am. Cmplt. ¶ 35; Schwartz Decl., Ex. A) Plaintiff alleges that the police officer defendants "conspired [to give] and gave false testimony and intentionally placed false evidence before the grand jury."[1] (Am.Cmplt.¶ 35)

[1]   The Amended Complaint does not disclose what false testimony or other false evidence was laid before the grand jury. Moreover, there is no suggestion that Chao was involved in presenting false testimony or false evidence to the grand jury.

### II. *MOYE'S FIRST TRIAL*
Moye's first trial began on January 14, 2003. (Schwartz Decl., Ex. B) A.D.A. Chao introduced photographs at trial which he claimed showed the position of Plaintiff's car as it was parked on West 118th Street. (Am.Cmplt.¶ 38) Chao, Officer Jeselson, and Officer Papa were present when a District Attorney's office photographer took these photos in June 2002 from the March 12, 2002 observation point. (*Id.* ¶¶ 41–42, 44) Although the photographs were intended to convey the vantage point of the officers on the night of the arrest, they did not replicate the "nighttime conditions." (*Id.* ¶ 45) According to Moye, these photographs nonetheless showed that the officers could not have seen Plaintiff extend his hand from the driver's side window and pass a small glassine to another individual, because the driver's side could not be seen from the vantage point of the rooftop observation post, even with binoculars. (*Id.* ¶¶ 46, 48) At trial, Officer Jeselson admitted

that "he was not able to see the driver's side of the vehicles in the photographs." (*Id.* ¶ 47) Jeselson nonetheless claimed that he had been able to see Moye's hand "during the nighttime observation." (*Id.* ¶ 39) The first trial ended in a mistrial, with the jury unable to reach a verdict. (*Id.* ¶ 49)

### III. *MOYE'S SECOND TRIAL*

**\*2** In February 2003, A.D.A. Chao, Officers Brennan and Jeselson, and D.A's Office photographer Nancy Badger returned to West 118th Street to take more photographs. (*Id.* ¶ 53) They repositioned the car on an angle in order to make it appear that the officers would have been able to see Moye's hand outside the driver's side window on the night of his arrest. (*Id.* ¶¶ 55–60) With the car positioned in this fashion, Jeselson and Chao instructed Badger to take photographs of Officer Brennan's hand outside the driver's side window in an effort to simulate what the officers would have seen that night. (*Id.* ¶¶ 60–61) Jeselson and Chao then had Brennan move the car back to a curbside position "where additional photographs [were] taken at a wide angle to falsely give the impression that the close-ups were merely enlargements of the vehicle parked along the curb." (*Id.* ¶ 63)

At Moye's second trial, Chao introduced these new photographs and elicited testimony from Jeselson in which he used the photographs to support his claim that he was able to see Moye's hand from the rooftop observation post. (*Id.* ¶¶ 66, 74) However, Badger testified that, in taking the new photographs, "the defendants moved the vehicle to an angle where the hand could be visible." Defendants then returned the vehicle to its curbside position and took additional photographs that "falsely give the impression that the close-ups were merely enlargements of the vehicle parked along the curb." (*Id.* ¶¶ 81–84)

In summation, Moye's lawyer argued that Jeselson had lied about his observations from the roof and the positioning of the car in the photographs introduced by the prosecution.

(*Id.* ¶ 85) In response, A.D.A. Chao argued that Officer Jeselson had no opportunity to frame the defendant, because Chao had been present at the observation post:

"[Defense counsel] spoke about people on that roof. It's in evidence. Officer Jeselson was on that roof, the photographer Laura Badger was on the roof, and I was on that roof. Now, if he is directing something improperly, that is Officer Jeselson, well, it's in front of me.

"And if he knew he was going to get away with it when I say that's the opportunity, you know [defense counsel] talked about a lot of people losing their jobs about perjuring themselves, about the integrity of Robert Morgenthau's office. Well, if Officer Jeselson thought he was going to get away with it—

"[DEFENSE counsel]: Mr. Chao is vouching for his witness.

"THE COURT: Overruled.

"[ADA] CHAO: If Officer Jeselson thought he was going to get away with it with me present, all that talk about firing, that should be me because I'm prosecuting this case, not Officer Jeselson.

"[DEFENSE counsel]: That's objectionable vouching for his witness.

"THE COURT: Overruled.

"[DEFENSE counsel]: Your Honor, he is making himself an unsworn witness for the credibility of his police officer.

**\*3** "THE COURT: Overruled.

"[ADA] CHAO: Ladies and gentlemen, Mr. Morgenthau should fire me if Officer Jeselson thinks he is going to be able to say that in court, lie to you, when the person who is standing right next to him on that roof is me. Well, that lies with me.

"So what's the explanation? If there's no motive, no opportunity for why Ms. Badger remembers it differently. Well, there's evidence that you heard the officer was on the roof. Evidence that you heard I was on the roof also. I have no other answer other than the fact that she is mistaken....

"[DEFENSE counsel]: He is vouching for his witness using the pronoun I.

"THE COURT: Members of the jury, you can accept his argument as to what happened on the roof. It's his argument based upon the evidence as he recalls it."

*People v. Move,* 52 A.D.3d 1, 5 (1st Dep't 2008); *see also* (Am. Cmplt. ¶¶ 87–92.

Moye was convicted at his second trial and sentenced to four-and-a-half to nine years' imprisonment. (Am.Cmplt.¶¶ 13–14)

#### IV. *THE CHARGES AGAINST MOYE ARE DISMISSED*

On appeal, the First Department vacated the conviction in a 3–2 decision. *People v. Move,* 52 A.D.3d 1. The First Department found that "the prosecutor improperly vouched for his witness and interjected his personal integrity and the veracity of the District Attorney's office into his summation to support the credibility of Police Office Jeselson." *Id. at 6.* The New York Court of Appeals agreed that Chao had engaged in impermissible vouching for his witness, affirmed the reversal of the conviction, and remanded the case to Supreme Court. *People v. Move,* 12 N.Y.3d 743, 744 (2009). After remand, the New York County District Attorney's Office dismissed the case on October 21, 2009. (Am.Cmplt.¶¶ 16, 37)

#### DISCUSSION

#### I. *IMMUNITY*

Chao argues that the claims against him must be dismissed because his actions are protected by absolute immunity. [2]

[2]
> Because Moye sues Defendant Chao in his individual capacity (Am .Cmplt.¶ 9), his claims are not barred by the Eleventh Amendment. *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993) ("To the extent that ... a [Section 1983] claim is asserted against a [state official] in his individual capacity, he may assert privileges of absolute or qualified immunity but may not assert immunity under the Eleventh Amendment.").

Section 1983 "purports to create a damages remedy against every state official for the violation of any person's federal constitutional or statutory rights." *Kalina v. Fletcher,* 522 U .S. 118, 123 (1997). In order to state a claim under Section 1983, a plaintiff must show that the conduct complained of was committed by a person or entity acting under color of state law, and that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution. *Newton v. City of New York,* 566 F.Supp.2d 256, 269–70 (S.D.N.Y.2008) (citing *Palmieri v. Lynch,* 392 F.3d 73, 78 (2d Cir.2004)).

"Although section 1983 imposes liability upon every person who deprives another of a constitutional right under color of state law, the doctrines of absolute and qualified immunity shield prosecutors and law enforcement officers from liability related to their official acts." *Day v. Morgenthau,* 909 F.2d 75, 77 (2d Cir.1990). While Section 1983 does not explicitly provide for such immunity, the Supreme Court and Second Circuit have ruled that "Congress did not intend § 1983 to abrogate immunities 'well grounded in history and reason.' " *Pinaud v. Cnty. of Suffolk,* 52 F.3d 1139, 1147 (2d Cir.1995) (quoting *Buckley v. Fitzsimmons,* 509 U.S. 259, 268 (1993)).

**\*4** As the Second Circuit has explained:

> Such immunities are of two types: absolute and qualified. *Buckley v. Fitzsimmons,* 509 U.S. 259, 268, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). Absolute immunity is reserved for officials who perform "special functions" and deserve absolute protection from damages liability. Among these are prosecutors, and persons working under their direction, when they function as advocates for the state in circumstances "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman,* 424 U.S. at 430–31. *See also Hill v. City of New York,* 45 F.3d at 660 (extending absolute prosecutorial immunity to persons acting under the direction of prosecutors in performing functions closely tied to the judicial process).

> By contrast, only qualified immunity applies to law enforcement officials, including prosecutors, when they perform investigative functions. *Buckley v. Fitzsimmons,* 509 U.S. at 273. ("When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.") (internal quotation marks and citations omitted); *accord Zahrey v. Coffey,* 221 F.3d 342, 349 (2d Cir.2000).

*Bernard v. Cnty. of Suffolk,* 356 F.3d 495, 502–03 (2d Cir.2004).

Absolute immunity extends only so far as necessary to protect the judicial process. *Hill v. City of New York,* 45 F.3d 653, 660 (2d Cir.1995). Nonetheless,

> [t]he doctrine of absolute prosecutorial immunity creates a formidable obstacle for a plaintiff seeking to maintain a civil rights action against a district attorney, as it provides that "prosecutors are absolutely immune from liability under § 1983 for their conduct in 'initiating a prosecution and in presenting the State's case,' insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.' " *Burns v. Reed,* 500 U.S. 478, 486, 111

S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991) (quoting *Imbler,* 424 U.S. at 430–31, 96 S.Ct. at 995).

*Pinaud,* 52 F.3d at 1147. The Court addresses the parameters of absolute prosecutorial immunity below.

**A. *Legal Standard for Absolute Prosecutorial Immunity***
A prosecutor who, as here, is sued in his or her individual capacity, may assert absolute or qualified immunity as a defense. Courts may grant a Rule 12(b)(6) motion to dismiss on grounds of absolute immunity where the facts establishing the defense appear in the complaint. *Deronette v. City of New York,* No. 05 CV 5275(SJ), 2007 WL 951925, at *4 (E.D.N.Y. Mar. 27, 2007) (citing *Hill,* 45 F.3d at 663) (absolute immunity may be decided on a Rule 12(b)(6) motion where facts establishing the defense may be "gleaned from the complaint")). Moreover, district courts are encouraged to determine the applicability of an absolute immunity defense at the earliest appropriate stage, and preferably before discovery.[3] *Id.* (citing *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)); *United States v. Colbert,* No. 87 Civ. 4789, 1991 WL 183376 at *4 (S.D.N.Y. Sept. 11, 1991). This approach is appropriate given that "absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." *Imbler,* 424 U.S. at 419 n. 13. "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Buckley,* 509 U.S. at 270 (1993) (citing *Burns,* 500 U.S. at 486).

[3]    District courts likewise evaluate the applicability of absolute immunity before assessing whether a plaintiff has sufficiently alleged a constitutional violation. *Pinaud,* 52 F.3d at 1148 n. 4 (citing *Buckley,* 509 U.S. at 261).

**\*5** Prosecutorial immunity to Section 1983 claims is grounded in the immunity to tort liability that prosecutors enjoy under the common law. *Flagler v. Trainor,* 663 F.3d 543, 546 (2d Cir.2011) That immunity arises from the "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Id.* (citing *Imbler,* 424 U.S. at 423). Immunity protects the proper functioning of the prosecutor's office by insulating the exercise of prosecutorial discretion. *Kalina,* 522 U.S. at 125. Prosecutors are therefore "absolutely immune from suit only when acting as advocates and when

their conduct involves the exercise of discretion." *Flagler,* 663 F.3d at 546 (citing *Kalina,* 522 U.S. at 127).

The Supreme Court addressed the question of absolute immunity for prosecutors in *Imbler,* where it held that prosecutors are entitled to absolute immunity for damage suits under Section 1983 for all acts "intimately associated with the judicial phase of the criminal process," including "initiating a prosecution and ... presenting the State's case [at trial]." *Imbler,* 424 U.S. at 430.

Later, in *Buckley,* 509 U.S. at 273, the Supreme Court considered whether the prosecutor defendants were entitled to absolute immunity for "investigative" work they performed well before seeking an indictment, involving an effort to connect the plaintiff to a bootprint left at a murder scene. Although the Court rejected the prosecutors' claim for absolute immunity, the Court cautioned that it had

> not retreated ... from the principle that acts undertaken by a prosecutor preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity. Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made.

*Buckley,* 509 U.S. at 273 (internal citations and quotations omitted).

Whether a prosecutor has absolute immunity for a particular act thus "depends principally on the nature of the function performed, not on the office itself." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 530 (2d Cir.1993). "Such functions include the decision to bring charges against a defendant, presenting evidence to a grand jury, and the evaluation of evidence prior to trial." *Johnson v. City of New York,* No. 00 CIV 3626(SHS), 2000 WL 1335865, at *2 (S.D.N.Y. Sept. 15, 2000) (citing *Kalina,* 522 U.S. at 126). Furthermore, this "application of immunity is not limited to the duties a

prosecutor performs in the courtroom." *Dory v. Ryan,* 25 F.3d 81, 83 (2d Cir.1994) (citing *Buckley,* 509 U.S. at 272).

**\*6** "[A] district attorney is [not only] absolutely immune from civil liability for initiating a prosecution and presenting the case at trial," but also "immune for conduct in preparing for those functions; for example, evaluating and organizing evidence for presentation at trial or to a grand jury, or determining which offenses are to be charged." *Hill,* 45 F.3d at 661 (citations omitted). Prosecutorial immunity from Section 1983 damages liability is broadly defined, covering "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Dory,* 25 F.3d at 83. The Second Circuit has been "mindful of the Supreme Court's admonition that 'the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom.... Preparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence.' " *Barbera v. Smith,* 836 F.2d 96, 100 (2d Cir.1987) (quoting *Imbler,* 424 U.S. at 431 n. 33); *see also Barrett v. United States,* 798 F.2d 565, 571 (2d Cir.1986) ("The absolute immunity accorded to government prosecutors encompasses not only their conduct of trials but all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation....")

Because absolute immunity extends broadly to all acts committed by a prosecutor in his or her role as an advocate, it protects prosecutors against claims that they conspired to, or actually presented, fabricated evidence at trial:

> absolute immunity protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate. This would even include ... allegedly conspiring to present false evidence at a criminal trial. The fact that such a conspiracy is certainly not something that is properly within the role of a prosecutor is immaterial, because "[t]he immunity attaches to his function, not to the manner in which he performed it." *Barrett v. United States,* 798 F.2d 565, 573 (2d Cir.1986); *see also Daloia v. Rose,* 849 F.2d 74, 75 (2d Cir.1988) (*per curiam* ) (holding ... that prosecutor was immune from § 1983 liability for knowingly presenting false testimony). As much as the idea of a prosecutor conspiring to falsify evidence [is disturbing] ... there is a greater societal goal in protecting the judicial process by preventing perpetual suits against prosecutors for the

performance of their duties. *See Imbler,* 424 U.S. at 426–428.

*Dory,* 25 F.3d at 83. [4]

[4]    By contrast, discretionary prosecutorial actions that are not "intimately associated with the judicial phase of the criminal process" are entitled only to qualified immunity. *See Buckley,* 509 U.S. at 270–75; *Burns,* 500 U.S. at 491–95. A prosecutor is "absolutely immune from liability under section 1983 [only] for acts 'within the scope of [their] duties in initiating and pursuing a criminal prosecution.' " *Day,* 909 F.2d at 77 (quoting *Imbler,* 424 U.S. at 410). Thus, when a prosecutor acts in an investigative or administrative capacity, absolute immunity is not available. *Hill,* 45 F.3d at 661. For example, immunity is not available when a prosecutor releases information or evidence to the media, *Buckley,* 509 U.S. at 276–78; authorizes or directs the use of wiretaps, *Powers v. Coe,* 728 F.2d 97, 103 (2d Cir.1984); or performs the functions normally performed by the police, such as assisting in the execution of a search or seizure. *See Buckley,* 509 U.S. at 273. The Supreme Court has also withheld absolute immunity for conduct unrelated to advocacy, such as giving legal advice, *Burns,* 500 U.S. at 492–96, or acting as a complaining witness. *Kalina,* 522 U.S. 118, 129–31; *see also Ying Jing Gan,* 996 F.2d at 533 (finding that prosecutor was not entitled to absolute immunity where he allegedly exposed a witness to retaliation and failed to provide adequate protection for the witness).

Although courts have declined to establish a bright-line test based on the stage of a criminal proceeding, "absolute prosecutorial immunity has generally been found in cases where some type of formal proceeding had been commenced or was being commenced by the conduct at issue." *Tabor v. New York City,* No. 11 CV 0195 FB, 2012 WL 603561, at *4 (E.D.N.Y.2012) (citing *Barbera v. Smith,* 836 F.2d at 99. In contrast, where formal proceedings have not begun and the prosecutor is acting in an investigative capacity—such as by providing the police with legal advice on investigative techniques—qualified immunity generally applies. *Id.* While the Supreme Court has noted that a prosecutor is not absolutely immune for every action taken after probable cause has been established, *see Buckley,* 509 U.S. at 274 n. 5, "the Court's treatment of the issue demonstrates that

the existence of probable cause with respect to a particular suspect is a significant factor to be used in evaluating the advocatory nature of prosecutorial conduct." *Cousin v. Small,* 325 F.3d 627, 633 (5th Cir.2003); *accord Barbera,* 836 F.2d at 99 (noting "that in each of the cases we have reviewed where absolute immunity was upheld, some type of formal proceeding had been commenced or was being commenced by the challenged acts"); *see also DiBlasio v. Novello,* 344 F.3d 292, 300–01 (2d Cir.2003) ( "In assessing whether absolute immunity should attach to a prosecutor ... we have focused on the timing of the conduct at issue....") Thus, in interpreting *Buckley,* the Second Circuit has distinguished between "preparing for the presentation of an existing case," on the one hand, and attempting to "furnish evidence on which a prosecution could be based," on the other hand, with only the former entitling a prosecutor to absolute immunity. *Smith v. Garretto,* 147 F.3d 91, 94 (2d Cir.1998).

**\*7** In assessing a prosecutor's claim of absolute immunity, the court employs a "functional approach," *see, e.g., Burns,* 500 U.S. at 486, which looks to "the nature of the function performed, not the identity of the actor who performed it." *Forrester v. White,* 484 U.S. 219, 229 (1988); *see also Van de Kamp v. Goldstein,* 555 U.S. 335, 335–336 (2009) ("To decide whether absolute immunity attaches to a particular kind of prosecutorial activity, one must take account of ... 'functional' considerations"). The court must inquire whether the actions in question are part of a prosecutor's traditional function and whether they are closely associated with the judicial process. *Blouin v. Spitzer,* 356 F.3d 348, 357 (2d Cir.2004) (a court must examine the "nature of the function performed" in assessing whether absolute immunity will attach.); *Doe v. Phillips,* 81 F.3d 1204, 1209 (2d Cir.1996).

### B. *Analysis*

#### 1. *Malicious Prosecution, Abuse of Process*

To the extent that the Amended Complaint seeks to hold Chao liable for initiating the prosecution of Moye, absolute immunity is clearly applicable. *Shmueli v. City of New York,* 424 F.3d 231, 237 (2d Cir.2005) ("[T]he prosecutor is shielded from liability for damages for commencing and pursuing the prosecution, regardless of any allegations that his actions were undertaken with an improper state of mind or improper motive."); *see also Hill,* 45 F.3d at 660–61 (holding that prosecutors and those working under their direction are absolutely immune for claims relating to the initiation of a prosecution and for conduct before a grand jury). Plaintiff s

federal and state law claims alleging malicious prosecution and abuse of process will therefore be dismissed. [5]

[5]     Absolute immunity is a defense not only to Section 1983 claims but to related state law claims. *See Shmueli,* 424 F.3d at 238 (dismissing Section 1983 and related state law malicious prosecution claims); *Arum v. Miller,* 331 F.Supp.2d 99, 112 (E.D.N.Y.2004) (dismissing abuse of process and civil conspiracy claims on grounds of absolute prosecutorial immunity); *Imbler,* 424 U.S. at 424 (same principles require conferral of absolute immunity for damage claims against prosecutors under Section 1983 and state law).

#### 2. *Creation of Misleading Photographs, Conspiracy to Present False Evidence at Trial*

Moye alleges that Chao, in preparation for Moye's second trial, returned to West 118th Street and instructed Nancy Badger—the District Attorney's office photographer—to take photographs that inaccurately represented the position of Moye's car on the night of his arrest. Chao then presented these photographs at the second trial. (Am.Cmplt.¶¶ 38, 40, 50, 50–54, 66–67) Moye alleges that these photographs gave the false impression that the police in the observation post would have been able to see Moye's hand outside the driver's side window. (*Id.* ¶ 60) Moye further argues that absolute immunity does not extend to Chao's role in obtaining these allegedly misleading photographs, because obtaining such evidence is "not a traditional prosecutorial function" and was "done for the purpose of misleading the second jury." (Pltf. Opp. Br. at 10–11)

Prosecutors' absolute immunity applies "not just for presentation of testimony," however, but also to preparatory conduct "relating to their advocacy." *Dory,* 24 F.3d at 83. The Supreme Court and the Second Circuit have emphasized that ' "the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom.... Preparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence.' " *Barbera,* 836 F.2d at 100 (quoting *Imbler,* 424 U.S. at 431 n. 33); *see also Barrett,* 798 F.2d at 571 ("The absolute immunity accorded to government prosecutors encompasses not only their conduct of trials but all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation....").

**\*8** Chao obtained the photographs at issue after Moye's first trial and in preparation for Moye's second trial. Accordingly, his involvement in obtaining these photographs took place long after formal criminal proceedings had been commenced. *See Deskovic v. City of Peekskill,* Nos. 07–CV–8150 (KMK), 07–CV–9488 (KMK), 2009 WL 2475001, at \*10 (S.D.N.Y. Aug. 13, 2009) ("[i]n assessing how closely connected a prosecutor's conduct is to the judicial phase of the criminal process, the timing of the conduct is relevant") (citing *DiBlasio,* 344 F.3d at 300–01).

Furthermore, in directing that these new photographs be taken, Chao was performing in his role as a prosecutor preparing for trial: he sought to obtain these visual depictions of the crime scene in order to strengthen his case. (Am. Cmplt. ¶ 64 (purpose of second set of photographs was "to show that P.O. Jeselson could see a hand coming out of the car window on the date of plaintiff s arrest")). Although Chao was working with the police, he was acting within his role "as [an] advocate for the State." *Burns,* 500 U.S at 491. Courts have consistently found absolute immunity applicable where, as here, a Section 1983 plaintiff is relying on post-indictment misconduct by a prosecutor aimed at obtaining additional evidence to support pending charges at trial. *See, e.g., Deskovic,* 2009 WL 2475001, at \*5, \*11, \*13 (plaintiff contended that A.D.A. had, post-indictment, conspired to procure false scientific evidence that he later introduced at trial; granting A.D.A.'s motion to dismiss Section 1983 claims on absolute immunity grounds, because the A.D.A.'s alleged misconduct took place after indictment during the "judicial phase of the criminal process"); *Bertuglia v. City of New York,* No. 11 Civ. 2141(JGK), 2012 WL 906958, at \*21 (S.D.N.Y. Mar. 19, 2012) (granting motion to dismiss state law claims against A.D.A. defendant based on post-indictment evidence-gathering activities; absolute immunity applicable because "the Complaint does not allege facts that create a plausible inference that [the prosecutor] was not acting as an advocate seeking to strengthen her case against an indicted defendant"); *Zahrey v. City of New York,* No. 98–4546, 2009 WL 54495, at \*30–\*31 (S.D.N.Y. Jan. 7, 2009) (granting absolute immunity to A.D.A. alleged to have engaged in post-indictment effort to fabricate evidence); *KRL v. Moore,* 384 F.3d 1105 (9th Cir.2004) (granting A.D.A. absolute immunity for alleged misconduct related to his role in obtaining a post-indictment search warrant seeking evidence to corroborate pending charges); *Cousin v. Small,* 325 F.3d 627, 635 (5th Cir.2003) (granting absolute immunity to A.D.A. accused of fabricating evidence post-indictment; "at the time of [A.D.A.] Jordan's ...

conversations with Rowell, in which Jordan allegedly told Rowell to implicate Cousin falsely in the murder and coached him on how to testify, Jordan was acting as an advocate rather than as an investigator. The interview was intended to secure evidence that would be used in the presentation of the state's case at the pending trial of an already identified suspect, not to identify a suspect or establish probable cause. Jordan therefore is entitled to absolute immunity with respect to this claim."); *see also Peay v. Ajello,* 470 F.3d 65, 68 (2d Cir.2006) (affirming dismissal on absolute immunity grounds of Section 1983 claim brought against Assistant State's Attorney based on alleged conspiracy to present false evidence at trial); *Dory,* 25 F.3d at 83 ("absolute immunity protects a prosecutor from § 1983 liability for ... allegedly conspiring to present false evidence at a criminal trial").

**\*9** Because Chao is alleged to have obtained the misleading photographs post-indictment, in preparation for Moye's second trial, and in an effort to strengthen his case as the State's advocate, he is entitled to absolute immunity for this alleged misconduct.

### 3. *Misconduct at Trial*

Moye alleges that Chao elicited false testimony from Officer Jeselson at trial, that he buttressed Jeselson's false testimony through introduction of the misleading photographs, and that he then vouched for the truth of Jeselson's testimony in his summation.

A prosecutor's presentation of false evidence, or subornation of perjury at trial, is protected by absolute immunity. *Jones v. King,* No. 10 Civ. 0897(PKC), 2011 WL 4484360, at \*4 (S.D.N.Y. Sept. 28, 2011) ("The claim that [the prosecutor] 'conspir[ed] to present false evidence at a criminal trial' is barred.... The prosecutor enjoys absolute immunity 'despite allegations of his "knowing use of perjured testimony....' "") (citations omitted); *Bertuglia,* 2012 WL 906958, at \*23 (prosecutors are entitled to absolute immunity for allegations that they "coerced and harassed various witnesses into giving false testimony"); *Urrego v. United States,* No. 00 CV 1203(CBA), 2005 WL 1263291, at \*2 (E.D.N.Y.2005) ("It is settled law that when a prosecutor presents evidence to a grand jury and at trial he is acting as an advocate and entitled to absolute immunity on claims that the evidence presented was false."); *Johnson v. Scott,* No. CV–91–1467(CPS), 1993 WL 36131, at \*2 (E.D.N.Y. Feb. 5, 1993) (A.D.A. entitled to absolute immunity related to witness perjury, because this "concern[ed] ... the presentation of the State's case against the plaintiff"); *see Imbler,* 424 U.S. at

430–31 (granting prosecutors absolute immunity for their conduct "in presenting the State's case," including permitting a fingerprint expert to give false testimony, suppressing important evidence, and introducing a misleading artist's sketch into evidence.).

The analysis does not change because Plaintiff alleges a conspiracy to commit these acts. *Shmueli,* 424 F.3d at 237– 38 ("principles [of absolute immunity] are not affected by allegations that improperly motivated prosecutions were commenced or continued pursuant to a conspiracy") (citing *Dory,* 25 F.3d at 83); *Bernard.* 356 F.3d at 503; *Hill,* 45 F.3d at 659 n. 2 (when the underlying activity at issue is covered by absolute immunity, the "plaintiff derives no benefit from alleging a conspiracy").

Plaintiff also argues that Chao acted outside his prosecutorial role when he vouched for Jeselson's testimony during summation. Because a prosecutor's summation is part of presenting the State's case, courts agree that a prosecutor's conduct during summation is protected by absolute immunity. *See Robinson v. Rome,* No. 11–CV–1411(NGG)(LB), 2011 WL 1541044, at *3 (E.D.N.Y.2011) (finding A.D.A.s immune from suit for claims related to, *inter alia,* an improper summation); *Johnson,* 1993 WL 36131, at *2 (granting absolute immunity to prosecutor where plaintiff alleged that A.D.A. "express [ed] to the jury her opinion as to the truth of the testimony of her witnesses during her summation").

**\*10** In sum, to the extent that Moye's claims against Chao are based on his conduct at trial, those claims are covered by absolute immunity.

\* \* \* \*

The Court concludes that Chao has absolute immunity for all of Moye's claims, whether based on federal or state law, and whether founded on theories of malicious prosecution, abuse of process, denial of a fair trial, fabricated evidence, conspiracy, or intentional or negligent infliction of emotional distress.

### CONCLUSION

Chao's motion to dismiss is GRANTED. The Clerk of the Court is directed to terminate the motion (Dkt. No. 23).

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 2569085

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:23-cv-01385-GTS-TWD    Document 8    Filed 02/06/24    Page 46 of 101

Rich v. New York, Not Reported in Fed. Supp. (2022)

2022 WL 992885

2022 WL 992885
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Benjamin Samuel RICH, formerly
known as Samuel Guillaume, Plaintiff,
v.
State of NEW YORK, New York City; New
York City Police Department; New York County;
New York County District Attorney's Office;
Detective Michael Miller, Vincent Corrando, John
Passementi, Cyrus Vance, Jr., Shipla Kalra, David
Nasar, and Does 1–100, Inclusive., Defendants.

21 Civ. 3835 (AT)
|
Signed 03/31/2022

**Attorneys and Law Firms**

Benjamin Samuel Rich, Staten Island, NY, Pro Se.

Gee Won Cha, Julinda A. Dawkins, New York State Office
of the Attorney General, New York, NY, for Defendant State
of New York.

Andrew B. Spears, New York City Law Department, New
York, NY, for Defendants City New York, Michael Miller,
Vincent Corrando, John Passementi.

Patricia Jean Bailey, New York County District Attorney's
Office, New York, NY, for Defendants Cyrus Vance, Jr.,
David Nasar.

**ORDER**

ANALISA TORRES, District Judge:

 *1  This action arises from a 2016 arrest and prosecution
of Plaintiff *pro se*, Benjamin Samuel Rich, in New York
County. He brings claims against the State of New York (the
"State"); former New York County District Attorney ("DA")
Cyrus R. Vance, Jr. and two Assistant District Attorneys
("ADAs"), Shilpa Kalra and David Nasar, (collectively, the
"DA Defendants"); and the City of New York (the "City"),
the New York City Police Department (the "NYPD"), and
NYPD officers Michael Miller, Vincent Corrando, and John
Passementi (collectively, the "City Defendants"), pursuant to,

*inter alia*, 42 U.S.C. §§ 1983, 1985, and 1986, the New York
State Constitution, and New York common law. *See generally*
Compl., ECF No. 1. Before the Court are three motions to
dismiss Plaintiff's complaint pursuant to Rules 12(b)(1) and
12(b)(6) of the Federal Rules of Civil Procedure, brought by
the State, ECF No. 20, the DA Defendants, ECF No. 22, and
the City Defendants, ECF No. 32.

For the reasons stated below, the State's motion to
dismiss is GRANTED, and Plaintiff's claims against the
State are DISMISSED. The DA Defendants' motion to
dismiss is GRANTED—Plaintiff's claims against Vance
are DISMISSED; and his claims against Kalra and Nasar
are DISMISSED except for Counts 3 and 4, which are
DISMISSED without prejudice to renewal in an amended
complaint. The City Defendants' motion to dismiss is
DENIED as to Count 4, and GRANTED in all other respects.
Plaintiff's claims against Passementi, the NYPD, and the City
are DISMISSED; and his claims against Miller and Corrando
are DISMISSED, except for Count 3, which is DISMISSED
without prejudice to renewal in an amended complaint.

**BACKGROUND** [1]

[1]     Unless otherwise stated, the following facts are
        taken from the complaint and assumed, for
        purposes of this motion, to be true. *ATSI Commc'ns,
        Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.
        2007).

On January 6, 2016, Plaintiff was at the Highline Ballroom
("the Highline"), a nightclub in Manhattan, as an invited
guest of Wasief Quahtan, a Highline employee. Compl. ¶ 24.
Quahtan and the club owner began arguing over "Quahtan['s]
[having brought] Plaintiff to the party." *Id.* ¶ 25. Security
staff, and an individual named Avery Jackson, asked Plaintiff
to leave. *Id.* ¶ 26. Plaintiff alleges that he was "forcibly
escorted" from the club, and that Jackson became "belligerent
and aggressive" towards him. *Id.* ¶ 27. Shortly thereafter, a
shooting occurred outside the Highline. *Id.* ¶ 28.

Plaintiff believes that Jackson "ran down the street and
jumped into a black sedan ... at the time the shots were fired."
*Id.* ¶ 37. He also states that there were "numerous witnesses"
to the shooting, including a "female 911 caller," who lived
"next door" to the Highline. *Id.* ¶ 36. In that 911 call, the
witness said that she had seen a "man jump into a black sedan
speeding down the street" after shots were fired. *Id.* Based

Rich v. New York, Not Reported in Fed. Supp. (2022)

2022 WL 992885

on this call, Plaintiff believes "it was more likely that it was [ ] Jackson who fired the shots before jumping into the black sedan to chase Plaintiff down." *Id.* ¶ 37.

**\*2** The shooting was investigated by Detective Michael Miller, who interviewed Jackson. *Id.* ¶¶ 29–30. Jackson told Miller that he saw Plaintiff go to a car, "pull out a gun, and shoot in the direction of the Highline," and that Jackson "ran back into the club" when shots were fired. *Id.* ¶¶ 30, 37. But, Plaintiff alleges that many of Jackson's representations to Miller contradicted his initial statements to the NYPD officers who first responded to the shooting, as well as other eyewitness accounts. *See, e.g.,* ¶¶ 30–32. For instance, Plaintiff alleges that Jackson told the responding officers that Plaintiff was "escorted from the club because he was intoxicated," and that Plaintiff then "went to his car, [a Rolls Royce] removed a firearm ... and fired several shots." *Id.* ¶¶ 31, 46. But, Jackson told Miller that Plaintiff was "forcibly ejected from the club" after an altercation with its manager, that Plaintiff was "belligerent," and threatened that he had a gun. *Id.* ¶ 32. Plaintiff also contends that Jackson's statements were demonstrably false, because surveillance videos showed that Jackson "was the aggressor towards Plaintiff," and that Plaintiff was "calm, peaceful, and cooperative" when escorted from the club. *Id.* ¶¶ 32, 41.

Plaintiff alleges that Miller failed to conduct a thorough and complete investigation of the shooting, because he did not interview several witnesses, including the 911 caller. *Id.* ¶¶ 36–37, 39. Plaintiff also suggests that Miller obtained—but disregarded—surveillance video from the inside and the outside of the club that would have corroborated Plaintiff's version of events. *See id.* ¶¶ 40–43. Plaintiff also complains that Officer Vincent Corrando, Miller's supervisor, "approved all [of the] reports written" in the investigation and "should have notice[d] or known of all the inconsistencies and contradictory statements" in Miller's reports. *Id.* ¶ 95. And, Plaintiff alleges that Officer John Passementi "authorized DNA tests," which revealed that the DNA evidence recovered at the scene "did not match Plaintiff." *Id.* ¶ 96.

On January 9, 2016, Miller obtained a search warrant for Plaintiff's car, based on what Plaintiff contends were "false, misleading and/or embellished information" in the underlying affidavits. *Id.* ¶ 46. The next day, Jackson picked Plaintiff's mugshot out of a photo lineup. *Id.* ¶ 92. Plaintiff appears to argue that this lineup was unduly suggestive, because his "mugshot had a lighter background than the other photographs." *Id.* ¶ 92. The same day, Miller obtained a

warrant for Plaintiff's arrest for attempted murder, assault, and weapons possession, and in February obtained additional search warrants for Plaintiff's cell phone and laptop, allegedly based, again, on false and misleading statements provided by Miller and Jackson. *Id.* ¶¶ 45, 47. According to Plaintiff, no "physical evidence [ ] tie[d] him to any part of the shooting," *id.* ¶ 81, and the police did not recover a gun or find gunshot residue in Plaintiff's car, *id.* ¶ 91.

On January 22, 2016, a grand jury indicted Plaintiff for second-degree attempted murder, first-degree assault, and two counts of criminal possession of a weapon. *See id.* ¶¶ 45, 51. On January 27, 2016, Plaintiff was arrested. *Id.* ¶ 51. He was incarcerated until February 18, 2016, when he was released on bail. *Id.* ¶ 52.

In November 2016, Plaintiff was taken back into custody on suspicion of witness tampering, after Jackson allegedly made a "false[ ]" report to the DA's Office that Plaintiff had tried to contact him. *Id.* ¶¶ 53, 103. Plaintiff remained in jail until his trial, which began in June 2017. *Id.* ¶¶ 54, 64; *see also* Trial Tr. at 1, ECF No. 22-3. [2]

> [2]   The relevant state court trial transcripts were submitted by the DA Defendants in their motion to dismiss. *See* Trial Tr.; Dismissal Tr., ECF No. 22-4. The Court may take judicial notice of these transcripts as a matter of public record. *See Shmueli v. City of N.Y.,* 424 F.3d 231, 233 (2d Cir. 2005).

On March 26, 2016, ADAs Shilpa Kalra and David Nasar provided surveillance videos from the Highline to Plaintiff's counsel. Compl. ¶ 64. Plaintiff alleges, however, that the relevant video showed only "one (1) camera angle [out] of 14 camera angles." *Id.* He alleges that prosecutors did not provide videos from the thirteen additional camera angles until a week after trial commenced, even though these videos were collected from the Highline eighteen months earlier. Compl. ¶ 64. The trial court accordingly granted counsel's request to review the additional videos before conducting Jackson's cross-examination. Trial Tr. at 3. On direct examination, Jackson testified that he did not participate in escorting Plaintiff out of the club. *Id.* at 47–48.

**\*3**  On June 12, 2017, prior to Jackson's cross-examination, Plaintiff's counsel reported to the trial court that Jackson could be identified in the additional videos based on his clothing. *Id.* at 135. Nasar acknowledged that if Jackson was indeed visible in the videos, he was "doing a bunch of things contrary to

Rich v. New York, Not Reported in Fed. Supp. (2022)

2022 WL 992885

Case 5:23-cv-01385-GTS-TWD    Document 8    Filed 02/06/24    Page 48 of 101

what he testified about." *Id.*; *see also id.* at 136. The trial court then determined that Jackson should be questioned, under oath, outside the jury's presence, about his clothing on the night in question, and whether he could identify himself on the videos, among other matters. *See id.* at 146–50, 152–54. Jackson was brought in, and warned about perjury. *See id.* at 154–56. Jackson identified himself on the videos wearing a jacket and a light-colored shirt. *See id.* at 156–59. The court then adjourned the proceedings. *See id.* at 159. When the court resumed, Jackson, through counsel, invoked his Fifth Amendment right against self-incrimination, *id.* at 176, and the court declared a mistrial, *id.* at 186–88.

Plaintiff's counsel then moved to dismiss the indictment against Plaintiff on two grounds: first, that it was based on false testimony, and second, because of prosecutorial misconduct. Compl. ¶ 100. On October 17, 2017, Kalra consented to dismissal of the indictment on the first ground, but opposed the assertion of prosecutorial misconduct. Dismissal Tr. at 12–13, 15–16. The court dismissed the indictment, but the presiding judge stated he did not "see any prosecutorial misconduct." *Id.* at 16.

On March 12, 2021, over three years after the indictment was dismissed, Plaintiff commenced this action. Compl. Defendants move separately to dismiss the claims against them. ECF Nos. 20, 22, 32. The Court considers each motion in turn.

### DISCUSSION

I. Legal Standard

A. Rule 12(b)(1)

An action should be dismissed pursuant to Rule 12(b)(1) where it is apparent that the court lacks subject matter jurisdiction—that is, the statutory or constitutional power —to adjudicate it. *See* Fed. R. Civ. P. 12(b)(1); *Thomas v. Metro. Corr. Ctr.*, No. 09 Civ. 1769, 2010 WL 2507041, at *1 (S.D.N.Y. June 21, 2010). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A district court must consider a challenge to subject matter jurisdiction before addressing other grounds for dismissal. *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).

On a Rule 12(b)(1) motion, the Court must accept all material factual allegations as true. *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004). It may not, however, "draw inferences ... favorable to [the] plaintiff[ ]" on such a motion. *Id.* And, the Court may consider evidence outside the pleadings to resolve disputed factual issues relating to jurisdiction. *See id.*

B. Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555. The court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns, Inc.*, 493 F.3d at 98. On a Rule 12(b)(6) motion, the court may consider only the complaint, documents attached to the complaint, matters of which a court can take judicial notice, or documents that the plaintiff knew about and relied upon. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

Additionally, because Plaintiff proceeds *pro se*, the Court is obligated to construe his submissions "liberally and interpret[ ] [them] to raise the strongest arguments they suggest." *Triestman v. Fed. Bur. of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation omitted). And, on a motion to dismiss, the Court may appropriately consider a *pro se* plaintiff's opposition papers to "supplement or clarify" the allegations in their complaint. *Sommersett v. City of N.Y.*, No. 09 Civ. 5916, 2011 WL 2565301, at *3 (S.D.N.Y. June 28, 2011) (citation omitted).

II. Duplicative and Improper Claims

**\*4** Count 7 of the complaint asserts a claim under 18 U.S.C. § 245 for the deprivation of rights under the color of law. Compl. ¶¶ 148–51. But, no private right of action exists under this federal criminal statute, and accordingly, Plaintiff cannot raise a cognizable claim under it. *See Corrado v. State of N.Y. Univ. Stony Brook Police*, No. 15 Civ. 7443, 2016 WL 4179946, at *3 (E.D.N.Y. Aug. 5, 2016). Count 7 is, accordingly, DISMISSED with prejudice.

Further, the Court finds that Count 9 of the complaint— fraudulent misrepresentation under § 1983, Compl. ¶¶ 157–

Rich v. New York, Not Reported in Fed. Supp. (2022)

2022 WL 992885

Case 5:23-cv-01385-GTS-TWD Document 8 Filed 02/06/24 Page 49 of 101

63—is duplicative of Count 4—deprivation of a fair trial under § 1983, *id.* ¶¶ 133–37—because both seek redress for violations of Plaintiff's liberty interests arising from the alleged "fabrication of evidence by a government officer." *See Zahrey v. Coffey*, 221 F.3d 342, 349–50 (2d Cir. 2000). Count 9 is, accordingly, DISMISSED with prejudice.

Finally, three of Plaintiff's claims—Counts 4, 5, and 6—include both federal constitutional claims and analogous state constitutional claims. Compl. ¶¶ 133–47. The New York State Constitution "provides a private right of action where remedies are otherwise unavailable at common law or under § 1983." *Allen v. Antal*, 665 F. App'x 9, 13 (2d Cir. 2016). But, where alternative remedies are available under the federal civil rights statutes, including § 1983, courts must dismiss the plaintiff's state constitutional claims. *Id.* Because § 1983 provides a remedy for all of Plaintiff's alleged federal constitutional violations, any analogous state constitutional claims are duplicative. Accordingly, the state constitutional claims pleaded in Counts 4, 5, and 6 are DISMISSED with prejudice.

III. The State's Motion

The State moves to dismiss the complaint under Rule 12(b)(1), on the ground that the Eleventh Amendment bars Plaintiff's claims against it by virtue of sovereign immunity. State Mem. at 3, ECF No. 21. The Court agrees.

The Eleventh Amendment bars federal courts from exercising jurisdiction over claims against states. U.S. CONST. AMEND. XI. This extends to a state sued by its own citizens, *see Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72–73 (2000), and state agencies, *see Welch v. Texas Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 480 (1987). There are only limited exceptions to this rule, none of which are applicable here.

First, a state may waive its Eleventh Amendment defense. *See Coll. Sav. Bank v. Fla. Prepaid Postsec. Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). Here, the State has not explicitly waived its immunity, or consented to be sued. *See* State Mem. at 3. And, by filing a motion to dismiss, rather than an answer to the complaint, the State cannot be said to have taken actions inconsistent with an assertion of immunity. *Cf. Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 619 (2002) (finding waiver of immunity where state removed action to federal court, then asserted immunity).

Second, Congress may abrogate the states' immunity from suit through statute. *Kimel*, 528 U.S. at 80. But, Congress has not done so for claims brought under § 1983, *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990), § 1985, *see Robinson v. Allstate Ins. Co.*, 508 F. App'x 7, 9 (2d Cir. 2013), or § 1986, *Medina v. Cuomo*, No. 15 Civ. 1283, 2015 WL 13744627, at *6–7 (N.D.N.Y. Nov. 9, 2015). In the "absence of [the State's] consent," accordingly, such claims are "proscribed by the Eleventh Amendment." *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977).

**\*5** Finally, the Eleventh Amendment does not bar a "suit against a state official when that suit seeks prospective injunctive relief." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73 (1996); *see also Ex parte Young*, 209 U.S. 123 (1908). But here, Plaintiff seeks only money damages, and retrospective declaratory and equitable relief. Compl. § IX. And, Eleventh Amendment immunity shields states from claims for money damages, *Liner v. Hochul*, No. 21 Civ. 11116, 2022 WL 826342, at *1 (S.D.N.Y. Mar. 17, 2022), and "declaratory relief dealing solely with past violations," *Medina*, 2015 WL 13744627, at *7. Although Plaintiff demands "affirmative relief necessary to eradicate the effects of Defendants' unlawful practices," *see* Compl. § IX(B), he does not allege any present violations of his rights, *see id. See Medina*, 2015 WL 13744627, at *7 (noting that "declaratory relief where there is no present violation, is also barred under the Eleventh Amendment"). Accordingly, this exception does not preclude the State's immunity defense in this matter.

Where a defendant is found to have sovereign immunity from suit, the Court is deprived of subject-matter jurisdiction under Rule 12(b)(1). *McGinty v. New York*, 251 F.3d 84, 89, 101 (2d Cir. 2001). Accordingly, because the State is immune from liability on all of Plaintiff's claims under the Eleventh Amendment, its motion to dismiss is GRANTED. And, because amendment would be futile, Plaintiff's claims against the State are DISMISSED with prejudice to renewal.[3]

> [3] Because the Court concludes that it lacks jurisdiction over Plaintiff's claims against the State under Rule 12(b)(1), it need not reach the State's alternative ground for dismissal, that Plaintiff's § 1983 and § 1985 claims must be dismissed because the State is not a suable "person" within the meaning of those statutes. State Mem. at 3–4.

Case 5:23-cv-01385-GTS-TWD   Document 8   Filed 02/06/24   Page 50 of 101

Rich v. New York, Not Reported in Fed. Supp. (2022)

2022 WL 992885

## IV. The DA Defendants' Motion

Plaintiff raises claims against the DA Defendants "in their individual capacities"[4] arising *inter alia* under § 1983, § 1985, and § 1986,[5] based on three main factual assertions. *See generally Compl.* First, Plaintiff alleges that Kalra and Nasar wrongfully chose to prosecute him, despite the lack of physical evidence tying him to the shooting. Compl. ¶ 81. Second, Plaintiff asserts that Kalra and Nasar intentionally withheld exculpatory surveillance videos until the middle of his trial, *see id.* ¶¶ 75–76, 78. Third, Plaintiff alleges that the "[p]rosecuting [a]ttorneys" "coached" Jackson to give false testimony to the grand jury that indicted him. *Id.* ¶¶ 50–51.

[4]    Plaintiff makes this clarification for the first time in his opposition papers. ECF No. 28 at 14. The Court notes that because, as discussed, the Eleventh Amendment bars suits against states, *see supra* at 8–10, when a defendant is sued in his official capacity, the court treats the suit as one against the "entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell v. N.Y.C. Dep't of Soc. Serves.*, 436 U.S. 658, 690 n.55 (1978)). And, where a "district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the State, and therefore immune from suit in her official capacity." *D'Alessandro v. City of N.Y.*, 713 F. App'x 1, 8 (2d Cir. 2017). Accordingly, any claims Plaintiff may raise against the DA Defendants in their "official capacity" would be precluded by immunity under the Eleventh Amendment. *See id.*

[5]    Although Plaintiff asserts that he pleads each of his claims against "all Defendants," even a liberal read of the complaint makes clear that certain of Plaintiff's claims cannot implicate the DA Defendants' conduct, including counts 1 (unreasonable search and seizure); 2 (false arrest/imprisonment); 11 (personal injury); 12 (property damage) and 13 (negligent hiring, training, supervision, and discipline of officers). Compl. ¶¶ 117–27, 168–81. As the Court has already dismissed Counts 7 and 9, *see supra* at 7–8, it only considers Counts 3 (malicious prosecution); 4 (deprivation of fair trial); 5 (conspiracy); 6 (failure to intervene); 8 (abuse of process); 10 (negligent misrepresentation); and 14 (negligent infliction of emotional distress) against the DA Defendants.

### A. Absolute Immunity

**\*6** The DA Defendants argue that Plaintiff's claims are barred by absolute and qualified prosecutorial immunity. DA Defs. Mem. at 10–12, ECF No. 22-1. To the extent Plaintiff's claims are predicated on his allegations that Kalra and Nasar wrongfully chose to prosecute him and withheld allegedly exculpatory evidence, the Court agrees.

#### 1. Federal Claims

Although § 1983 has no immunities on its face, the Supreme Court has held that, when Congress initially enacted the statute, it did not intend to abrogate existing immunities established at common law. *See Imbler v. Pachtman*, 424 U.S. 409, 418 (1976). Thus, both absolute and qualified immunity are applicable defenses to § 1983 claims. *See Bernard v. Cty. of Suffolk*, 356 F.3d 495, 502 (2d Cir. 2004). Prosecutors are entitled to "absolute immunity" from liability when they function as advocates for the state in circumstances "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. But, prosecutors are entitled only to "qualified immunity" when they perform "investigative functions" normally undertaken by a police officer. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). Under the doctrine of qualified immunity, an official is immune from liability "only when in light of clearly established law and the information the official possesses, it was objectively reasonable for him to think that his actions were lawful." *Hill v. City of N.Y.*, 45 F.3d 653, 663 (2d Cir. 1995).

Courts employ a "functional approach" to determine the availability of absolute immunity, looking to "the nature of the function performed, not the identity of the actor who performed it." *Buckley*, 509 U.S. at 269 (citations omitted). And, although the party claiming absolute immunity bears the burden of establishing its applicability, *see Doe v. Phillips*, 81 F.3d 1204, 1209 (2d Cir. 1996), if the court finds that that the conduct at issue is covered by absolute immunity, then the actor is shielded from liability for damages no matter "how[ ] erroneous the act ... and how[ ] injurious ... its consequences." *Cleavinger v. Saxner*, 474 U.S. 193, 199–200 (1985) (citation omitted); *see also Anilao v. Spota*, No. 19 Civ. 3949, 2022 WL 697663, at \*4 (2d Cir. Mar. 9, 2022).

Rich v. New York, Not Reported in Fed. Supp. (2022)

2022 WL 992885

Plaintiff first alleges that Kalra and Nasar improperly chose to prosecute him, despite a lack of physical evidence tying him to the crime. Compl. ¶ 81. But, prosecutors are immune from suit for decisions regarding "whether and when to prosecute," *Imbler*, 424 U.S. at 430–31 n.32–33, even where they may prosecute an innocent individual, *Schmueli*, 424 F.3d at 237–39. Kalra and Nasar are, therefore, entitled to absolute immunity to the extent Plaintiff's claims are based on their decision to prosecute him. [6]

[6]    Because the Court finds that the DA Defendants are entitled to absolute immunity on any claims arising from the withholding of exculpatory evidence, the Court does not reach their alternative argument that Plaintiff fails to state a claim for an alleged *Brady* violation, *see* DA Defs. Mem. at 12–15.

Second, Plaintiff alleges that Kalra and Nasar intentionally withheld exculpatory surveillance videos until the middle of trial, Compl. ¶¶ 75–76, 78. But again, prosecutors are entitled to absolute immunity for all decisions taken "in their prosecutorial capacity, including decisions regarding which evidence should be disclosed to a criminal defendant." *Newson v. City of N.Y.*, No. 16 Civ. 6773, 2019 WL 3997466, at *3 (E.D.N.Y. Aug. 23, 2019). This is true even where information was deliberately withheld, *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 640 (E.D.N.Y. 2017), or where such withholding violated the defendant's constitutional rights, *see Warney v. Monroe Cnty.*, 587 F.3d 113, 125 (2d Cir. 2009). Accordingly, Kalra and Nasar have absolute immunity to the extent any of Plaintiff's claims are predicated on a violation under this factual allegation.

**\*7** Finally, Plaintiff alleges that the "Prosecuting Attorneys" coached Jackson to give false testimony to the grand jury, which then formed the basis for his indictment. Compl. ¶¶ 50–51. Prosecutors generally only have qualified immunity for actions taken before there is probable cause to arrest a defendant, because they are performing an investigative function, rather than acting as advocates. *See Hill*, 45 F.3d at 661; *Buckley*, 509 U.S. at 273. And, although "knowingly presenting evidence" to a grand jury is considered the "core of a prosecutor's role as an advocate," *Bernard*, 356 F.3d at 503, the Second Circuit has distinguished between a prosecutor's knowing presentation of false evidence to the grand jury—which is still entitled to absolute immunity —from a prosecutor's deliberate fabrication of evidence, *Hill*, 45 F.3d at 662–63 (finding that where prosecutor deliberately manufactured evidence to establish probable cause for plaintiff's arrest, his conduct was investigatory, regardless of whether, when the evidence was manufactured, the prosecutor intended to present it to the grand jury). In *Hill*, the Second Circuit also established that "when it may not be gleaned from the complaint whether the conduct objected to was performed by the prosecutor in an advocacy or an investigatory role, the availability of qualified immunity from claims based on such conduct cannot be decided as a matter of law on a motion to dismiss." *Id.* at 663.

As in *Hill*, Plaintiff alleges that the prosecutors deliberately participated in the fabrication of false evidence by coaching a material witness to give perjured testimony to the grand jury, so that the jury would return an indictment. Compl. ¶¶ 50–51. Allegations that the prosecution falsified evidence are distinct from allegations that the prosecution merely presented evidence they knew to be false. *Compare Hill*, 45 F.3d at 662–63, *with Urrego v. United States*, No. 00 Civ. 1203, 2005 WL 1263291, at *2 (E.D.N.Y. May 27, 2005) (prosecutors receive absolute immunity for claims predicated on "false presentation of evidence to a grand jury"). And, considering the Court's obligation to liberally construe Plaintiff's pleadings and afford every reasonable inference in his favor at this stage, the Court concludes the DA Defendants have not established that they were acting as "advocates," rather than "investigators," when they engaged in the challenged conduct. *Hill*, 45 F.3d at 660 (officials asserting absolute immunity bear the burden of establishing it for the action in question). And, accepting the facts in the complaint as true, the DA Defendants would not be entitled to even qualified immunity, because it is objectively unreasonable for them to have knowingly coached a witness to give false testimony before a grand jury. *See Cipolla v. Cty. of Rensselaer*, 129 F. Supp. 2d 436, 456 (N.D.N.Y. 2001) (not "objectively reasonable" to believe presenting or soliciting perjured testimony did not violate plaintiff's clearly established rights). Accordingly, to the extent that Counts 3, 4, 5, 6, and 8 are predicated on the claim that the DA Defendants coached Jackson to give false testimony, they are not entitled to either absolute or qualified immunity.

### 2. State Claims

Plaintiff raises state-law claims against the DA Defendants in Counts 10 and 14 of the complaint. Compl. ¶¶ 164–67, 182–85. As with federal law, under New York law, a district attorney prosecuting crime is performing a quasi-judicial function, and, as such, is entitled to absolute immunity.

Case 5:23-cv-01385-GTS-TWD    Document 8    Filed 02/06/24    Page 52 of 101

Rich v. New York, Not Reported in Fed. Supp. (2022)

2022 WL 992885

*Arteaga v. State*, 72 N.Y.2d 212, 217 n.1 (N.Y. 1988). But, unlike federal law, prosecutors are absolutely immune for official acts in both the prosecution and investigation of criminal charges. *See Moore v. Dormin*, 173 Misc. 2d 836, 843, (N.Y. Sup. Ct. 1997), *aff'd as modified*, 252 A.D.2d 421 (N.Y. App. Div. 1998). A prosecutor does not receive absolute immunity, however, "when knowingly acting in violation of law." *Id.* As with Plaintiff's federal claims, to the extent his state law claims against the DA Defendants are predicated on his allegations that they improperly targeted him for prosecution or deliberately withheld exculpatory evidence, the DA Defendants are entitled to absolute immunity. But, construing Plaintiff's third allegation liberally, he essentially claims that the prosecutors knowingly acted in violation of the law by suborning perjury. The Court cannot conclude, therefore, that the DA Defendants are entitled to absolute immunity as a matter of state law to the extent Counts 10 and 14 rest on this allegation.[7]

[7]     As noted, the parallel state-law constitutional claims in Counts 4, 5, and 6 are dismissed with prejudice. *See supra* at 8.

### B. Time Bar

**\*8** The DA Defendants argue that Plaintiff's claims are untimely. DA Defs. Mem. at 6–8. With the exception of Counts 3 (§ 1983 malicious prosecution) and 4 (§ 1983 deprivation of a fair trial), the Court agrees.

### 1. Federal Claims

Claims arising under §§ 1983 and 1985, when brought in this district, are governed by New York's three-year statute of limitations for personal injury actions. N.Y. C.P.L.R. § 214; *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (citation omitted); *Hernandez-Avila v. Averill*, 725 F.2d 25, 27 n.3 (2d Cir. 1984). But, claims under § 1986 have a one-year statute of limitations, *see* 42 U.S.C. § 1986. Federal courts are also obligated to apply New York's tolling rules. *Bd. of Regents of Univ. of the State of N.Y. v. Tomanio*, 446 U.S. 478, 483 (1980).

On March 20, 2020, then-Governor Andrew Cuomo issued Executive Order 202.8, which tolled the statute of limitations in New York in light of the COVID-19 pandemic. 9 N.Y.C.R.R. § 8.202.8. Subsequent orders extended the tolling period until November 3, 2020. Exec. Order 202.67 (Oct. 4,

2020). Contrary to the DA Defendants' assertion, *see* DA Defs. Mem. at 7–8, other courts in this district have uniformly concluded that Executive Order 202.8 applies to federal cases applying New York's statute of limitations, including for § 1983 claims. *See, e.g., Lewis v. Westchester Cnty.*, No. 20 Civ. 9017, 2021 WL 3932626, at \*2 n.3 (S.D.N.Y. Sept. 2, 2021).[8] The Court concludes, therefore, that Executive Order 202.8 tolls the statute of limitations for Plaintiff's §§ 1983 and 1985 claims, which apply New York's three-year limitations period —but not Plaintiff's § 1986 claims, because the applicable statute of limitations for that claim is found in the federal statute itself.

[8]     The DA Defendants' reliance on *Johnson v. Fargione* is unavailing. In that case, the court found that the plaintiff's claims, which had expired weeks before the issuance of Executive Order 202.8, could not "be said to have been tolled" by that Executive Order, as the time for filing had already passed and the plaintiff had offered no excuse for the delay. 20 Civ. 764, 2021 WL 1406683, at \*3 (N.D.N.Y. Feb. 17, 2021), *report and recommendation adopted* 2021 WL 1404554 (Apr. 14, 2021). Although *Johnson* is instructive with respect to how claims that may have expired *before* the issuance of Executive Order 202.8 (*i.e.*, before March 20, 2020) should be treated, it does not address the applicability of the Executive Order to federal claims that, like Plaintiff's, had not yet expired by that date.

Section 1983 claims based on malicious prosecution or deprivation of a fair trial accrue when the underlying criminal action against the plaintiff is "favorably" terminated, rather than at the time of arrest. *Sharp v. Cnty. of Putnam*, No. 18 Civ. 780, 2019 WL 2250412, at \*4 (S.D.N. Y May 24, 2019); *Shabazz v. Kailer*, 201 F. Supp. 3d 386, 394 (S.D.N.Y. 2016). The dismissal of an indictment constitutes the termination of a proceeding. *Sharp*, 2019 WL 2250412, at \*4–5. Applying these principles, Plaintiff's § 1983 claims for malicious prosecution (Count 3) and denial of a fair trial (Count 4) accrued on October 17, 2017, the date the trial court dismissed the indictment against him. Dismissal Tr. at 5. And, although the statute of limitations would have expired on October 17, 2020, New York's COVID-19 tolling rule extended the limitations period until June 2, 2021.[9] Because Plaintiff commenced this suit on March 12, 2021, Counts 3 and 4 are timely.

Rich v. New York, Not Reported in Fed. Supp. (2022)

2022 WL 992885

9 Executive Order 202.8 tolled applicable limitations periods from March 20, 2020 to November 3, 2020. The order amounted to a "pause" in the limitations period—that is, during the duration of the toll, the clock to file [did] not run," but "[o]nce the toll end[ed,] the clock resume[d] from where it was when the toll began, and the plaintiff ha[d] the rest of his limitations period to file his complaint," *Johnston v. City of Syracuse*, No. 20 Civ. 1497, 2021 WL 3930703, at *6 (N.D.N.Y. Sept. 2, 2021). Because, as of March 20, 2020, when the clock was "paused," Plaintiff had 211 days remaining before the expiration of the limitations period on October 17, 2020, the Court calculates 211 days after November 3, 2020, as the end of the relevant limitations period when tolled—which is June 2, 2021.

**\*9** By contrast, a § 1983 abuse-of-process claim accrues when the criminal process is "set in motion—typically at arrest—against the plaintiff." *Hadid v. City of N.Y.*, No. 15 Civ. 19, 2015 WL 7734098, at *5 (E.D.N.Y. Nov. 30, 2015), *aff'd* 730 F. App'x 68 (2d Cir. 2018). Because Plaintiff was arrested on January 27, 2016, the relevant statute of limitations for Count 8, § 1983 abuse of process, expired on January 27, 2019, and COVID-19 tolling provisions are, therefore, inapplicable. Accordingly, this claim is DISMISSED with prejudice as untimely.

Section 1985(3) conspiracy claims accrue "at the time of the events that caused the injury." *Panetta v. Cassel*, 20 Civ. 2255, 2020 WL 2521533, at *5 (S.D.N.Y. May 18, 2020). The existence of a conspiracy "does not postpone the accrual of causes of action arising out of the conspirators' separate wrongs. It is the wrongful act, not the conspiracy, which is actionable, whether the act is labelled a tort or a violation of [federal civil rights statutes]." *Singleton v. City of N.Y.*, 632 F.2d 185, 192 (2d Cir. 1980) (citation omitted). As discussed, the single allegation that escapes absolute immunity—and therefore is the only remaining basis for Plaintiff's claims against the DA Defendants—is that those defendants suborned perjury in the grand jury proceedings by coaching Jackson to give false testimony, resulting in Plaintiff's indictment and arrest. Plaintiff's § 1985(3) claim—Count 5 of the complaint—accrued no later than January 27, 2016, the date of his arrest—which again, applying a three-year statute of limitations untouched by COVID-19 tolling provisions, renders it untimely. Count 5 is, accordingly, DISMISSED with prejudice.

Similarly, Count 6, Plaintiff's § 1986 conspiracy claim, accrued when Plaintiff knew, or had reason to know of the harm or injury. *Young v. Lord & Taylor, LLC*, 937 F. Supp. 2d 346, 354 (E.D.N.Y. 2013). Plaintiff knew of the injury by his arrest date. Applying § 1986's one-year statute of limitations, any § 1986 claim Plaintiff brought after January 27, 2017, is untimely. [10] Accordingly, Count 6 is DISMISSED with prejudice.

10 Even assuming, *arguendo*, that Plaintiff would not have had reason to know of the harm or injury that was the basis of his Section 1986 claim until the date the indictment was dismissed (October 17, 2017), the claim would still be time-barred, because this would only extend the limitations period to October 17, 2018—nearly three years before the commencement of this action.

### 2. State Claims

Counts 10 and 14 of the complaint—both state common-law claims—are also time-barred. "Under New York law, a plaintiff asserting tort claims against the City or its employees," as well as against municipal officials like district attorneys, "must file a notice of claim within [90] days after the incident giving rise to the claim and commence the action within a year and [90] days from the date of the incident." *Brown v. City of N.Y.*, No. 18 Civ. 3287, 2020 WL 1819880, at *7 (S.D.N.Y. Apr. 9, 2020) (citing N.Y. Gen. Mun. Law §§ 50-e(1)(a), 50-i(1)); *see also Gonzalez v. City of N.Y.*, No. 94 Civ. 7377, 1996 WL 227824, *2 (S.D.N.Y. May 3, 1996). Plaintiff asserts that he filed the requisite notice of claim with the City on January 16, 2018—720 days after his arrest, and 91 days after the dismissal of the indictment. Compl. ¶ 16. Plaintiff did not commence this action until March 12, 2021. *See* Compl. Therefore, Plaintiff neither timely filed a notice of claim within 90 days, nor did he commence this lawsuit within a year and 90 days after the date the indictment was dismissed—the last date that could possibly serve as the trigger for the statute of limitations. Failure to comply with the mandatory notice of claim requirements is a basis for dismissal of a plaintiff's claims. *Warner v. Vill. of Goshen Police Dep't*, 256 F. Supp. 2d 171, 175 (S.D.N.Y. 2003). The Court, accordingly, concludes that Counts 10 and 14 are also time-barred, and therefore, these claims are DISMISSED with prejudice.

### C. Personal Involvement

Case 5:23-cv-01385-GTS-TWD   Document 8   Filed 02/06/24   Page 54 of 101

Rich v. New York, Not Reported in Fed. Supp. (2022)

2022 WL 992885

**\*10** Liability under § 1983 must be premised on a defendant's direct, personal involvement in the alleged violations. *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). A defendant cannot be held vicariously liable under § 1983 for employing or supervising an employee that violated the plaintiff's rights—rather, a plaintiff must plead "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

As to Vance, Plaintiff only alleges that he served as the DA of New York County. Compl. ¶ 11. Vance may not be held liable for merely employing or supervising Kalra and Nasar. *See Iqbal*, 556 U.S. at 676. And, Plaintiff neither pleads that Vance was personally involved in investigating the shooting or prosecuting him, nor is there any evidence in the record to support such a finding. Accordingly, Plaintiff's claims against Vance are DISMISSED with prejudice, because given the lack of evidence of Vance's personal involvement, the Court finds that granting leave to amend would be futile. *Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011).

Plaintiff similarly fails to specify Kalra and Nasar's personal involvement in his claimed constitutional violations, stating only that the "Prosecuting Attorneys" coached Jackson to provide testimony. Compl. ¶ 50. But, given Plaintiff's position as a *pro se* litigant, the Court recognizes that there may be additional information made available to Plaintiff through discovery that would enable Plaintiff to assert claims directly against Kalra and Nasar, such as if, for example, either of them prepared Jackson to testify. By **April 15, 2022**, accordingly, the DA Defendants shall, through counsel, inform Plaintiff and the Court whether Kalra or Nasar prepared Jackson to testify before the grand jury with respect to any potential criminal charges against Plaintiff, and/or conducted an examination of Jackson before the grand jury. No later than **May 16, 2022**, Plaintiff shall file an amended complaint, alleging with specificity Kalra and Nasar's direct, personal involvement in either "coaching" Jackson to testify falsely before the grand jury, or deliberately eliciting false testimony from Jackson during the grand jury proceedings. In addition, because, as detailed *infra* at 25–26, the Court finds that Plaintiff's malicious prosecution claim is deficient because he failed to allege that the underlying criminal proceedings terminated in his favor, an argument raised by the City Defendants but not the DA Defendants, any amended malicious prosecution claim that Plaintiff wishes to assert against Kalra and Nasar should also address this issue. Failure

to do so shall result in dismissal with prejudice of Plaintiff's remaining claims against Kalra and Nasar.

### V. City's Motion to Dismiss

Plaintiff brings claims against the City Defendants, on the grounds that (1) Miller failed to conduct a thorough and complete investigation of the shooting, by not interviewing several witnesses, including the 911 caller, Compl. ¶¶ 36–37, 39; (2) in his investigation, Miller obtained—but disregarded—surveillance video from both the inside and outside of Highline Ballroom, *id.* ¶¶ 40–43; (3) that Miller "used his own added facts and embellished statements" in his investigative reports to target Plaintiff as the sole suspect in the shooting, *id.* ¶ 44, *see also* ¶ 39; (4) that Corrando, as Miller's supervisor, approved his investigative reports but failed to notice the inconsistencies and contradictions therein, *id.* ¶ 95; and (5) that Passamenti "authorized DNA tests," which revealed that the DNA evidence recovered at the scene "did not match Plaintiff," *id.* ¶ 96. The Court addresses each remaining [11] cause of action.

[11]   As noted, the Court dismissed Count 7 for relying on a statute that does not provide a private right of action, *see supra* at 7; Count 9 for being duplicative of Count 4, *see id.* at 8, and all the state constitutional claims Plaintiff asserts analogously to his federal constitutional claims, *see id.*

#### A. Time Bar

##### 1. Section 1983 Claims

**\*11** Plaintiff brings claims under § 1983 for unlawful search and seizure (Count 1); false arrest (Count 2); malicious prosecution (Count 3); deprivation of a fair trial (Count 4); and abuse of process (Count 8). As noted, § 1983 claims are subject to a three-year statute of limitations in this district. *See supra* at 15. And, for the reasons discussed with respect to the DA Defendants, the Court concludes that Counts 3 and 4 were timely pleaded. *See supra* at 16–17.

A § 1983 unlawful search and seizure claim, however, accrues on the date the allegedly unlawful search occurred. *McClanahan v. Kelly*, No. 12 Civ. 5326, 2014 WL 1317612, at *4 (S.D.N.Y. Mar. 31, 2014). Plaintiff alleges that his property was searched on January 9, February 12, and February 15, 2016. Compl. ¶¶ 46–47. The applicable statute of limitations, therefore, expired no later than February 15, 2019, nearly

Case 5:23-cv-01385-GTS-TWD    Document 8    Filed 02/06/24    Page 55 of 101

Rich v. New York, Not Reported in Fed. Supp. (2022)

2022 WL 992885

two years before Plaintiff brought suit. Plaintiff's claims are, therefore, untimely, and Count 1 is DISMISSED with prejudice as time-barred.

Section 1983 false arrest claims and abuse-of-process claims accrue from the date of Plaintiff's arrest. *See Rivera v. City of N.Y.*, No. 16 Civ. 9709, 2019 WL 252019, at *4 (S.D.N.Y. Jan. 17, 2019) (false arrest); *Anderson v. Cnty. of Putnam*, No. 14 Civ. 7162, 2016 WL 297737, at *3 (S.D.N.Y. Jan. 22, 2016) (abuse-of-process). Plaintiff was arrested on January 27, 2016, and therefore, any such claims should have been brought no later than January 27, 2019. Counts 2 and 8 are, accordingly, DISMISSED with prejudice as untimely.

### 2. Sections 1985(3) and 1986 Claims

Liberally construing the complaint, in Count 5, Plaintiff sets forth a conspiracy cause of action under § 1985(3), alleging that the City Defendants engaged in a conspiracy to have Plaintiff wrongfully convicted, *see* Compl. ¶ 97. This claim appears predicated on the NYPD investigation into the January 6, 2016 shooting, and Miller's alleged embellishment of information, and focus on Plaintiff as the sole suspect. *Id.* ¶¶ 36–37, 39, 46, 90. Plaintiff also raises a failure-to-intervene claim under § 1986 (Count 6), seemingly arising from Corrado's alleged failure to notice the inconsistencies and contradictory statements allegedly included in Miller's police reports. *Id.* ¶ 95.

Section 1985(3) claims accrue "at the time of the events that caused the injury," and are subject to a three-year statute of limitations, *Panetta*, 2020 WL 2521533, at *5. Section 1986 claims based on a failure to intervene accrue when the defendant fails to intervene, *Thomas v. City of Troy*, 293 F. Supp. 3d 282, 303 (N.D.N.Y. 2018), and must be brought within one year, *see* 42 U.S.C. § 1986. Plaintiff's claims each began accruing no later than January 27, 2016, the date of Plaintiff's arrest, because Plaintiff does not suggest that any investigation took place after that date. The applicable limitations period extends no later than January 27, 2019, for Plaintiff's § 1985(3) claim, and January 27, 2017 for Plaintiff's § 1986 claim, two and four years, respectively, before the complaint was filed. Counts 5 and 6 are, therefore, DISMISSED with prejudice as time-barred.

### 3. State Claims

To the extent Plaintiff's state common-law claims, asserting various types of negligence, arise from the NYPD investigation into the shooting on January 6, 2016; the searches of Plaintiff's property on January 9, February 12, and February 15, 2016; and Plaintiff's arrest on January 27, 2016, Plaintiff was required to file a notice of claim within 90 days of those events, *see* N.Y. Gen. Mun. L. § 50-e. As noted, Plaintiff did not file a notice of claim with the City until January 16, 2018—one year and eleven months after the latest of those dates. Compl. ¶ 16. Accordingly, each of Plaintiff's negligence claims (Counts 10–14) are DISMISSED with prejudice.[12]

[12]  As discussed *supra* at 18–19, even if the Court construes Plaintiff's notice of claim as timely based on the dismissal of Plaintiff's criminal case on October 17, 2017, Plaintiff still failed to commence this action within one year and 90 days, as required by statute. This provides an alternative ground for dismissal.

### B. Claim Against the City[13]

[13]  Plaintiff also names the NYPD as a defendant. *See* Compl. But, the NYPD is a non-suable agency of the City, and thus, to the extent any of Plaintiff's claims are brought against it, they fail as a matter of law. *See Jenkins v. City of N.Y.*, 478 F.3d 76, 93 n.19 (2d Cir. 2007). Any such claims are, accordingly, DISMISSED with prejudice.

**\*12**  The Court reads Plaintiff's complaint as claiming, under *Monell v. Department of Social Services*, 436 U.S. 658, that the City is liable for the allegedly unlawful conduct of the named NYPD officers. *See* Compl. ¶ 179. The City Defendants argue that Plaintiff does not include sufficient factual allegations to support a municipal liability claim. City Defs. Mem. at 20–22, ECF No. 34. The Court agrees.

To bring a municipal liability claim under § 1983, the plaintiff must "prove the existence of a municipal policy or custom," then demonstrate a causal connection between the policy and the alleged constitutional deprivation. *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985). Plaintiff pleads neither, offering only conclusory allegations that the City Defendants "engaged in a pattern and practice to commit the aforementioned unlawful acts," Compl. ¶ 179, and that a policy is "inferred" because the City Defendants "took no steps to reprimand or discharge the officers involved," ECF No. 39 at 27. These allegations cannot, without more,

Rich v. New York, Not Reported in Fed. Supp. (2022)

2022 WL 992885

state a claim for municipal liability. *E.g.*, *Fleming v. City of New York*, No. 18 Civ. 4866, 2020 WL 5522871, at *6 (S.D.N.Y. July 23, 2020). Because Plaintiff offers no facts which suggest that the deficiencies in his *Monell* claim may be cured by amendment, any such claim is DISMISSED with prejudice. *Strong v. City of Syracuse*, No. 16 Civ. 1054, 2020 WL 137250, at *3–4 (N.D.N.Y. Jan. 13, 2020) (dismissing *Monell* claim, with prejudice, given "[p]laintiff's conclusory allegations are insufficient to plausibly infer a custom or policy to support municipal liability").

### C. Passamenti's Personal Involvement

Plaintiff's remaining claims are Counts 3 (malicious prosecution) and 4 (denial of a fair trial). As to Defendant Passamenti, Plaintiff alleges that Passamenti authorized DNA tests, which revealed that the DNA evidence recovered at the scene "did not match Plaintiff." Compl. ¶ 96. Plaintiff does not allege that Passamenti was involved in falsification of evidence, that he attempted to hide the results of the relevant DNA tests, or that he was otherwise responsible for, or even aware of, the alleged "embellishment" of statements in the NYPD's investigative reports. Plaintiff has not, therefore, sufficiently alleged Passamenti's direct, personal involvement in any constitutional violations under § 1983. *Tangreti*, 983 F.3d at 618. And, because the record does not establish that Plaintiff could cure this pleading defect by amendment, Plaintiff's claims against Passamenti are DISMISSED with prejudice.

### D. Malicious Prosecution

A claim for malicious prosecution under § 1983—Count 3 of the complaint—requires the plaintiff to show that the criminal proceedings against him were terminated "in his favor," typically by an acquittal or another form of dismissal of the charges on the merits. *Janetka v. Dabe*, 892 F.2d 187, 189–90 (1989). The City Defendants argue that Plaintiff has not made such a showing. City Defs. Mem. at 10, 14–17. The Court agrees. Plaintiff asserts—citing no authority in support —that the dismissal of the indictment was a "termination in his favor" because dismissals that "include constitutional privilege assertions are considered favorable terminations." ECF No. 39 at 7, 10 (quotation marks omitted). It is not clear what Plaintiff means by this. And, from the Court's review of the state court transcript, it appears that, in dismissing the indictment, neither the prosecution, nor the court, made any statements indicating a belief in Plaintiff's innocence. *See Lanning v. City of Glens Falls*, 908 F.3d 19, 28 (2d Cir. 2018) (looking to the "reasons ... stated on the record for dismissing

the charges" in determining whether the termination of the criminal case was in plaintiff's favor). Indeed, Kalra expressly declined to concede that Plaintiff was innocent, instead reaffirming her belief that Plaintiff "was the shooter." Dismissal Tr. at 15. The presiding judge similarly stated on the record that dismissal of the indictment was warranted even though he did not "see any prosecutorial misconduct." *Id.* at 16. The dismissal of the indictment, therefore, left open the question of Plaintiff's guilt or innocence, and Plaintiff cannot, accordingly, assert on that basis alone, that the proceedings were terminated in his favor.

**\*13** The Court notes, however, that because four years have passed since the dismissal of the indictment, Plaintiff may be able to plead additional facts from that time that support this relevant element of his claim. There is no information before the Court as to whether, for example, Plaintiff was ever informed by the prosecutors that he had been cleared of wrongdoing, whether Jackson or anyone else was later prosecuted for the shooting, or whether the state court made any further statements regarding the merits of the charges against Plaintiff. Count 3 is, accordingly, DISMISSED without prejudice, to provide Plaintiff with an opportunity to plead additional facts to support this claim.

### E. Denial of Fair Trial

To state a claim under § 1983 for denial of a fair trial based on the fabrication of evidence by a police officer—Count 4 of the complaint—a plaintiff must allege that "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 277 (2d Cir. 2016) (citation omitted). The plaintiff need not show a favorable termination indicative of innocence to state such a claim. *Smalls v. Collins*, 10 F. 4th 117, 142–43 (2d Cir. 2021). The City Defendants argue that Plaintiff has failed to show a deprivation of his liberty interests because there was probable cause for his prosecution, in the form of corroborative ballistics evidence. City Defs. Mem. at 16 (citing Dismissal Tr. at 15); City Defs. Reply at 6–7, ECF No. 46.

Probable cause is not a complete defense to a fair trial claim. *Torres v. City of N.Y.*, No. 16 Civ. 6719, 2017 WL 4325822, at *5 (E.D.N.Y. Sept. 27, 2017) (noting that where "independent probable cause exists for the prosecution," a plaintiff must "show that the misconduct caused some deprivation above and beyond the fact of the prosecution itself." (citation

Rich v. New York, Not Reported in Fed. Supp. (2022)

2022 WL 992885

omitted)). Plaintiff plausibly alleges that Miller fabricated and "embellished" Jackson's statements in his investigative report; that Miller provided these reports to prosecutors to secure Plaintiff's indictment and arrest; and that Corrando, as Miller's supervisor, reviewed and approved these reports without identifying any "embellishments" or obvious factual contradictions. *See* Compl. ¶¶ 44–49, 95. On a motion to dismiss, the Court cannot take as true the City Defendants' factual assertion that, regardless of any alleged fabrications in Miller's reports, the prosecution had independent ballistics evidence to satisfy the probable cause standard. *Compare* City Defs. Reply at 6–7, *with* ECF No. 39 at 9–12. It cannot, therefore, find as a matter of law, that the City Defendants had probable cause for Plaintiff's indictment and prosecution. *See Bullard v. City of N.Y.*, 240 F. Supp. 2d 292, 299 (S.D.N.Y. 2003). The Court concludes, therefore, that Plaintiff has sufficiently alleged a § 1983 denial of fair trial claim against Miller and Corrando. The City Defendants' motion to dismiss Count 4 of the complaint is, accordingly, DENIED.

## CONCLUSION

For the reasons stated above, the State's motion to dismiss, ECF No. 20, is GRANTED, and Plaintiff's claims against the State are DISMISSED. The DA Defendants' motion to dismiss, ECF No. 22, is GRANTED—Plaintiff's claims against Vance are DISMISSED; and his claims against Kalra and Nasar are DISMISSED except for Counts 3 and 4, which are DISMISSED without prejudice to renewal in an amended complaint. By **April 15, 2022,** the DA Defendants shall make the disclosures directed in this order. The City Defendants' motion to dismiss is DENIED as to Count 4, and GRANTED in all other respects. Plaintiff's claims against Passamenti, the NYPD, and the City are DISMISSED; and his claims against Miller and Corrando are DISMISSED, except for Count 3, which is DISMISSED without prejudice to renewal in an amended complaint.

**\*14** By **May 16, 2022**, Plaintiff shall file an amended complaint as to Counts 3 and 4, with the additional factual allegations detailed in this order. The Clerk of Court is directed to terminate the motions pending at ECF Nos. 20, 22, and 32, and mail a copy of this order to Plaintiff *pro se*. The Court shall separately provide Plaintiff with a copy of all unpublished cases cited herein.

SO ORDERED.

## All Citations

Not Reported in Fed. Supp., 2022 WL 992885

**End of Document**                     © 2024 Thomson Reuters. No claim to original U.S. Government Works.

**Gentry v. New York, Not Reported in Fed. Supp. (2021)**

Case 5:23-cv-01385-GTS-TWD    Document 8    Filed 02/06/24    Page 58 of 101

2021 WL 3037709

2021 WL 3037709
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Rondue GENTRY, Plaintiff,

v.

State of NEW YORK; Kyle Filli; David Hurley; Heath
McCrindle; Steven Sharp; and David Soares, Defendants.

1:21-CV-0319 (GTS/ML)
|
Signed 06/14/2021

**Attorneys and Law Firms**

Rondue Gentry, Plaintiff, Pro Se, Lakeview Shock
Incarceration Correctional Facility, P.O. Box T, Brocton, New
York 14716.

### ORDER and REPORT-RECOMMENDATION

Miroslav Lovric, U.S. Magistrate Judge

### I. INTRODUCTION

**\*1**  The Clerk has sent this *pro se* complaint (Dkt. No. 1)
together with an amended application to proceed *in forma
pauperis* (Dkt. No. 5) filed by Rondue Gentry ("Plaintiff") to
the Court for review. For the reasons discussed below, I grant
Plaintiff's amended *in forma pauperis* application (Dkt. No.
5) and recommend that the Complaint be accepted for filing in
part, dismissed in part without leave to amend, and dismissed
in part with leave to amend.

### II. BACKGROUND

On March 22, 2021, Plaintiff commenced this action by
filing a verified Complaint and a motion to proceed *in
forma pauperis*. (Dkt. Nos. 1, 2.) On March 23, 2021, the
Court denied Plaintiff's *in forma pauperis* application as
incomplete and administratively closed the case. (Dkt. No. 4.)
On April 9, 2021, Plaintiff filed an amended *in forma pauperis*
application. (Dkt. No. 5.) As a result, the case was reopened
and restored to the Court's active docket. (Dkt. No. 6.)

Construed as liberally [1] as possible, the Complaint generally
alleges that Plaintiff's civil rights were violated by the State of
New York, New York State Police Officers Kyle Filli, David
Hurley, and Heath McCrindle, and Assistant District Attorney

Steven Sharp and Albany County District Attorney David
Soares (collectively "Defendants"). (*See generally* Dkt. No.
1.)

[1]  The court must interpret *pro se* complaints to
raise the strongest arguments they suggest. *Soto v.
Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting
*Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.
1994)).

More specifically, Plaintiff alleges that on September 2, 2016,
he was arrested on felony charges but released on bail on
September 9, 2016. (*Id.* at 3.) While out on bail, Plaintiff
alleges that on April 9, 2017, Defendant Filli stopped him
while he was driving near a toll plaza. (*Id.* at 3 & Attach.
2 at 2 [Pl.'s Exs.].) [2]  Plaintiff alleges that, during the stop,
"Defendant [ ] Filli [ ] falsely accused Plaintiff of having a
lit marijuana blunt in his ashtray" and that when instructed
to exit his vehicle, Plaintiff put items down the side of his
seat and eventually drove away from the officer. (Dkt. No.
1 at 3.) After he allegedly fled the scene, Plaintiff alleges
that Defendant Filli falsely accused Plaintiff of making four
"u-turns" on the interstate and, at one point, traveling at 127
miles per hour, and made "several [other] vehicle and traffic
law violations." (*Id.*) Defendant Filli eventually lost sight of
Plaintiff's vehicle. (Dkt. No. 1, Attach. 2 at 2.)

[2]  "A copy of a written instrument that is an exhibit
to a pleading is a part of the pleading for all
purposes." Fed. R. Civ. P. 10(c); *Cortec Indus.,
Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.
1991) ("the complaint is deemed to include any
written instrument attached to it as an exhibit or
any statements or documents incorporated in it by
reference.").

On or about April 11, 2017, Plaintiff alleges that he was
contacted by his attorney, [3] who informed Plaintiff that he
had received a call from Defendant Sharp, the Albany County
District Attorney, regarding the incident with Defendant Filli
on April 9, 2017. Plaintiff alleges that his attorney informed
him that if he did not turn himself in, a warrant would be
issued for his arrest. (Dkt. No. 1 at 4.) On the advice of
his attorney, Plaintiff alleges that he appeared at the Albany
City Courthouse on April 18, 2017, "to address the matter
in good faith and resolve any and all confusion[.]" (*Id.*)
Plaintiff alleges that when he arrived at the courthouse with
his attorney, he was arrested by Defendant Hurley for charges

Gentry v. New York, Not Reported in Fed. Supp. (2021)

2021 WL 3037709

Case 5:23-cv-01385-GTS-TWD   Document 8   Filed 02/06/24   Page 59 of 101

"lo[d]ged against him by Defendant Kyle Filli ... which were all false allegations." (*Id*.)

<sup>3</sup>    Plaintiff's references to "his attorney" in the Complaint appear to relate to his representation in certain criminal matters. Plaintiff has indicated to the Court that he is proceeding *pro se* in this matter. (Dkt. No. 1 at 1.)

**\*2** Plaintiff next alleges that he was then taken to the State Trooper Barracks where Defendant McCrindle "falsified a legal document alleging to have read Plaintiff his Miranda right warnings when this is not true." (*Id*.) The same day he was arrested, on April 18, 2017, Plaintiff alleges that he was transported to Guilderland County Courthouse and arraigned on charges from both the Town of Guilderland and the City of Albany. (*Id*.)

Following his arraignment, Plaintiff alleges that he was transported to the Albany County Courthouse and "arraigned on a bail revocation hearing for a prior case." (*Id*. at 5.) Plaintiff alleges that his bail was then revoked, and he was transported to the Albany County Correctional Facility where he remained confined for eleven months. (*Id*.)

On April 20, 2017, Plaintiff alleges that Defendant Soares "maliciously prosecuted" him under case number 17040697 in the Town of Guilderland and case number 17-244811 in the City of Albany while "knowing the allegations [against Plaintiff] were false." (*Id*.) Plaintiff next alleges that, on March 16, 2018, "approximately eleven (11) months after being arraigned in Guilderland County Court ... Plaintiff received a certificate of disposition dismissing the entire [p]roceeding in favor of the accused." (*Id*.) The Complaint includes a "Certificate of Disposition" from Albany City Court for case number 17-244811, certifying that a "Judgment of Dismissal" was entered as to certain charges against Plaintiff. (Dkt. No. 1, Attach. 2 at 12.) The Complaint also includes a copy of a letter from the Deputy Court Clerk for the Town of Guilderland referencing "Case 17040697" and stating that "this case was transferred to Albany City Court as Guilderland Town Court did not have jurisdiction over this case." (*Id*. at 14.)

Liberally construed, the Complaint appears to allege the following claims: (1) the State of New York failed to "properly train" its state police officers, leading to his false arrest, malicious prosecution, violation of due process rights, and cruel and unusual punishment; (2) Defendants Filli and Hurley, in their individual and official capacities, fabricated

evidence and falsely arrested Plaintiff in violation of the Fourth Amendment and Plaintiff's right to due process; (3) Defendant McCrindle, in his individual and official capacity, fabricated evidence and failed to read Plaintiff his *Miranda* warnings, in violation of Plaintiff's right to due process; (4) Defendant Sharp, in his individual and official capacity, had no "valid or proper warrant" to detain Plaintiff; and that (5) Defendants Sharp and Soares, in their individual and official capacities, "maliciously prosecuted" Plaintiff in violation of the Fourth Amendment and Plaintiff's right to due process. (Dkt. No. 1 at 4-8.)

As relief, Plaintiff seeks money damages from all Defendants, including $20,000,000 from the State of New York; $5,000,000 from Defendant Filli; $5,000,000 from Defendant Hurley; $1,000,000 from Defendant McCrindle; $3,000,000 from Defendant Sharp; and $10,000,000 from Defendant Soares. (*Id*. at 7-8.)

For a more complete statement of Plaintiff's claims, refer to the Complaint. (Dkt. No. 1.)

### III. PLAINTIFF'S AMENDED APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, 09-CV-1922, 2010 WL 5185047, at \*1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Cash*, 2010 WL 5185047, at \*1 (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)). <sup>4</sup>

<sup>4</sup>    Section § 1915(g) prohibits a prisoner from proceeding *in forma pauperis* where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. *See* http:// pacer.uspci.uscourts.gov. It does not appear from that review that Plaintiff had accumulated three

**Gentry v. New York, Not Reported in Fed. Supp. (2021)**

2021 WL 3037709

strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

**\*3** Upon review, the Court finds that Plaintiff has submitted a completed *in forma pauperis* application (Dkt. No. 5) which demonstrates economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed an inmate authorization form. (Dkt. No. 3.) Accordingly, Plaintiff's amended application to proceed with this action *in forma pauperis* is granted.

## IV. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

Having found that Plaintiff meets the financial criteria for commencing this action *in forma pauperis*, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A(a). Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that— ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[5]

[5]     To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis in either law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a government entity or officer or employee of a government entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against governmental officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, a court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader

is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of *res judicata* is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

## V. ANALYSIS

**\*4** In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed the Complaint with this principle in mind, I recommend that the Complaint be accepted for filing in part and dismissed in part.

### A. *Heck* Delayed Accrual Claims

"A claim for damages [that would necessarily imply the invalidity of a plaintiff's state court] conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). In *Covington v. City of New York*, the Second Circuit held that "if success on a § 1983 claim would necessarily impugn the validity of a conviction in a pending criminal prosecution, such a claim *does not accrue* so long as the potential for a judgment in the pending criminal prosecution continues

Gentry v. New York, Not Reported in Fed. Supp. (2021)

2021 WL 3037709

to exist." *Covington v. City of New York*, 171 F.3d 117, 124 (2d Cir. 1999); *see also McDonough v. Smith*, 139 S. Ct. 2149, 2156-57 (2019) (holding that a plaintiff could not bring a "fabricated-evidence claim under § 1983 prior to favorable termination of his prosecution"); *Perry v. City of Albany*, 20-CV-165, 2020 WL 3405636, at *4 (N.D.N.Y. May 6, 2020) (Stewart, M.J.) ("[c]laims of false arrest, false imprisonment, malicious prosecution, and fabrication of evidence are generally viewed as barred by the rule in *Heck*."), *report and recommendation adopted by*, 2020 WL 3403080 (N.D.N.Y. June 19, 2020) (Suddaby, C.J.); *McFadden v. Jaeon*, 12-CV-1255, 2012 WL 4107466, at *2 (N.D.N.Y Aug. 23, 2012) (Randolph, M.J.) (barring claims for false arrest and "faulty *Miranda* warnings" pursuant to *Heck*), *report and recommendation adopted by*, 2012 WL 4107465 (N.D.N.Y. Sept. 18, 2012) (Mordue, J.); *Harris v. Buffardi*, 08-CV-1322, 2011 WL 3794235, at *10 (N.D.N.Y. Aug. 24, 2011) (Sharpe, J.) (claims for "violation of his due process rights, fabrication of evidence, obstruction of justice, bad faith inadequate investigation, and §§ 1983 and 1985 conspiracy—all of which are patent attacks on the validity of [plaintiff's] conviction—[were] barred.").

Plaintiff specifically alleges that the case against him in the City of Albany, case number 17-244811, was "terminated in his favor" on March 16, 2018 when he received a "Judgement of Dismissal." (Dkt. No. 1 at 5, Attach. 2 at 12.) However, Plaintiff does not similarly allege that the case against him in the Town of Guilderland, case number 17040697, was also dismissed or otherwise terminated in his favor. Instead, Plaintiff vaguely alleges that the "entire proceeding" was dismissed and that the charges against him were "terminated in his favor." (Dkt. No. 1 at 5, 7.) While the Complaint includes a copy of a letter from the Deputy Court Clerk for the Town of Guilderland referencing "Case 17040697" that states that "th[e] case was transferred to Albany City Court as Guilderland Town Court did not have jurisdiction[,]" Plaintiff does not specifically allege how the charges from that case were resolved. (Dkt. No. 1, Attach. 2 at 14.)

Because Plaintiff has failed to allege sufficient facts showing that the case filed against him in the Town of Guilderland terminated in his favor, the Court has a basis to dismiss all of Plaintiff's claims relating to that case as premature pursuant to *Heck*. However, because I also recommend that nearly all of Plaintiff's claims should be dismissed for the additional, independent reasons that follow, I only recommend that the fabrication of evidence claims relating to the charges against Plaintiff in the Town of Guilderland against Defendants Filli,

Hurley, and McCrindle, in their individual capacities, be dismissed as premature pursuant to *Heck*. [6]

[6] The Complaint does not separate claims against the Defendants based on the two underlying criminal cases against Plaintiff in the City of Albany and Town of Guilderland. However, as discussed in Section V.D.1.iii. of this Report-Recommendation, Plaintiff's fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their individual capacities, that relate to the criminal charges against Plaintiff in the City of Albany, should be accepted for filing.

**B. Claims Against the State of New York**

**\*5** The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "New York State has not consented to suit in federal court." *Abrahams v. Appellate Div. of Supreme Court*, 473 F. Supp. 2d 550, 556 (S.D.N.Y. 2007) (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d. Cir. 1977)). Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states. *See Quern v. Jordan*, 440 U.S. 332, 340-41 (1979). Therefore, I recommend dismissal of all claims brought by Plaintiff against the State of New York pursuant to the Eleventh Amendment. [7]

[7] Plaintiff also alleges that he "filed a claim in the New York State Court of Claims [against the State of New York] dealing with the same facts involved in this action[,]" but that the case was dismissed on July 25, 2019 "due to failure of establishing proper service." (Dkt. No. 1 at 2.) A court's dismissal for failure to establish proper service is not a final judgment such that *res judicata* would apply. *Martin v. New York State Dep't of Mental Hygiene*, 588 F.2d 371, 373 n.3 (2d Cir. 1978) ("a dismissal for failure of service of process, of course, has no *res judicata* effect."); *Troeger v. Ellenville Cent. Sch. Dist.*, 15-CV-1294, 2016 WL 5107119, at *7

Gentry v. New York, Not Reported in Fed. Supp. (2021)

2021 WL 3037709

(N.D.N.Y. Sept. 20, 2016) (D'Agostino, J.) ("The dismissal based upon failure to join a necessary party and improper service are not final decisions on the merits for *res judicata* purposes."). Based on the Court's review of the New York Court of Claims public docket, Plaintiff's case against the State of New York, Claim No. 132064, was indeed dismissed on June 3, 2019 for failure to properly serve the State of New York in accordance with the service requirements set forth in the New York Court of Claims Act § 11 and 22 N.Y.C.R.R. § 206.5(a). *Gentry v. State of New York*, Claim No. 132064 (N.Y. Ct. Cl. June 3, 2019).

### C. Claims Against Defendants Sharp and Soares

#### 1. Individual Capacity

"It is by now well established that a state prosecuting attorney who acted within the scope of his duties in initiating and pursing a criminal prosecution is immune from a civil suit for damages under § 1983." *Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005) (citation and internal quotation marks omitted) (collecting cases). "Because the immunity attaches to the official prosecutorial function ... and because the initiation and pursuit of a criminal prosecution are quintessential prosecutorial functions ... the prosecutor has absolute immunity for the initiation and conduct of a prosecution unless he proceeds in the clear absence of all jurisdiction." *Shmueli*, 424 F.3d at 237 (citations and internal quotation marks omitted).

These principles also protect a prosecutor against malicious prosecution claims brought under state law. *Id*. at 238; *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 274 n.5 (1993) (indicating that the court's conclusion that absolute immunity protects a prosecutor against § 1983 claims in the nature of malicious prosecution was based in part on the "common-law tradition of immunity for a prosecutor's decision to bring an indictment, whether he has probable cause or not"); *Imbler v. Pachtman*, 424 U.S. 409, 424 (1976) (same principles require conferral of absolute immunity for damages claims under § 1983 and state law).

**\*6** However, "[a] prosecutor is not absolutely immune solely because she engaged in the conduct in question during her line of work." *D'Alessandro v. City of New York*, 713 F. App'x 1, 5 (2d Cir. 2017) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). A prosecutor is entitled to absolute immunity

"when she acts as an 'advocate.' " *Id*. (citing *Warney v. Monroe Cnty.*, 587 F.3d 113, 121 (2d Cir. 2009)). To be sure, "[a] prosecutor wears many hats" including "administrat[or]," "investigator," and "advocate[ ]." *Id*. (quoting *Hill v. City of New York*, 45 F.3d 653, 656 (2d Cir. 1995)). The "functional" test of whether a prosecutor was acting as an advocate is an objective one, and a court only asks whether "the *conduct* in question could "reasonably" fall under the rubric of the prosecutor's function as an advocate." *Id*. at 5 n.6. (emphasis in original) (citations omitted). "If it does, then absolutely immunity attaches even if the prosecutor engaged in those actions with vindictive or malicious intent." *Id*.

"Under our case law, a prosecutor unquestionably acts as an advocate—and therefore receives absolute immunity— when she initiates and pursues a criminal prosecution." *Id*. (citing *Shmueli*, 424 F.3d at 236). Indeed, "a prosecutor still acts within the scope of her duties even if she ... knowingly uses false testimony, ... engages in malicious prosecution, or attempts to intimidate an individual into accepting a guilty plea." *Id*. (citing *Shmueli*, 424 F.3d at 237-38; *Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006)); *see also Parker v. Soares*, 19-CV-113, 2019 WL 2232591, at *6 (N.D.N.Y. May 23, 2019) (Hummel, M.J.) (holding that prosecutorial immunity barred certain false arrest claims against Assistant District Attorney David Soares), *report and recommendation adopted by*, 2019 WL 2491918 (N.D.N.Y. June 14, 2019) (Sharpe, J.).

Here, I find that the allegations against Defendants Sharp and Soares arise out of acts intimately associated with the judicial phase of the criminal process, in their role as advocates, including the initiation of criminal proceedings against Plaintiff in the City of Albany and Town of Guilderland. As a result, I recommend that any claims against Defendants Sharp and Soares, in their individual capacity, be dismissed.

#### 2. Official Capacity

As previously stated, "[t]he Eleventh Amendment generally bars suits against a state in federal court." *Pikulin v. City Univ. of N.Y.*, 176 F.3d 598, 600 (2d Cir. 1999) (per curiam) (citation omitted). When a defendant is sued in his official capacity, we treat the suit as one against the "entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165–66, (1985). If a district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the state, and therefore immune from suit in her official capacity. *D'Alessandro*, 713 F. App'x

Gentry v. New York, Not Reported in Fed. Supp. (2021)

2021 WL 3037709

1, 8 (2d Cir. 2017) (citing *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993)).

Here, the claims against Defendants Sharp and Soares, in their official capacities, are effectively claims against the State of New York. For that reason, these claims must be dismissed.

### D. Claims Against Defendants Filli, Hurley, and McCrindle

#### 1. Individual Capacity

Liberally construed, the Complaint alleges claims against Defendants Filli and Hurley for fabrication of evidence and false arrest, in violation of the Fourth Amendment and Plaintiff's right to due process. The Complaint also alleges claims against Defendant McCrindle for fabricating evidence and failing to read Plaintiff his *Miranda* warnings in violation of Plaintiff's right to due process. (*See generally* Dkt. No. 1 at 3-4, 6-8.) [8]

[8]  The Complaint makes other, sporadic legal conclusions. For example, Plaintiff alleges that, "as a result of the actions of all defendants [he has] suffered mental anguish, extreme emotion distress and cruel and unusual punishment." (Dkt. No. 1 at 7.) Plaintiff later clarifies that he seeks to hold the State of New York liable for his "cruel and unusual punishment." (*Id.*) However, as explained in Section V.A. above, the State of New York is immune from suit. To the extent that Plaintiff alleges that Defendants Filli, Hurley, and McCrindle, in their individual capacities, may have caused his "cruel and unusual punishment" or otherwise inflicted emotional distress upon him, his bare legal conclusions are insufficient to withstand the Court's review under 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A.

 *7 For the following reasons, I recommend dismissal of all claims against Defendants Filli, Hurley, and McCrindle in their official capacities. I also recommend dismissal of the false arrest claims against Defendants Filli and Hurley, in their individual capacities, and dismissal of the *Miranda* claim against Defendant McCrindle, in his individual capacity. However, I recommend that the fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their

individual capacities, as relates to the case against Plaintiff in the City of Albany, be accepted for filing.

### i. False Arrest Claims Against Defendants Filli and Hurley

"A § 1983 claim for false arrest, which derives from an individual's right under the Fourth Amendment to be free from unreasonable seizures, including arrest without probable cause, *see, e.g., Lennon v. Miller*, 66 F.3d 416, 423 (2d Cir. 1995), is substantially the same as a claim for false arrest under New York law." *Kates v. Greece Police Dep't*, 16-CV-6554, 2017 WL 11548970, at *3 (W.D.N.Y. Feb. 21, 2017) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Generally, the statute of limitations for a § 1983 action accruing in New York is three years. *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009). Although the statute of limitations is an affirmative defense, where it is clear from the face of the complaint that a claim is barred by the applicable statute of limitations, the claim is subject to dismissal for failure to state a claim on 28 U.S.C. § 1915(e)(2)(B) review. *See Pino v. Ryan*, 49 F.3d 51, 53-54 (2d Cir. 1995) (holding that a complaint can be dismissed on initial review based on a defense that appears on the face of the complaint); *Syfert v. City of Rome*, 17-CV-0578, 2018 WL 3121611, at *3-5 (N.D.N.Y. Feb. 12, 2018) (Dancks, M.J.) (dismissing all claims as barred by the statute of limitations on initial review pursuant to 28 U.S.C. § 1915(e)(2)(B)).

With regard to Plaintiff's allegations that Defendants Filli and Hurley "falsely arrested" him, the Court must determine when the claims accrued. The Second Circuit in *Singleton* found that a false arrest claim accrued on the date of arrest because that "was the time at which plaintiff knew of his injury arising from the alleged ... false arrest." *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980). Applying *Wallace v. Kato*, 549 U.S. 384 (2007), the Second Circuit more recently held that a false arrest claim accrues when the "false imprisonment ends," or more specifically, "when 'the victim becomes held pursuant to legal process,' " *e.g.*, when he is arraigned on charges. *Lynch v. Suffolk Cty. Police Dep't, Inc.*, 348 F. App'x 672, 675 (2d Cir. 2009) (quoting *Wallace*, 549 U.S. at 388-89); *see also Thomas v. Heid*, 17-CV-1213, 2017 WL 9673716, at *3 (N.D.N.Y. Dec. 6, 2017) (recognizing that a false arrest claim accrues under § 1983 is when "the alleged false imprisonment ends: when the arrestee is bound over by a magistrate or arraigned on charges.") (Stewart, M.J.), *report and recommendation adopted*, 2018 WL 1773130 (N.D.N.Y.

Case 5:23-cv-01385-GTS-TWD    Document 8    Filed 02/06/24    Page 64 of 101

Gentry v. New York, Not Reported in Fed. Supp. (2021)

2021 WL 3037709

Apr. 12, 2018) (D'Agostino, J.). Other cases have simply held that a false arrest claim under § 1983 accrues on the date of arrest itself. *See Kislowski v. Kelley*, 19-CV-218, 2020 WL 495059, at *3 (N.D.N.Y. Jan. 30, 2020) (Stewart, M.J.) ("a false arrest claim accrues at the time of the arrest.").

The distinction between the date of arrest and the date of arraignment here is of no moment because Plaintiff alleges that he was arrested and arraigned on the same day, April 18, 2017. (Dkt. No. 1 at 4.) Even if the charges stemming from the April 9, 2017, incident were ultimately dismissed on March 16, 2018, as Plaintiff alleges, [9] his false arrest claims against Defendants Filli and Hurley first accrued on April 18, 2017, the date when he was both arrested and arraigned on those charges. As a result, the statute of limitations on his false arrest claims under § 1983 expired on or about April 18, 2020. The Complaint was signed on March 6, 2021 and filed with the Court on March 22, 2021, well after the three-year period had expired. [10] I therefore recommend that Plaintiff's Fourth Amendment false arrest claims against Defendants Filli and Hurley be dismissed as untimely.

[9]    Significantly, it is no longer the law of this circuit that a "false arrest" claim under § 1983 accrues only once a plaintiff received a favorable judgment stemming from the allegedly false arrest. *See Jones v. City of New York*, 13-CV-929, 2016 WL 1322443, at *3 (S.D.N.Y. Mar. 31, 2016) (explaining that the prior rule from *Covington v. City of New York*, 171 F.3d 117 (2d Cir. 1999) that a false arrest claim may not accrue until a favorable verdict was reached was overruled by the Supreme Court's *Wallace* decision).

[10]    Under the prison mailbox rule, a prisoner's complaint is deemed filed when it is handed to prison officials—presumptively on the date that the complaint was signed. *Hardy v. Conway*, 162 Fed. App'x 61, 62 (2d Cir. 2006) (collecting cases).

### ii. *Miranda* Claim Against Defendant McCrindle

**\*8** As a general matter, "no cause of action exists under 42 U.S.C. § 1983 for *Miranda* violations." *Hernandez v. Llukaci*, 16-CV-1030, 2019 WL 1427429, at *7 (N.D.N.Y. Mar. 29, 2019) (Hurd, J.) (citing *Chavez v. Martinez*, 538 U.S. 760, 767 (2003)). The failure to inform a plaintiff of his rights under *Miranda*, "does not, without more, result in §

1983 liability." *Deshawn E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998). Instead, the remedy for a violation of the right against self-incrimination is 'the exclusion from evidence of any ensuing self-incriminating statements' and 'not a § 1983 action.' " *Id.* (quoting *Neighbour v. Covert*, 68 F.3d 1508, 1510 (2d Cir. 1995)). However, "[a] *Miranda* violation that amounts to actual coercion based on outrageous government misconduct is a deprivation of a constitutional right that can be the basis for a § 1983 suit, even when a confession is not used against the declaration in any fashion." *Id.* at 348 (internal citations omitted).

The Complaint does not allege any facts that would plausibly suggest that Defendant McCrindle coerced Plaintiff into giving any inculpatory statements that were later used against him. Additionally, much like Plaintiff's claims alleging false arrest, Plaintiff's *Miranda* claim against Defendant McCrindle is untimely because it was not made within three years from the date that it accrued. *See Rahn v. Erie County Sheriff's Dept.*, 96-CV-0756E, 1999 WL 1067560, at *2 (W.D.N.Y. Nov. 19, 1999) (finding that a *Miranda* claim accrued "about the time of [plaintiff's] arrest" and was subject to the three year statute of limitations bar to § 1983 claims). For these reasons, I recommend Plaintiff's *Miranda* claim against Defendant McCrindle be dismissed.

### iii. Fabrication of Evidence Claims Against Defendants Filli, Hurley, and McCrindle

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused' constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) (citations omitted). Unlike Plaintiff's claims for false arrest and for a *Miranda* violation, "[t]he statute of limitations for a fabricated-evidence claim ... does not begin to run until the criminal proceedings against the defendant (*i.e.*, the § 1983 plaintiff) have terminated in his favor." *McDonough v. Smith*, 139 S. Ct. 2149, 2154–55 (2019).

Mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed and without expressing an opinion as to whether the Complaint can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's fabrication of evidence claims relating to the case

2021 WL 3037709

against Plaintiff in the City of Albany, against Defendants Filli, Hurley, and McCrindle, in their individual capacities.

### iv. Due Process Claims Against Filli, Hurley, and McCrindle

The Complaint makes several generalized references to being deprived of "due process" and his "life, liberty, and happiness" in connection with the claims against Defendants McCrindle, Filli, and Hurley. (Dkt. No. 1 at 6-7.) But where a plaintiff makes due process and false arrest claims stemming from the same set of facts, the Second Circuit has held that the two claims "merge," such that a plaintiff's due process claim is subsumed by the "false arrest" claim. *Fernandez-Bravo v. Town of* Manchester, 711 F. App'x 5, 8 (2d Cir. 2017); *Maliha v. Faluotico*, 286 F. App'x 742, 744 (2d Cir. 2008); *see also Lozado v. Weilminster*, 92 F. Supp. 3d 76, 102 (E.D.N.Y. 2015) (holding that a plaintiff's procedural due process claim merges with his false arrest claim, the constitutional source of which is the Fourth Amendment); *but see Sepulveda v. City of New York*, 15-CV-5187, 2017 WL 3891808, at *5 (E.D.N.Y. Feb. 14, 2017) (recognizing that a false arrest claim will not merge with a due process claim where the due process claim challenges the conditions of detention, as opposed to the wrongfulness of the detention itself), *report and recommendation adopted*, 15-CV-5187, 2017 WL 3887872 (E.D.N.Y. Sept. 5, 2017).

**\*9** It is clear from the face of the Complaint that Plaintiff's vague and conclusory references to being denied due process stem directly from the allegations relating to his false arrest. [11] I therefore find that any due process claims Plaintiff alleges against Defendants Filli, Hurley, and McCrindle merge into his false arrest claims, and consistent with my prior analysis of those claims in Section V.D.1.i., I recommend that they are dismissed as untimely.

[11]     Plaintiff also makes the conclusory allegation that he was "deprived of bail." (Dkt. No. 1 at 7.) However, it is clear from the face of the Complaint that Plaintiff was afforded bail, as he alleges that when the April 9, 2017 incident took place, he was out on bail from prior charges. (*Id*. at 3.) Only after he was arrested and arraigned on charges stemming from that April 9, 2017 incident does he allege that his bail on the prior charges was revoked, "after [a] bail revocation hearing." (*Id*. at 5.)

### 2. Official Capacity

" '[C]laims against a government employee in his official capacity are treated as a claim against the municipality,' and, thus, cannot stand under the Eleventh Amendment." *Jackson v. Gunsalus*, 16-CV-0647, 2016 WL 4004612, at *2 (N.D.N.Y. June 24, 2016) (Dancks, M.J.) (quoting *Hines v. City of Albany*, 542 F. Supp. 2d 218, 227 (N.D.N.Y. 2008) (McCurn, J.)), *report and recommendation adopted by*, 2016 WL 3983635 (July 25, 2016) (Sharpe, J.); *see Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Graham*, 473 U.S. at 166-67) ("Suits against state officials in their official capacity therefore should be treated as suits against the State.").

Here, to the extent that Plaintiff asserts claims against Defendants Filli, Hurley, and McCrindle in their official capacities, I recommend that those claims be dismissed because they are, in reality, claims against the State of New York, which is immune from suit.

## VI. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [12]

[12]     See also *Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant

Gentry v. New York, Not Reported in Fed. Supp. (2021)

Case 5:23-cv-01385-GTS-TWD   Document 8   Filed 02/06/24   Page 66 of 101

2021 WL 3037709

leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

**\*10** I recommend that Plaintiff's claims against Defendant State of New York be dismissed with prejudice and without leave to amend. *Sonnick v. Budlong*, 20-CV-0410, 2020 WL 2999109, at \*10 (N.D.N.Y. June 4, 2020) (Lovric, M.J.) (recommending dismissal without leave to amend, claims against New York State Police), *report and recommendation adopted by*, 2020 WL 4345004 (N.D.N.Y. July 29, 2020) (McAvoy, J.). Similarly, I recommend that Plaintiff's claims against Defendants Filli, Hurley, and McCrindle, in their official capacities, be dismissed with prejudice and without leave to amend because they are immune from suit. *See Jackson v. Gunsalus*, 16-CV-0647, 2016 WL 4004612, at \*2 (N.D.N.Y. June 24, 2016) (Dancks, M.J.) (dismissing with prejudice and without leave to amend claims against police officers, in their official capacities, as barred by the Eleventh Amendment), *report and recommendation adopted*, 2016 WL 3983635 (July 25, 2016) (Sharpe, J.). I also recommend that Plaintiff's claims against Defendants Soares and Sharp, in their official and individual capacities, be dismissed with prejudice and without leave to amend because they are also immune from suit. *See Lawrence v. Sherman*, 20-CV-0694, 2020 WL 5904789, at \*3 (N.D.N.Y. Oct. 6, 2020) (D'Agostino, J.) (dismissing with prejudice claims against a defendant prosecutor based on the doctrine of prosecutorial immunity).

I also recommend dismissal with leave to amend the fabrication of evidence claims, that relate to the case against Plaintiff in the Town of Guilderland, against Defendants Filli, Hurley, and McCrindle, in their individual capacities. [13] *Perry v. City of Albany*, 20-CV-165, 2020 WL 3405636, at \*4 (N.D.N.Y. May 6, 2020) (Stewart, M.J.) (recommending dismissal with leave to amend claims that appeared to be barred based on *Heck*), *report and recommendation adopted*, 20-CV-0165, 2020 WL 3403080 (N.D.N.Y. June 19, 2020) (Suddaby, C.J.).

[13]   As discussed in Section V.D.1.iii. above, I recommend that the fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their individual capacities, that relate to the case

against Plaintiff in the City of Albany be accepted for filing because Plaintiff specifically alleged that the City of Albany case was terminated in Plaintiff's favor. (Dkt. No. 1 at 5.)

As to Plaintiff's claims for false arrest against Defendants Filli and Hurley, in their individual capacities, and for a *Miranda* violation against Defendant McCrindle, in his individual capacity, although I have found that these claims are barred by the applicable statute of limitations for the reasons stated in Sections V.D.1.i. and V.D.1.ii., a district court typically should not dismiss claims as time-barred without providing a *pro se* plaintiff with "notice and an opportunity to be heard" as to whether there might be a meritorious tolling argument or other reason why the complaint might be considered. *Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007). For that reason, I recommend that Plaintiff's false arrest and *Miranda* claims be dismissed with leave to amend, even though it appears very unlikely to the undersigned that Plaintiff can state plausible claims.

If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at \*7 (N.D.N.Y. May 23, 1995) (Pooler, J.). In any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. The revised pleading must also allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**\*11** **ACCORDINGLY**, it is

Gentry v. New York, Not Reported in Fed. Supp. (2021)

2021 WL 3037709

Case 5:23-cv-01385-GTS-TWD   Document 8   Filed 02/06/24   Page 67 of 101

**ORDERED** that Plaintiff's amended *in forma pauperis* application (Dkt. No. 5) is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court (1) provide the Superintendent of the facility that Plaintiff has designated as his current location with a copy of Plaintiff's inmate authorization form (Dkt. No. 3) and notify that official that Plaintiff has filed this action and is required to pay the Northern District of New York the entire statutory filing fee of $350.00 in installments, over time, pursuant to 28 U.S.C. § 1915; and (2) provide a copy of Plaintiff's inmate authorization form (Dkt. No. 3) to the Financial Deputy of the Clerk's Office; and it is further respectfully

**RECOMMENDED** that the Court **ACCEPT FOR FILING** Plaintiff's fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their individual capacities, as those claims relate to the case against Plaintiff in the City of Albany; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE AND WITH LEAVE TO REPLEAD** Plaintiff's fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their individual capacities, as those claims relate to the case against Plaintiff in the Town of Guilderland, as premature pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994); and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH PREJUDICE AND WITHOUT LEAVE TO REPLEAD** Plaintiff's claims against the State of New York, Defendants Filli, Hurley, and McCrindle, in their official capacities, and Defendants Sharp and Soares, in their official and individual capacities; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE AND WITH LEAVE TO REPLEAD**

Plaintiff's false arrest claims against Defendants Filli and Hurley, in their individual capacities, and Plaintiff's claim for *a Miranda* violation against Defendant McCrindle, in his individual capacity; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [14] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b) (1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

[14]  If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2021 WL 3037709

---

Gentry v. New York, Not Reported in Fed. Supp. (2021)

2021 WL 3032691

2021 WL 3032691
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Rondue GENTRY, Plaintiff,

v.

State of NEW YORK; Kyle Filli; David Hurley; Heath
McCrindle; Steven Sharp; and David Soares, Defendants.

1:21-CV-0319 (GTS/ML)
|
Signed 07/19/2021

**Attorneys and Law Firms**

RONDUE GENTRY, 18-A-1238, Plaintiff, Pro Se, Lakeview
Shock Incarceration Correctional Facility, P.O. Box T,
Brocton, New York 14716.

**DECISION and ORDER**

GLENN T. SUDDABY, Chief United States District Judge

**\*1** Currently before the Court, in this *pro se* civil
rights action filed by Rondue Gentry ("Plaintiff") against
the State of New York, New York State Police Officers
Kyle Filli, David Hurley and Heath McCrindle, Assistant
District Attorney Steven Sharp, and Albany County District
Attorney David Soares ("Defendants"), is United States
Magistrate Judge Miroslav Lovric's Report-Recommendation
recommending that certain of Plaintiff's claims be dismissed
with prejudice (and without prior leave to amend), certain of
those claims be dismissed without prejudice (and with limited
leave to amend in this action), and the remainder of those
claims survive the Court's *sua sponte* review of his Complaint.
(Dkt. No. 7.) Plaintiff has not filed an Objection to the Report-
Recommendation, and the deadline by which to do so has
expired. (*See generally* Docket Sheet.)

After carefully reviewing the relevant papers herein,
including Magistrate Judge Lovric's thorough Report-
Recommendation, the Court can find no clear error in
the Report-Recommendation.[1] Magistrate Judge Lovric
employed the proper standards, accurately recited the facts,
and reasonably applied the law to those facts. As a result,
the Report-Recommendation is accepted and adopted in its
entirety for the reasons set forth therein.

[1] When no objection is made to a report-
recommendation, the Court subjects that report-
recommendation to only a clear-error review. Fed.
R. Civ. P. 72(b), Advisory Committee Notes: 1983
Addition. When performing such a clear-error
review, "the court need only satisfy itself that there
is no clear error on the face of the record in order to
accept the recommendation." *Id.*; *see also Batista
v. Walker*, 94-CV-2826, 1995 WL 453299, at \*1
(S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am
permitted to adopt those sections of [a magistrate
judge's] report to which no specific objection is
made, so long as those sections are not facially
erroneous.") (internal quotation marks omitted).

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Lovric's Report-
Recommendation (Dkt. No.7) is **ACCEPTED** and
**ADOPTED** in its entirety; and it is further

**ORDERED** that the following claims are **DISMISSED
with prejudice** and **without prior leave to amend**: (1)
Plaintiff's claims against the State of New York; (2) Plaintiff's
claims against Defendants Filli, Hurley, and McCrindle in
their official capacities; and (3) Plaintiff's claims against
Defendants Sharp and Soares in their official and individual
capacities; and it is further

**ORDERED** that the following claims are **DISMISSED
without prejudice** to repleading during the pendency of
this action and **with leave to amend** within **THIRTY
(30) DAYS** of the date of this Decision and Order: (1)
Plaintiff's fabrication-of-evidence claims against Defendants
Filli, Hurley and McCrindle in their individual capacities
to the extent that those claims relate to the case against
Plaintiff in the Town of Guilderland; (2) Plaintiff's false
arrest claims against Defendants Filli and Hurley in their
individual capacities; (3) Plaintiff's claim for a *Miranda* violation against
Defendant McCrindle in his individual capacity; and it is
further

**\*2 ORDERED** that **SURVIVING** this Decision and
Order are Plaintiff's fabrication-of-evidence claims against
Defendants Filli, Hurley and McCrindle in their individual
capacities to the extent that those claims relate to the case
against Plaintiff in the City of Albany; and it is further

**ORDERED** that the Clerk of Court is directed to issue
Summonses and forward, along with copies of the Complaint,

to the U.S. Marshal for service upon Defendants Filli, Hurley and McCrindle, and those Defendants are directed to respond in accordance with the Federal Rules of Civil Procedure.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 3032691

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 3858398
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Shariff ABBAS, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 10–CV–0141S.
|
Signed Aug. 1, 2014.

**Attorneys and Law Firms**

Shariff Abbas, Flushing, NY, pro se.

**DECISION and ORDER**

WILLIAM M. SKRETNY, Chief Judge.

**INTRODUCTION**

 *1 Plaintiff Shariff Abbas commenced this *pro se* action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 et seq., and other federal laws, alleging violation of his rights while detained at the Buffalo Federal Detention Facility ("BFDF") in Batavia, the Albany County Jail and the Perry County Correctional Center ("PCCC") in Uniontown, Alabama. Currently before the Court for review pursuant to 28 U.S.C. § 1915(e)(2)(B) is plaintiff's amended complaint [1], submitted in response to the Court's Order filed on August 16, 2013 ("August 16 Order") (Docket No. 6), which reviewed plaintiff's original complaint (Docket No. 4), dismissed several of the claims asserted therein, and granted plaintiff leave to file an amended complaint. For the reasons set forth below, plaintiff's FTCA claims against the United States related to his treatment at the BFDF may proceed and his remaining claims will be dismissed.

[1]    Plaintiff's amended complaint is accompanied by two voluminous bound volumes of exhibits captioned "Exhibit [sic] Part 1", containing a Table of Contents and exhibits 1–18 and "Exhibit Part 2", containing a Table of Contents and exhibits 19–40. Given the voluminous nature of the exhibits, numbering hundreds of pages, and

the manner in which they are bound, which would make scanning them very difficult, the Court has not required the Clerk's Office to scan them into the court's electronic filing system. They will instead be maintained in paper form in a separate file in the Clerk's Office. *See* note to Docket No. 6.

**DISCUSSION**

A. *Bivens Claims*

The August 16 Order directed, *inter alia,* that plaintiff's FTCA claims stemming from his detention at the Albany County Jail and the PCCC be dismissed; that plaintiff be granted leave to file an amended complaint adding *Bivens* [2] or other federal claims against individual deportation officers and other personnel at BFDF who he alleges violated his rights; and that in the even he failed to timely file an amended complaint as directed, the Court would issue an Order directing service of the complaint upon the United States as the sole defendant to his medical malpractice claims brought under the FTCA. (Docket No. 5).

[2]    *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 F.3d 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

The August 16 Order noted that in addition to his FTCA claims, plaintiffs original complaint asserted a variety of violations of his constitutional rights by individual deportation officers and other personnel during his periods of detention at BFDF and that these claims would be actionable against individual defendants under the *Bivens* doctrine, which allows a plaintiff to pursue constitutional claims against federal officials in their individual capacities for actions taken under color of federal law. *See Lombardi v. Whitman,* 485 F.3d 73, 78 (2d Cir.2007) ("[W]here an individual 'has been deprived of a constitutional right by a federal agent acting under color of federal authority,' the individual may bring a so-called *Bivens* action for damages against that federal agent in an individual capacity, provided that Congress has not forbidden such an action and that the situation presents 'no special factors counseling hesitation in the absence of affirmative action by Congress.' ") (internal citations omitted) (*quoting Thomas v. Ashcroft,* 470 F.3d 491, 496 (2d Cir.2006). The Court determined, however, that the *Bivens* claims could not proceed because of plaintiff's failure to name the individual custody officers and other officials who are alleged to have violated his rights as defendants in

the caption of the complaint, as required by Rule 10(a) of the Federal Rules of Civil Procedure:

> **\*2** The Court cannot allow such *Bivens* claims to proceed, however, because of plaintiff's failure to name the individual custody officers and other officials who are alleged to have violated his rights as defendants in the caption of the complaint. Rule 10 of the Federal Rules of Civil Procedure provides that "[t]he title of the complaint must name all the parties" Fed.R.Civ.P. 10(a). Therefore, a party that is not named in the caption of a complaint or amended complaint is not a party to the action.

(August 16 Order at 16) (citations omitted). The Court proceeded to note that plaintiff's failure to name in the caption of the complaint the individual defendants against whom he wished to assert *Bivens* claims would make it infeasible for the Court to determine which of the individual custody officers mentioned in the body of the complaint should be deemed to be defendants to such claims, given the often ambiguous nature of his reference to such individuals. (*Id.* at 16–17). The Court therefore concluded that "[t]he way to remedy plaintiff's failure to name as defendants in the caption of his complaint those individuals against whom he may seek to assert *Bivens* claims, as suggested by the allegations set forth in the body of the complaint, is to afford him leave to file an amended complaint which conforms to the requirements of Rule 10(a)." (*Id.* at 17) (citations omitted). "Accordingly, plaintiff will be afforded the opportunity to file, as directed below, an amended complaint in which he shall name in the caption of the complaint, each of the individuals against whom he intends to assert a *Bivens* claim or claims, in a manner that conforms to the requirements of Rules 8(a) and 10(a) of the Federal Rules of Civil Procedure." (*Id.*).

The Court accordingly directed, in the Conclusion of the August 16 Order, that plaintiff be given leave to file an amended complaint conforming to the requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure, and the Court again explicitly advised plaintiff of his duty to list all defendants in the caption of the complaint:

> Plaintiff is reminded, as explained above, that if he wishes to assert *Bivens* or other claims against defendants other than the United States in the amended complaint, *he must name those individuals in the caption of the amended complaint* and set forth

specific allegations with respect to how those individuals violated his rights.

(*Id.* at 21). (emphasis added).

While plaintiff's amended complaint contains allegations that would support *Bivens* claims (*see* Amended Complaint, ¶¶ 17–42 *passim* ),[3] it does not name in the caption of the complaint any individuals against whom plaintiff is seeking to assert *Bivens* clams, nor does the section of the complaint captioned "PARTIES" list any individual defendants. While plaintiff does, in the section of the amended complaint captioned "CONCLUSION", set forth a list of "Federal Employees from (BFDF) Health Division" (Amended Complaint ¶ 57), which includes individuals mentioned elsewhere in the amended complaint in connection with plaintiff's allegations that would be relevant to *Bivens* claims, the individuals named therein are not listed as defendants in the caption of the amended complaint or in plaintiff's recital of the parties to this action at the beginning of the amended complaint; as noted *supra,* plaintiff lists only one defendant-the United States-in the complaint caption and in his recital of the parties. Moreover, plaintiff's statement of relief sought at the end of the amended complaint (captioned "PRAYER") demands judgment "against *the defendant.*" (*Id.* at p. 16) (emphasis added).[4]

3    Plaintiff divides his claims into two sections of the amended complaint, namely "Medical Malpractice" (Amended Complaint, p. 3–5, ¶¶ 8–16), which contains allegations supportive of his FTCA claims, and "U.S. D.H.S.-ICE Agency and Custody Officers Abuses" (*Id.* at p. 5–14, ¶¶ 17–56), which contains allegations supportive of his *Bivens* constitutional claims. The Court notes, however, that a number of the allegations set forth in the "Federal Agency and Custody Officers Abuses" section of the complaint are relevant to his FTCA malpractice claims. *See, e.g.,* Amended Complaint, ¶ 21.

4    Plaintiff's failure to include in the caption of the amended complaint the names of any defendants against whom he is asserting *Bivens* claims is not the only instance of his disregard of the Court's directives regarding the form and content of his

amended complaint. The August 16 Order noted that many of the *Bivens* claims that plaintiff's allegations would support against individuals identified in the body of the complaint appeared to be barred by the statute of limitations. August 16 Order at 18. The Court accordingly directed as follows:

> In the amended complaint that plaintiff will be given leave to file, as provided below, in which he must demonstrate either that his *Bivens* claims stemming from his incarceration at BFDF are timely or, if any such Bivens claims are untimely, he must allege facts demonstrating why equitable tolling should be applied to the statute of limitations periods for such claims.

(August 16 Order at 19). As noted *supra,* the August 16 Order provided that plaintiff would be given leave to file an amended complaint with respect to his *Bivens* claims, and plaintiff was further advised, in this regard, "that he should address the timeliness of any *Bivens* claims that he asserts in the amended complaint and any argument as to why the limitations period applicable to such claims should be equitably tolled." (August 16 Order at 21). However, plaintiff's amended complaint does not address the timeliness issue or offer any basis for equitable tolling of the limitations period. Given the Court's dismissal herein of the *Bivens* claims based upon plaintiff's failure to identify the defendants against whom he seeks to assert such claims, the Court need not further address the timeliness issue.

Plaintiff further disregarded the August 16 Order to the extent that he reasserts claims stemming from his detention at the Albany County Jail from February 21, 2006–March 21, 2006, and the Perry County Correctional Center ("PCCC") in Uniontown Alabama from August 5, 2006– February 9, 2007. (Amended Complaint at ¶¶ 14, 15, 28–40). The August 16 Order dismissed the claims stemming from plaintiff's incarceration at those facilities pursuant to 28 U.S.C. § 1406(a) for improper venue. (August 16 Order at 13–14). Those claims remain dismissed.

**\*3** The Court's duty to construe liberally the pleadings of *pro se* litigants does not absolve *pro se* litigants from the duty to comply with the requirements of the Federal Rules

of Civil Procedure and court orders issued pursuant to those rules. *See, e .g., Caidor v. Onondaga County,* 517 F.3d 601, 605 (2d Cir.2008) (noting that *pro se* litigants are required to familiarize themselves with procedural rules and comply with such rules); *McDonald v. Head Criminal Court Supervisor Officer,* 850 F.2d 121, 124 (2d Cir.1988) ("[W]hile *pro se* litigants may in general deserve more lenient treatment than those represented by counsel, all litigants, including, *pro ses,* have an obligation to comply with court orders. When they flout that obligation they, like all litigants, must suffer the consequences of their actions.")). As discussed *supra,* this Court's previous order explained to plaintiff the requirement of Rule 10(a) that all defendants to an action be named and identified as such in the caption to the complaint, and the Court afforded him the opportunity to cure the defect in his initial complaint by filing an amended complaint naming all defendants. Plaintiff has inexplicably failed to comply with the Court's order and the requirement of Rule 10(a). Accordingly, to the extent that plaintiff seeks to bring *Bivens* claims against individual Custody Officers and other BFDF officials, *see* Amended Complaint, ¶ 58 ("Plaintiff want [sic] this Court to bring Justice against Federal Agency Employees who Violate constitutional law against Plaintiff's rights"), such claims must be dismissed in light of his failure to name those individuals as defendants in the caption of the amended complaint. *See, e.g., Ferdik v. Bonzelet,* 963 F.2d 1258, 1262–63 (9th Cir.1992) (dismissing action for refusal to comply with court orders to name defendants in the caption as required by Rule 10(a)).

Moreover, as explained in the August 16 Order (pp. 14– 15), constitutional claims under *Bivens* cannot be brought against the only defendant named in the complaint, the United States. *See Robinson v. United States Bur. Of Prisons,* 244 F.Supp.2d 57, 66 (N.D.N.Y.2003) ("[A] *Bivens* action may not be maintained against the United States.") (citing *Washington v. DEA,* 183 F.3d 868, 872 n. 8 (8th Cir.1999). Nor can constitutional claims be asserted against the United States under the FTCA. *See Washington,* 183 F.3d at 873; *Russ v. United States,* 62 F.3d 201, 204 (7th Cir.1995) ("[C]onstitutional wrongs cannot be remedied through the FTCA,") (citing *FDIC v. Meyer,* 510 U.S. 471, 476, 114 S.Ct. 996, 1001–02, 127 L.Ed.2d 308(1994)).

Plaintiff having thus having failed to name a proper defendant to his *Bivens* claims, the Court concludes that his *Bivens* claims must be dismissed pursuant to 28 U.S.C. § 1915(e)(2) (B) for failure to state a claim on which relief can be granted.

B. *Treaty Claims*

The Conclusion section of the amended complaint invokes, as a basis for relief against defendant United States not raised in plaintiff's original complaint, treaties to which the United States is a signatory. Specifically, the amended complaint states "At such time and places the United States violates International Laws as A[sic] result the United States are not in compliance with Refugee Convention Requirements or The United Nations Convention against Torture Prohibitions." (Amended Complaint, § 57). It is well established that the United Nations Convention Against Torture and Other Cruel, Inhumane or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85, 23 I.L.M. 1027, ("CAT") does not give rise to a private right of action. *Renkel v. United States,* 456 F.3d 640, 644 (6th Cir.2006) ("As the Articles [of CAT] are not self-executing, they do not create private rights of action; therefore, any private lawsuit seeking to enforce the United States' obligations under the Convention must be based on domestic law."); *Wolinski v. Junious,* 2012 U.S. Dist. LEXIS 65889, at *18–19,2012 WL 1657576 (E.D.Cal. May 10, 2012) ("The CAT does not give rise to a private right of action because it is not self-executing.) (citing *Akhtar v. Reno,* 123 F.Supp.2d 191, 196 (S.D.N.Y.2000),

**\*4** The United Nations Convention Relating to the Status of Refugees, adopted July 28, 1951, art. 26, 19 U.S.T. 6259, 6576, 189 U.N.T.S. 150, 172 ("Refugee Convention") likewise does not create a private right of action. *United States v. Casaran–Rivas,* 311 Fed. Appx. 269, 272 (11th Cir.2009) (unpublished) ("[A]rgument that the indictment violated the refugee Convention and CAT Treaty is without merit, as the Refuge[e] Convention and CAT Treaty are not self-executing, or subject to relevant legislation, and, therefore, do not confer upon aliens a private right of action to allege a violation of their terms."); *Reyes–Sanchez v. Ashcroft,* 261 F.Supp.2d 276, 288–89 (S.D.N.Y.2003) ("Because the Refugee Convention is not self-executing, it does not create individual rights.").

Accordingly, plaintiff's claims against the United States under CAT and Refugee Convention are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim on which relief may be granted.

C. *FTCA Claims*

The medical malpractice-related claims under the FTCA asserted by plaintiff in the amended complaint and stemming from his detention at BFDF may go forward against defendant United States. [5]

[5]    As explained in the August 16 Order, plaintiff's allegations of medical malpractice and the failure to properly treat his serious medical condition are clearly cognizable under the FTCA when asserted against the United States. (August 16 Order at 6).

*ORDER*

IT IS HEREBY ORDERED, that plaintiff's *Bivens* claims are dismissed with prejudice;

FURTHER, that plaintiff's claims under CAT and the Refugee Convention are dismissed with prejudice;

FURTHER, that the Clerk of the Court is directed to complete, on plaintiff's behalf, and to issue, a summons for service of process on defendant United States of America;

FURTHER, the Clerk of the Court is directed to send copies of the Summons, Amended Complaint, [6] and this Order by certified mail to the following, pursuant to Rule 4(i) of the Federal Rules of Civil Procedure:

[6]    As explained in n. 1, *supra,* plaintiff's voluminous exhibits to the amended complaint are maintained in paper form in a separate file folder in the Clerk's Office.

• Attorney General of the United States, Main Justice Building, 10th and Constitution Avenues N.W., Washington, DC 20530;

• Civil Process Clerk, United States Attorney for the Western District of New York, United States Attorney's Office, USAO/WDNY, 138 Delaware Avenue, Buffalo, New York 14202.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 3858398

---

2007 WL 2375814
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Vidal WHITLEY, Plaintiff,

v.

Major KRINSER, Sgt. Robin Brown, Captain Winters,
Corporal Conklin, Deputy Johnson, Lt. Prinzi, Corporal
Carlo, Lt. Santillo, Sgt. Garcia, Major Kasacey,
Corporal Peck, and Deputy Galling, Defendants.

No. 06-CV-0575F.
|
Aug. 15, 2007.

**Attorneys and Law Firms**

Vidal Whitley, Willard, NY, pro se.

**DECISION and ORDER**

WILLIAM M. SKRETNY, United States District Judge.

**INTRODUCTION**

 *1  By an Order dated February 8, 2007, plaintiff *pro se* Vidal
Whitley was granted permission to file a second amended
complaint in this action pursuant to 42 U.S.C. § 1983 to
specifically address issues relating to defendants Kasacey,
Krinser and Peck. For the reasons stated below, plaintiff's
second amended complaint is dismissed and the amended
complaint is allowed to go forward at this stage against all
named defendants except as to defendants Krinser, Kasacey
and Peck.

**DISCUSSION**

Section 1915(e) (2)(B) of 28 U.S.C. provides that the Court
shall dismiss a case in which *in forma pauperis* status has been
granted if, at any time, the Court determines that the action
"(ii) fails to state a claim upon which relief may be granted."
Based on its evaluation of the complaint, the Court finds
that plaintiff's claims against defendants Krinser, Kasacey and
Peck must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)
(B)(ii) because they fail to state a claim upon which relief

may be granted. Despite direction to specify what Krinser,
Kasacey and Peck were responsible for, plaintiff's second
amended complaint does not allege sufficient facts to state
claims against Krinser, Kasacey and Peck.

In addition, plaintiff was directed that his second amended
complaint "should name in the caption all of the people
plaintiff wishes to hold responsible for each violation.
Plaintiff has alleged that people who are not named in the
caption were responsible for violation his rights. However,
if these people are not also named in the caption of the
second amended complaint, they will not be defendants in the
case." (Docket No. 11.) Because plaintiff has not named any
additional defendants in the second amended complaint, has
not included the allegations against the remaining defendants
named in his amended complaint, and has failed to state a
claim against Krinser, Kasacey and Peck, the second amended
complaint is dismissed in its entirety. However, because of
plaintiff's *pro se* status and his minimal literacy, the Court
will deem the amended complaint the operative pleading in
this case and allow it to proceed against all named defendants
except Krinser, Kasacey and Peck.

**CONCLUSION**

For the reasons set forth above, plaintiff's claims against
defendants Krinser, Kasacey and Peck are dismissed pursuant
to 28 U.S.C. § 1915(e)(2)(B) and the amended complaint shall
be served on the remaining defendants set forth in the caption
above.

**ORDER**

IT HEREBY IS ORDERED, that the claims against Krinser,
Kasacey and Peck are dismissed with prejudice pursuant to
28 U.S.C. § 1915(e)(2)(B); and,

FURTHER, the Clerk of the Court is directed to correct the
docket to reflect that Sgt. Robin Brown, Captain Winters,
Corporal Conklin, Deputy Johnson, Lt. Prinzi, Corporal
Carlo, Lt. Santillo, Sgt. Garcia and Deputy Galling are
defendants in this action; and,

FURTHER, the Clerk of the Court is directed to cause the U.S.
Marshal to serve the amended complaint (Docket No. 10) and
this Order upon the remaining defendants, Sgt. Robin Brown,
Captain Winters, Corporal Conklin, Deputy Johnson, Lt.

2007 WL 2375814

Prinzi, Corporal Carlo, Lt. Santillo, Sgt. Garcia and Deputy
Galling.

**All Citations**

**\*2**  SO ORDERED.

Not Reported in F.Supp.2d, 2007 WL 2375814

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2006 WL 752857
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Eddie ROBLES

v.

John ARMSTRONG, et al.

No. 3:03 CV 1634(DFM).
|
March 17, 2006.

*RULING ON DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT*

MARTINEZ, Magistrate J.

**\*1** The plaintiff, Eddie Robles, has filed this civil rights action *pro se* and *in forma pauperis* pursuant to 28 U.S.C. § 1915 against Former Commissioner of Correction John Armstrong, Warden Brian K. Murphy, Nurse Barbara LaFrance and Dr. Tatyana Katsnelson.[1] He alleges *inter alia* that defendants LaFrance and Katsnelson failed to inform him of his elevated liver function tests in January 2002 and the possibility that he was infected with Hepatitis C. Pending is a motion for summary judgment filed by the defendants. For the reasons that follow, the motion for summary judgment is granted.

[1]   John Armstrong, Brian K. Murphy, Barbara LaFrance and Tatyana Katsnelson are the only defendants named in the caption of the amended complaint. The plaintiff refers to John Doe/ Jane Doe of the Correctional Managed Health Care Program and John Doe/Jane Doe Members of the Revitalization Committee in the body of the amended complaint. Rule 10(a) of the Federal Rules of Civil Procedure requires that all defendants be listed in the caption of the complaint. Because the John and Jane Does are not listed in the caption of the amended complaint, they are not defendants and the court does not consider claims against them. However, even if the plaintiff had included the John/Jane Does in the caption of the complaint, he never identified them by name or served them with the complaint. Thus, any

claims against them would be subject to dismissal pursuant to Rule 4(m), Fed.R.Civ.P.

I. *Standard of Review*

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *See* Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *White v. ABCO Engineering Corp.,* 221 F.3d 293, 300 (2d Cir.2000). A court must grant summary judgment " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact....' " *Miner v. Glen Falls,* 999 F.2d 655, 661 (2d Cir.1993) (citation omitted). A dispute regarding a material fact is genuine " 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." ' *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.) (quoting *Anderson,* 477 U.S. at 248), *cert. denied,* 506 U.S. 965 (1992). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Anderson,* 477 U.S. at 256. The nonmoving party must present "significant probative evidence to create a genuine issue of material fact." *Soto v. Meachum,* Civ. No. B–90–270 (WWE), 1991 WL 218481, at *6 (D.Conn. Aug. 28, 1991). A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir.1986), *cert. denied,* 480 U.S. 932 (1987).

The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich,* 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849 (1991). *See also Suburban Propane v. Proctor Gas, Inc.,* 953 F.2d 780, 788 (2d Cir.1992). A party may not create a

genuine issue of material fact by presenting contradictory or unsupported statements. *See Securities & Exchange Comm'n v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978). Nor may he rest on the "mere allegations or denials" contained in his pleadings. *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir.1995). *See also Ying Jing Gan v. City of New York,* 996 F.2d 522, 532 (2d Cir.1993) (holding that party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible).

**\*2** Where one party is proceeding pro se, the court reads the pro se party's papers liberally and interprets them to raise the strongest arguments suggested therein. *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994). Despite this liberal interpretation, however, a "bald assertion" unsupported by evidence, cannot overcome a properly supported motion for summary judgment. *Carey v.. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991).

II. *Facts* [2]

[2]    The facts are taken from defendants' Local Rule 56(a) 1 Statement [doc. # 20–2] and the Affidavits of Dr. Edward Blanchette [doc. # 20–3], the Affidavit of Dr. Tatyana Katsnelson [doc. # 20–4] and the Affidavit of Barbara LaFrance [doc. # 20–5]. The defendants filed their motion for summary judgment on June 14, 2005. On June 21, 2005, the court provided the plaintiff with notice of his obligation to respond to the motion and of the contents of a proper response. The plaintiff has failed to respond to the motion. Because the plaintiff has not responded with evidence or submitted a Local Rule 56(a) 2 Statement, defendants' facts are deemed admitted. *See D. Conn. L. Civ. R. 56(a)*1 ("All material facts set forth in said statement will be deemed admitted unless controverted by the statement required to be served by the opposing party in accordance with Rule 56(a) 2.")

Dr. Tatyana Katsnelson is a physician licensed to practice medicine in the State of Connecticut. In 2002, she was employed part-time with the Correctional Managed Health Care Program and assigned to Walker Correctional Institution ("Walker") in Suffield, Connecticut.

Barbara LaFrance is an Advanced Practice Registered Nurse licensed to practice in the State of Connecticut. She was employed with the Correctional Managed Health Care Program and assigned to Walker from July 1998 through March 2004.

Dr. Edward Blanchette has been licensed to practice medicine in the State of Connecticut since 1975 and is board certified in Internal Medicine and Infectious Diseases. In 1984, Dr. Blanchette began working for the State of Connecticut Department of Correction and has held various medical positions within the Department since then. He is currently the Director of Clinical and Professional Services for the Department of Correction.

Brian Murphy is currently the Deputy Commissioner of the Operations Division of the Department of Correction. Between May 2001 and April 2003, he was employed as the Lead Warden at the MacDougall–Walker Correctional Complex in Suffield, Connecticut. Defendant Murphy had no written or verbal contact with the plaintiff and was not involved in any medical treatment provided to him during his incarceration in either MacDougall Correctional Institution ("MacDougall") or Walker during the months from January to March 2002.

On December 26, 2001, the plaintiff was re-admitted to the Department of Correction and confined to the New Haven Correctional Center after having been released on bond in April 2001. On January 7, 2002, prison officials transferred the plaintiff to Walker. Upon plaintiff's admission to Walker, a nurse noted plaintiff's prior drug use and that the medical personnel at New Haven Correctional Center had prescribed the plaintiff Zantac and Maalox Plus to be taken on a daily basis. The plaintiff reported no complaints.

On January 17, 2002, the plaintiff underwent routine blood tests which revealed elevated liver enzyme levels. The elevated enzyme levels could have been attributed to a number of factors such as prior alcohol or drug abuse or the ingestion of the medication the plaintiff had been prescribed at New Haven Correctional Center.

On January 22, 2002, Dr. Katsnelson examined the plaintiff to determine the cause of his stomach pain. Dr. Katsnelson noted that the plaintiff had a history of peptic ulcer disease. Dr. Katsnelson re-ordered Zantac and Maalox for the plaintiff, ordered a H Pylori titer test to determine whether the plaintiff had bacteria that might be the cause of an ulcer and issued a new order for routine blood work because the first blood work results had not yet been forwarded to the prison from

the lab. The plaintiff's test results were positive for H. Pylori infection.

 **\*3** On February 14, 2002, the plaintiff was examined by Nurse LaFrance. The plaintiff reported that he was experiencing less pain in his stomach. Nurse LaFrance discussed with the plaintiff the option of treating the H Pylori infection with antibiotics. The plaintiff agreed to start the antibiotic treatment.

In 2002, the Correctional Managed Health Care Program followed guidelines recommended by the National Institute for Health in managing and treating chronic Hepatitis C. To determine whether an inmate who had tested positive for Hepatitis C was a candidate for Hepatitis C therapy, medical personnel were required to perform two or more liver enzyme tests spaced at least six months or more apart.

The results of the second round of blood work revealed elevated liver enzyme levels, but lower levels than the results of the first round of blood work. Less than two months after the plaintiff's arrival at Walker, on March 4, 2002, prison officials transferred the plaintiff to MacDougall. Neither Nurse LaFrance nor Dr. Katsnelson had any contact with the plaintiff after March 4, 2002. On March 14, 2002, prison officials transferred the plaintiff to the Corrigan Correctional Institution.

On April 14, 2003, the plaintiff was incarcerated at Cheshire Correctional Institution ("Cheshire"). He complained about his cellmate who had tested positive for Hepatitis C. Lab tests performed that same day revealed that the plaintiff was positive for Hepatitis C. In August 2003, a physician at Cheshire completed initial paperwork to permit the plaintiff to complete a diagnostic evaluation to determine his eligibility for Hepatitis C therapy. On March 24, 2004, the Hepatitis C Utilization Review Board ("Hep CURB") approved the plaintiff for a liver biopsy. The liver biopsy performed in April 2004 showed very mild liver disease. On May 12, 2004, Hep CURB approved the plaintiff for Hepatitis C Therapy.

### III. *Discussion*

The defendants raise three grounds in support of their motion for summary judgment. They argue that (1) the Eleventh Amendment bars any claims for monetary damages against them in their official capacities; (2) they were not deliberately indifferent to plaintiff's medical needs; (3) the court should not exercise supplemental jurisdiction over any state law claims and (4) they are entitled to qualified immunity.

### A. *Claims Barred By Eleventh Amendment*

The plaintiff names the defendants in their individual and official capacities. The defendants contend that the Eleventh Amendment bars a damage award against the defendants in their official capacities.

Generally, a suit for recovery of money may not be maintained against the state itself, or against any agency or department of the state, unless the state has waived its sovereign immunity under the Eleventh Amendment. *See Florida Dep't of State v. Treasure Salvors,* 458 U.S. 670, 684 (1982). Section 1983 does not override a state's Eleventh Amendment immunity. *See Quern v. Jordan,* 440 U.S. 332, 342 (1979). The Eleventh Amendment immunity which protects the state from suits for monetary relief also protects state officials sued for damages in their official capacity. *See Kentucky v. Graham,* 473 U.S. 159 (1985). A suit against a defendant in his official capacity is ultimately a suit against the state if any recovery would be expended from the public treasury. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101 n. 11 (1984).

 **\*4** The plaintiff's claims for monetary damages against the defendants in their official capacities are barred by the Eleventh Amendment. Defendants' motion for summary judgment is granted as to all claims for damages against the defendants in their official capacities.

### B. *Failure to State a Claim of Deliberate Indifference to Medical Needs*

The defendants argue that the plaintiff did not suffer from a serious medical need as a result of the alleged failure of Dr. Katsnelson and Nurse LaFrance to refer him for a Hepatitis C evaluation in January 2002. They also contend that even if plaintiff's condition was serious, they were not deliberately indifferent to that condition.

The Eighth Amendment protects inmates from deliberate indifference by prison officials to their serious medical needs. *See Estelle v. Gamble,* 429 U.S. 97, 104 (1976). To prevail on such a claim, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. A prisoner must show intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel. *See id.* at 104–05. Mere negligence will not support a section 1983 claim; the conduct complained of must "shock the conscience" or constitute a "barbarous act."

*McCloud v. Delaney,* 677 F.Supp. 230, 232 (S.D.N.Y.1988) (citing *United States ex rel. Hyde v. McGinnis,* 429 F.2d 864 (2d Cir.1970)). A treating physician will be liable under the Eighth Amendment only if his conduct is "repugnant to the conscience of mankind." *Tomarkin v. Ward,* 534 F.Supp. 1224, 1230 (S.D.N.Y.1982) (quoting *Estelle,* 429 U.S. at 105–06).

The civil rights statute was not meant to redress medical malpractice claims that can be adequately resolved under state tort law. *Tomarkin,* 534 F.Supp. at 1230–31. Thus, a claim of misdiagnosis, faulty judgment, or malpractice without more to indicate deliberate indifference, is not cognizable under section 1983. *See McCabe v. Nassau County Medical Center,* 453 F.2d 698, 704 (2d Cir.1971); *Tomarkin v. Ward,* 534 F.Supp. 1224, 1230 (S.D.N.Y.1982). In addition, mere disagreement with prison officials about what constitutes appropriate medical care does not state a claim cognizable under the Eighth Amendment. *See Hyde v. Mcinnis,* 429 F.2d 864, 868 (2d Cir.1970); *Corby v. Conboy,* 457 F.2d 251, 254 (2d Cir.1972); *Ross v. Kelly,* 784 F.Supp. 35, 44 (W.D.N.Y.), *aff'd,* 970 F.2d 896 (2d Cir.), *cert. denied,* 506 U.S. 1040 (1992).

There are both subjective and objective components to the deliberate indifference standard. *See Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994), *cert. denied sub nom. Foote v. Hathaway,* 513 U.S. 1154 (1995). The alleged deprivation must be "sufficiently serious" in objective terms. *Wilson v. Seiter,* 501 U.S. 294, 298 (1991). Thus, "a prisoner must first make [a] threshold showing of serious illness or injury in order to state an Eighth Amendment claim for denial of medical care." *Smith v. Carpenter,* 316 F.3d 178, 184 (2d Cir.2003)(quoting *Hudson v. McMillian,* 503 U.S. 1, 9 (1992)). *See also Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J., dissenting) (" 'serious medical need' requirement contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain"). The Second Circuit has identified several factors that are highly relevant to the inquiry into the seriousness of a medical condition: " '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.' " *Chance v. Armstrong,* 143 F.3d 698, 702 (2d. Cir.1998) (citation omitted). In addition, where the denial of treatment causes plaintiff to suffer a permanent loss or life-long handicap, the medical need is considered serious. *See Harrison v. Barkley,* 219 F.3d 132, 136 (2d Cir.2000).

**\*5** In addition to demonstrating a serious medical need to satisfy the objective component of the deliberate indifference standard, an inmate also must present evidence that, subjectively, the charged prison official acted with "a sufficiently culpable state of mind." *Hathaway,* 37 F.3d at 66. "[A] prison official does not act in a deliberately indifferent manner unless that official 'knows and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." ' *Id.* (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)).

The defendants first argue that the plaintiff did not suffer from a serious medical need or condition during the time period that he was incarcerated at Walker from January 7, 2002 to March 4, 2002. There is no evidence in plaintiff's medical records that medical personnel diagnosed him as suffering from Hepatitis C at any time during this period. The plaintiff did not test positive for Hepatitis C until April 2003. Routine blood tests performed on January 17, 2002, showed that the plaintiff's AST and ALT liver enzyme levels were higher than the normal range. On January 24, 2002, routine blood tests revealed elevated AST and ALT liver enzyme levels, but those levels were lower than the levels measured on January 17, 2002. The medical records reveal no comments by a physician or nurse concerning the plaintiff's elevated liver enzyme levels. The only complaints by the plaintiff during the time period in question related to a sore throat and pain in his stomach due to an ulcer. The plaintiff has failed to submit any evidence to suggest that he suffered from a serious medical condition during his incarceration at Walker from January 7, 2002 to March 4, 2002 or at MacDougall from March 4, 2002 to March 14, 2002.

Even if the plaintiff could prove that he suffered from Hepatitis C during the period in question, he would not have been a candidate for treatment under the Correctional Managed Health Care Program Guidelines in effect at that time. In 2002, the Correctional Managed Health Care Program followed guidelines recommended by the National Institute for Health in managing and treating chronic Hepatitis C. To determine whether an inmate who had tested positive for Hepatitis C was a candidate for Hepatitis C therapy, medical personnel were required to perform two or more liver enzyme tests spaced at least six months or more apart. The plaintiff was incarcerated at Walker for less than two months and MacDougall for less than two weeks. Thus, there was no

basis for the defendants to refer the plaintiff for evaluation and treatment of Hepatitis C during those time periods.

The plaintiff has not met his burden of demonstrating that there are genuine issues of material fact as to whether he suffered from a serious medical condition during his incarceration at Walker, when blood tests performed in January 2002 revealed elevated liver enzyme levels. Thus, the plaintiff has failed to state a claim of deliberate indifference to a serious medical need. The defendants' motion for summary judgment is granted as to all federal claims against the defendants.

### C. State Law Claims

**\*6** The defendants argue that the court should decline to exercise jurisdiction over plaintiff's state law claims. The plaintiff asserts claims that in June 2003, the defendants denied his requests for copies of recent laboratory reports in violation of Connecticut General Statutes § 4–193. The plaintiff also claims that the defendants violated Connecticut General Statutes § 19a–103 when they failed to treat him for Hepatitis C.

Supplemental or pendent jurisdiction is a matter of discretion, not of right. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 715–26 (1966). Where all federal claims have been dismissed before trial, pendent state claims should be dismissed without prejudice and left for resolution by the state courts. *See* 28 U.S.C. § 1367(c)(3); *Giordano v. City of New York,* 274 F.3d 740, 754 (2d Cir.2001) (collecting cases). Because the court has dismissed all federal law claims, it declines to exercise supplemental jurisdiction over the plaintiff's state law claims.

### IV. *Conclusion*

The Motion for Summary Judgment [Doc. # 20] is GRANTED. The court declines to exercise supplemental jurisdiction over plaintiff's state law claims. The Clerk is directed to close this case.

This is not a recommended ruling. The parties have consented to the exercise of jurisdiction by a magistrate judge and the case was transferred to the undersigned for all purposes on March 1, 2005. (*See* Doc. # 18.)

SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2006 WL 752857

---

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 340776
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

WILLIE THOMAS GOSIER, Plaintiff,

v.

WILLIAM PAOLOZZI, et al., Defendants.

9:23-CV-1135 (GTS/MJK)
|
Filed 01/30/2024

**Attorneys and Law Firms**

APPEARANCES:

WILLIE THOMAS GOSIER, Plaintiff, pro se, 22-B-2574, Elmira Correctional Facility, [1] P.O. Box 500, Elmira, NY 14902

[1] On January 16, 2024, mail sent to plaintiff at Oneida County Correctional Facility was returned as "undeliverable." Dkt. No. 12. A search of the Inmate Information Database maintained by the New York State Department of Corrections and Community Supervision ("DOCCS"), using plaintiff's Department ID Number (22-B-2574) revealed that plaintiff is presently confined at Elmira Correctional Facility. *See* https://nysdoccslookup.doccs.ny.gov/ (last visited Jan. 25, 2024). Plaintiff is advised of his duty to inform the Court of any address changes and his obligation to continue to submit any address changes to the court as long as his action is pending. N.Y.N.D. L.R. 10.1(c)(2). "Failure to notify the Court of a change of address in accordance with L.R. 10.1(c)(2) may result in the dismissal of any pending action." N.Y.N.D. L.R. 41.2(b).

**DECISION AND ORDER**

Glenn T. Suddaby U.S. District Judge

**I. INTRODUCTION**

**\*1** Pro se plaintiff Willie Thomas Gosier ("plaintiff") commenced this action by filing a complaint pursuant to 42 U.S.C. § 1983 ("Section 1983") with a request for leave to proceed in forma pauperis ("IFP"). Dkt. No. 1

("Compl."), Dkt. No. 4 ("IFP Application"). In the complaint, plaintiff asserted First and Fourteenth Amendment claims against defendants Senior Parole Officer William Paolozzi ("Paolozzi") and Parole Officer Anthony Stucchi ("Stucchi"). *See generally* Compl.

By Decision and Order filed October 27, 2023, (the "October Order"), the Court granted plaintiff's IFP application and reviewed the sufficiency of the complaint in accordance with 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A. *See* Dkt. No. 8. On the basis of that review, the Court dismissed the complaint for failure to state a claim upon which relief could be granted. *Id.* In light of his pro se status, plaintiff was afforded an opportunity to amend his complaint. *Id.* Plaintiff's amended complaint is now before the Court for review. Dkt. No. 10 ("Am. Compl.").

**II. REVIEW OF THE AMENDED COMPLAINT**

**A. Legal Standard**
The legal standard governing the dismissal of a pleading for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) was discussed at length in the October Order and it will not be restated in this Decision and Order. *See* Dkt. No. 8 at 4-6.

**B. Summary of Amended Complaint** [2]

[2] The amended complaint includes exhibits. *See* Dkt. No. 10-1. To the extent that the exhibits are relevant to the incidents described in the amended complaint, the Court will consider the documents attached as exhibits. *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

With the amended pleading, plaintiff adds the following new defendants: S.P.O. Nicholas Pezdek ("Pezdek"), Administrative Law Judge Regina A. Rinaldi ("Rinaldi"), and Parole Revocation Specialist William Lappino ("Lappino"). [3] *See* Am. Compl. at 1. The following facts are set forth as alleged by plaintiff in his amended complaint.

[3] The Clerk of the Court is directed to add these individuals to the Docket Report.

In April 2023, plaintiff was released from DOCCS custody to community supervision after serving a sentence for criminal possession of a controlled substance. [4] Dkt. No. 10-1 at 1. In 2023, plaintiff was residing with his grandmother in Utica, NY. Am. Compl. at 2.

[4]      *See*   https://nysdoccslookup.doccs.ny.gov/   (last visited Jan. 25, 2024).

On June 6, 2023, between 8:00 a.m. and 4:30 p.m., Paolozzi, Pezdek, and Stucchi altered the "terms" of plaintiff's release and imposed a curfew. Am. Compl. at 1. Defendants also increased plaintiff's the frequency of reporting requirements, from once a month to once a week. *Id.* As a result, plaintiff was charged with violating his curfew and missing his reporting date for the birth of his nephew on June 7, 2023 and his family reunion on June 20, 2023, June 21, 2023, and June 22, 2023. *Id.* at 1-2.

 **\*2** On June 11, 2023, plaintiff was subjected to an "unlawful traffic stop." Am. Compl. at 1, 2. Plaintiff was parked in his friend's driveway when he was arrested, searched, and his vehicle was searched. *Id.* at 2. Plaintiff filed a Section 1983 lawsuit related to the traffic stop against the Utica Police Department ("UPD"), Officer Janiel Rodriguez, Officer James Amuso, and Investigator Peter Paladino. *Id.*; *Gosier v. Utica Police Dep't, et al.*, No. 6:23-CV-1119 (DNH/TWD), Dkt. No. 1 (N.D.N.Y. filed on Sept. 1, 2023) ("*Gosier I*"). *Gosier I* is pending in this District. *See Gosier I.*

On June 26, 2023, plaintiff "turned [him]self into P.O. Stucchi." Am. Compl. at 3. Pezdek and Stucchi searched plaintiff's cell phone. *Id.*

On July 7, 2023, plaintiff was charged with violating his parole. Am. Compl. at 2. Stucchi accused plaintiff of using a "mission address." *Id.* Stucchi also claimed that plaintiff changed his address without proper notification and "lost contact" with his parole officer. *Id.* at 2-3.

On July 7, 2023, plaintiff appeared in Sherill City Court for a Final Parole Revocation hearing. Am. Compl. at 3; Dkt. No. 10-1 at 9. Judge Rinaldi and Revocation Specialist Lappino relied upon unlawful evidence, denied plaintiff the right to counsel and a fair trial, and stated, "[y]ou're going to jail either way." Am. Compl. at 3. As a result, plaintiff was sentenced to an eight month term of incarceration. *Id.* In a report dated July 12, 2023, Rinaldi included "false information in the analysis section" and stated that an "absconder warrant" was enforced

on June 26, 2023. Am. Compl. at 3-4; Dkt. No. 10-1 at 1. Plaintiff should have been released on October 8, 2023 but was informed by "his P.O." that he would not be released before February 2024. Am. Compl. at 4.

Construed liberally, the amended complaint contains the following: (1) Fourteenth Amendment due process claims; (2) malicious prosecution claim against Stucchi; (3) Fourth Amendment claims against Stucchi and Pezdek; (4) deliberate indifference claim related to plaintiff's incarceration beyond his maximum release date; and (5) First Amendment retaliation claims. *See generally* Am. Compl. Plaintiff seeks monetary damages and "to be relieved of all obligations to parole." *See id.* at 1, 4.

### C. Analysis

#### 1. Rule 10

Throughout the complaint, plaintiff refers to various individuals and entities who are not identified in the caption, or list of parties, as defendants. *See* Am. Compl. at 1, 5-8. Plaintiff refers to UPD, Officer Peter Paladino, Officer T. Ciccone, Sergeant Brazzeese, Officer Jariel Rodriguez, and Chief of Police Mark Williams. *See* Am. Compl. at 6-8. Because Rule 10(a) of the Federal Rules of Civil Procedure provides that, "the title of the complaint must name all the parties." Fed. R. Civ. P. 10(a). A party not named in the caption of the complaint is not a party to the action. *Abbas v. U.S.*, No. 10-CV-0141, 2014 WL 3858398, at \*2 (W.D.N.Y. Aug. 1, 2014) (holding that the failure to name the individual defendants against whom the plaintiff intends to assert claims makes it "infeasible for the Court to determine which of the individual officers mentioned in the body of the complaint should be deemed to be defendants to which claims").

Accordingly, plaintiff's allegations and claims related to the traffic stop on June 11, 2023 against any individual or entity who is not named or identified in the complaint or caption, as John Doe or otherwise, are dismissed for failure to state a claim. *See Whitley v. Krinser*, No. 06-CV-0575, 2007 WL 2375814, at \*1 (W.D.N.Y. Aug. 15, 2007); *Robles v. Armstrong*, No. 3:03-CV-1634, 2006 WL 752857, at \*1 n.1 (D. Conn. Mar. 17, 2006) ("Because the John and Jane Does are not listed in the caption of the Complaint, they are not defendants and the court does not consider claims against them."). As discussed *supra*, plaintiff filed a complaint in this District related to the June 2023 traffic stop against the

2024 WL 340776

UPD, Rodriguez, and Paladino. *See Gosier I*, Dkt. No. 1. The complaint in *Gosier I* contained a cause of action for malicious prosecution and false arrest. *Id*. at 4. To the extent that the amended complaint includes claims related to the June 2023 traffic stop against the defendants in *Gosier I*, those claims are dismissed. *See Phelan v. Hersh*, No. 9:10-CV-0011 (GLS/RFT), 2011 WL 6031940, at *4 (N.D.N.Y. Sept. 13, 2011) (refusing to address claims because of the existence of another pending action), *report and recommendation adopted*, 2011 WL 6031071 (N.D.N.Y. Dec. 5, 2011).

**2. Fourteenth Amendment - Conditions/Terms of Parole**

**\*3** Construing the amended complaint liberally, plaintiff argues that his due process rights were violated because the terms of his parole were altered without notice. *See* Am. Compl. at 4.

"The courts have [ ] consistently held that a parolee has no constitutionally protected interest in being free from special conditions of release." *Maldonado v. Fischer*, No 11-CV-1091, 2012 WL 4461647, at *4 (W.D.N.Y. Sept. 24, 2012) (collecting cases). "[I]t is well-established that 'the [New York] Parole Board's discretionary imposition of special conditions is not subject to judicial review in the absence of a showing that the board or its agents acted in an arbitrary and capricious manner.' " *Id*. at *3. "[W]hile Plaintiff does not have a protected liberty interest to be free from special conditions of parole, he may have a viable due process claim pursuant to § 1983 based on the substance of the conditions and/or the basis for imposing such conditions." *Singleton v. Doe*, No. 14-CV-0303, 2014 WL 3110033, at *3 (E.D.N.Y. July 7, 2014) (citation omitted). "[W]here the condition is not related to the parolee's criminal history or to the State's interests, it may be prone to tailoring or invalidation." *Robinson v. New York*, No. 09-CV-0455 (GLS/RFT), 2010 WL 11507493, at *6 (N.D.N.Y. Mar. 26, 2010) (collecting cases). The release conditions must serve "legitimate interests of the parole regime such as rehabilitat[ion] and 'protection of the public tailored in light of the conduct for which [Plaintiff] was convicted." *Trisvan v. Annucci*, 284 F.Supp.3d 288, 297 (E.D.N.Y. 2018) (citation and internal quotation marks omitted).

Even assuming plaintiff sufficiently plead constitutional claims related to the conditions of parole against Pezdek, Paolozzi, and Stucchi, his due process claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

In *Heck,* the United States Supreme Court held as follows:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

512 U.S. at 486-87.

Although *Heck* held that the favorable-termination rule is triggered when a prisoner's success would "necessarily imply the invalidity of the conviction," 512 U.S. at 487 (emphasis added), the Supreme Court subsequently clarified that *Heck* applies to any challenge to the duration of "confinement" that necessarily implies the invalidity of that confinement, even if that challenge would not implicate the underlying conviction or sentence, *see Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred ... if success in that action would necessarily demonstrate the invalidity of confinement or its duration." (emphasis in original)); *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (finding that a prisoner's claim for money damages alleging that he was deprived of good-time credits without due process necessarily implies the invalidity of the "punishment imposed," meaning the deprivation of the credits); *Baker v. New York State Dep't of Corr. & Cmty. Supervision*, No. 9:17-CV-1270 (GTS/TWD), 2018 WL 357297, at *4 (N.D.N.Y. Jan. 10, 2018) ("While the Complaint does not include any specific request for immediate release, in the motion for injunctive relief, Plaintiff seeks to overturn the Panel's decision and moves for immediate release[.] To the extent that the Complaint could be construed as seeking release, Plaintiff's claims are dismissed without prejudice pursuant to *Heck*, on the ground that habeas corpus is his sole federal remedy."); *McAllister v. Alexandra*, No. 9:09-

CV-0664 (GTS/DRH), 2009 WL 10675934, at *5 (N.D.N.Y. July 28, 2009) ("Any claim by Plaintiff that he is entitled to damages resulting from the denial of parole release is barred by the doctrine of *Heck v. Humphrey*[.]"); *Grant v. Ahern*, No. 03-CV-0539 (FJS/RFT), 2005 WL 1936175, at *5 n.3 (N.D.N.Y. Aug. 2, 2005) ("*Heck* has been held to apply to 'suits contesting the rejection of parole release.' " (quoting *Lampkin v. N.Y. City Dep't of Probation*, No. 00-CV-7165, 2001 WL 210362, at *2 (S.D.N.Y. Mar. 1, 2001)).

**\*4** Plaintiff is presently in DOCCS' custody and was when he filed this action. Moreover, the complaint lacks allegations which plausibly suggest that plaintiff's conviction has been reversed, expunged, declared invalid, or otherwise called into question by the issuance of a writ of habeas corpus. Thus, his Section 1983 claims are barred by *Heck* and its progeny. Accordingly, these Section 1983 claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 3. Fourteenth Amendment Claims - Parole Revocation

Judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions. *Mireless v. Waco*, 502 U.S. 9, 9-10 (1991). "Judicial immunity has been created both by statute and by judicial decision 'for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of the consequences.' " *Huminski v. Corsones*, 386 F.3d 116, 136-37 (2d Cir. 2004) (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967) (citation and internal quotation marks omitted)). "A judge is not protected under the doctrine of judicial immunity, however, if the action in question is not judicial in nature[.]" *Id.* at 138. "[U]nder the common law doctrine of judicial immunity, a judge is absolutely immune from a suit for monetary damages unless (1) the actions giving rise to the suit were 'not taken in the judge's judicial capacity' or (2) the suit arises from actions taken by the judge "in the complete absence of all jurisdiction." *Gonzalez v. Sharpe*, No. 1:06-CV-1023 (FJS/RFT), 2006 WL 2591065, at *2 (N.D.N.Y. Sep. 8, 2006) (citing *Huminski v. Corsones*, 386 F.3d at 138). "[A]cts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir.2009); *see also Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals*, 812 F.Supp.2d 357, 365 (S.D.N.Y. 2011) (holding that judicial immunity is applied when a government official performs "the function

of resolving disputes between parties, or of authoritatively adjudicating private rights.") (quoting *Antoine v. Byers & Anderson*, 508 U.S. 429, 435–36 (1993))).

"This immunity also extends to administrative officials performing functions closely associated with the judicial process because the role of the hearing examiner or administrative law judge ... is functionally comparable to that of a judge." *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) (citations and internal quotation marks omitted); *Moore v. Birmingham*, No. 06 CIV 12896, 2009 WL 413219, at *4 (S.D.N.Y. Feb. 13, 2009) (extending immunity "to administrative officials performing functions closely associated with the judicial process, including officials who preside over parole revocation hearings"); *Johnson v. Kelsh*, 664 F.Supp. 162, 165 (S.D.N.Y. 1987) (concluding that parole revocation hearings are quasi-judicial in nature).

Here, plaintiff's claims against Rinaldi arise from her conduct during the parole revocation hearing. Thus, in this case, the doctrine of judicial and quasi judicial immunity precludes plaintiff's action against and Rinaldi. Accordingly, plaintiff's claims are dismissed. *See Boddie v. New York State Div. of Parole*, No. 08-CV-911, 2009 WL 1033786, at *6 (E.D.N.Y. Apr. 17, 2009), *opinion modified on denial of reconsideration*, 2009 WL 1938981 (E.D.N.Y. July 7, 2009).

**\*5** "Parole officers [ ] receive absolute immunity for their actions in initiating parole revocation proceedings and in presenting the case for revocation to hearing officers, because such acts are prosecutorial in nature." *Scotto v. Almenas*, 143 F.3d 105, 112 (2d Cir. 1998) (citations omitted). Accordingly, plaintiff's claims against Lappino are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b). *See Miller v. Garrett*, 695 F.Supp. 740, 745 (S.D.N.Y. 1988) (reasoning that because the parole officer "performed a role comparable to a prosecutor in a criminal case," he was entitled to absolute immunity).

### 4. Malicious Prosecution

Plaintiff claims that Stucchi subjected him to malicious prosecution when he charged him with a parole violation. *See* Am. Compl. at 2.

To state a claim for malicious prosecution under either § 1983 or New York common law, a plaintiff must allege the (1) commencement of a criminal proceeding against him, (2)

Case 5:23-cv-01385-GTS-TWD Document 8 Filed 02/06/24 Page 85 of 101
WILLIE THOMAS GOSIER, Plaintiff, v. WILLIAM PAOLOZZI, et..., Slip Copy (2024)
2024 WL 340776

termination of the proceeding in plaintiff's favor, (3) lack of probable cause, and (4) institution of the proceedings by defendants with actual malice. *See Swartz v. Insogna*, 704 F.3d 105 (2d Cir. 2013). Here, plaintiff was reincarcerated due to his parole violations and therefore, has not obtained a favorable termination. *See Robinson v. Wright*, No. 5:21-CV-1098 (TJM/ML), 2022 WL 2663369, at *4 (N.D.N.Y. July 11, 2022), *report and recommendation adopted*, 2022 WL 4356214 (N.D.N.Y. Sept. 19, 2022).

Accordingly, plaintiff's malicious prosecution claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

### 5. Right to Privacy and Fourth Amendment

Plaintiff claims that Stucchi and Pezdek violated his right to privacy and subjected him to an unreasonable search when the searched his cell phone without consent or a warrant. *See* Am. Compl. at 3. In this instance, *Heck* bars these claims because plaintiff seeks "damages for the injury of conviction or imprisonment[.]" *See Paulson v. Kelly*, No. CV 20-2653, 2020 WL 3402421, at *3 (E.D. Pa. June 19, 2020) ("When a plaintiff challenges the legality of the underlying search and seizure of his cell phone, and that search and seizure provided evidence to support the conviction, any claims based on the illegal search and seizure of the cell phone are barred by *Heck*.") (citations omitted).

Accordingly, plaintiff's claims based on the illegal search and/ or seizure of his cell phone are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

### 6. Claims Related to Maximum Release Date

Plaintiff claims he is being held beyond his maximum release date, December 27, 2023. *See* Am. Compl. at 4.

Plaintiff is in DOCCS' custody and seeks "to be relieved of all obligations to parole." Am. Compl. at 1. Insofar as Plaintiff seeks his immediate release from prison, this claim is not cognizable in this Section 1983 action. In *Preiser v. Rodriguez*, 411 U.S. 475 (1973), the Supreme Court held that habeas corpus was the appropriate remedy for prisoners challenging the fact or duration of their confinement. *See id.* at 490; *see also Channer v. Mitchell*, 43 F.3d 786, 787 (2d Cir.1994) (noting that "habeas corpus—not a § 1983 action

—provides the sole federal remedy where a state prisoner challenges the fact or duration of his imprisonment ....") (citing *Preiser*, 411 U.S. at 488–90).

Therefore, to the extent plaintiff seeks his immediate release from incarceration, that claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted under Section 1983.

**\*6** "The detention of a prisoner beyond the maximum expiration date of his sentence may in some circumstances constitute cruel and unusual punishment in violation of the Eighth Amendment." *Washington v. NYS Parole*, No. 19-CV-0601, 2019 WL 1877343, at *2 (S.D.N.Y. Apr. 26, 2019) (citations omitted). Moreover, an inmate has a liberty interest in being released upon the expiration of his maximum term of imprisonment. *Calhoun v. New York State Div. of Parole Officers*, 999 F.2d 647, 653 (2d Cir. 1993). However, in this case, plaintiff's Eighth Amendment and Fourteenth Amendment due process claims are barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). *See Hatcher v. Doe #1*, No. 17-CV-0777, 2018 WL 1635022, at *3 (N.D.N.Y. Apr. 4, 2018) (dismissing the plaintiff's due process claims challenging the proper calculation and administration of his post-release supervision after concluding that they were barred by *Heck); Bonano v. Staniszewski*, No. 12-CV-5879, 2016 WL 11263168, at *6 (E.D.N.Y. Sept. 2, 2016) ("[P]laintiff claims that defendants miscalculated the maximum expiration date (or length) of his 2004 sentence and seeks to shorten the duration of his sentence on his valid conviction. This claim is barred by *Heck.")*, *report and recommendation adopted* 2017 WL 4220402 (E.D.N.Y. Sept. 22, 2017); *see also Lindsey v. Lutz*, No. 10 CIV. 3931, 2011 WL 2791329, at *3 (S.D.N.Y. June 16, 2011) (citing *Heck*, 512 U.S. at 487) (applying *Heck* to substantive due process claims), *report and recommendation adopted*, 2011 WL 3628846 (S.D.N.Y. Aug. 17, 2011); *see also D'Angelo v. Annucci*, No. 16-CV-6459, 2017 WL 6514692, at *7 (S.D.N.Y. Dec. 19, 2017) (finding the Eighth Amendment claims barred by *Heck* because "the entirety of Plaintiff's Eighth Amendment claim rests on the very fact of his confinement past his conditional release date" without challenges to the conditions of his confinement). The fact that plaintiff is seeking injunctive relief, in addition to monetary relief, does not require a different finding. *See Loyd v. Cuomo*, No. 8:14-CV-0829 (GLS/CFH), 2015 WL 3637409, at *2 (N.D.N.Y. June 10, 2015) ("[T]he Supreme Court has explained that the *Heck* rule applies 'no matter the relief

sought (damages or equitable relief).' ") (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005) and citing *Caswell v. Green*, 424 Fed. App'x 44, 45 (2d Cir. 2011)).

### 7. Retaliation

Plaintiff claims that "his P.O." is holding plaintiff beyond his maximum release date in retaliation for *Gosier I. See* Am. Compl. at 4. Even assuming this claim was not barred by *Heck*, it is nonetheless subject to dismissal.

To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting the following: (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against the plaintiff - namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action - in other words, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *see also Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004). The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489,491 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)). "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty*, 713 F.2d at 13.

As to the first element of a retaliation claim, plaintiff has sufficiently plead that he engaged in protected speech when he filed *Gosier I*. Even assuming plaintiff suffered an adverse action, the complaint lacks facts suggesting a causal connection between adverse action and *Gosier I*. Initially, the Court notes that plaintiff has not identified "his P.O." by name. Therefore, as discussed in Part II(C)(1) *supra*, the Court will not entertain claims asserted against individuals not named as defendants herein.

**\*7** Even assuming plaintiff's P.O. is a named defendant, the retaliation claims do not survive. "As a general matter,

it is difficult to establish one defendant's retaliation for complaints against another defendant." *Hare v. Hayden*, No. 09-CV-3135, 2011 WL 1453789 at \*4 (S.D.N.Y. Apr. 14, 2011). Here, plaintiff has not plead facts related to how "his P.O." became aware *Gosier I* or any connection between "his P.O." and the lawsuit. *See id.,* at \*4-5 (S.D.N.Y. Apr. 14, 2011) (holding that the plaintiff "fail[ed] to establish that [the defendant] had a motive to retaliate" against him for complaints filed against another corrections officer). Thus, there is no basis for the Court to infer a causal connection between the alleged adverse action and protected conduct. Accordingly, plaintiff has not plead a viable retaliation claim. *See Guillory v. Haywood*, No. 13-CV-1564 (MAD/ TWD), 2015 WL 268933, at \*23 (N.D.N.Y. Jan. 21, 2015) (concluding that the plaintiff failed to allege facts identifying the grievances and lawsuits from which the defendant's awareness could be inferred).

Accordingly, the First Amendment retaliation claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted pursuant to Section 1983.

### III. CONCLUSION
**WHEREFORE**, it is hereby

**ORDERED** that the amended complaint (Dkt. No. 10) is accepted for filing and is deemed the operative pleading; and it is further

**ORDERED** that the Clerk of the Court is directed to add S.P.O. Nicholas Pezdek ("Pezdek"), Administrative Law Judge Regina A. Rinaldi ("Rinaldi"), and Parole Revocation Specialist William Lappino ("Lappino") to the docket report as defendants herein; and it is further

**ORDERED** that the amended complaint is **DISMISSED** in accordance with 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1); and it is further

**ORDERED** that the Clerk shall enter judgment accordingly; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on plaintiff.

2024 WL 340776

**All Citations**

Slip Copy, 2024 WL 340776

---

**End of Document**
© 2024 Thomson Reuters. No claim to original U.S. Government Works.

**Haskell v. Cuomo, Not Reported in Fed. Supp. (2021)**

2021 WL 861802

Case 5:23-cv-01385-GTS-TWD    Document 8    Filed 02/06/24    Page 88 of 101

2021 WL 861802
Only the Westlaw citation is currently available.
For Online Publication Only
United States District Court, E.D. New York.

Alti HASKELL, #19004128, Plaintiff,
v.
Gov. Andrew CUOMO, David Hoovler,
District Attorney's Association, District
Attorney Madeline Singas, A.D.A. Gregory
Murphy, Judge William O'Brien, Defendants.

20-CV-3965 (JMA)(SIL)
|
Signed 03/08/2021

**Attorneys and Law Firms**

Alti Haskell, East Meadow, NY, pro se.

### ORDER

AZRACK, United States District Judge:

 **\*1**  Before the Court is the application to proceed in forma pauperis filed by incarcerated pro se plaintiff Alti Haskell ("Plaintiff") together with a civil rights complaint brought pursuant to 42 U.S.C. § 1983 ("Section 1983") against Governor Andrew Cuomo ("Gov. Cuomo"), David Hoovler ("Hoovler"), Nassau County District Attorney Madeline Singas ("DA Singas"), assistant district attorney Gregory Murphy ("ADA Murphy"), and Judge William O'Brien ("Judge O'Brien" and collectively, "Defendants"). The Court grants Plaintiff's request to proceed in forma pauperis and abstains from interfering in Plaintiff's on-going state court criminal proceedings. Additionally, the Court sua sponte dismisses the complaint pursuant to 28 U.S.C. §§ 1915 (e)(2) (B), 1915A(b) for the reasons that follow.

### I. BACKGROUND [1]

[1]
    All material allegations in the complaint are assumed to be true for the purpose of this Order, see, e.g., Rogers v. City of Troy, New York, 148 F.3d 52, 58 (2d Cir. 1998) (in reviewing a pro se complaint for sua sponte dismissal, a court is

required to accept the material allegations in the complaint as true).

Plaintiff's brief, handwritten complaint is submitted on the Court's Section 1983 complaint form and seeks to have this Court intervene in an on-going state court criminal prosecution. Indeed, among other things, Plaintiff seeks the dismissal of the indictment against him. [2] (Compl. ¶ III.) Plaintiff is awaiting trial and complains that he is asthmatic and at risk of contracting the COVID-19 virus while housed at the Nassau County Correctional Center. (Id. at 6.) Plaintiff alleges that his application for a compassionate release was opposed by ADA Murphy and denied by Judge O'Brien. (Id. at 6-7.)

[2]
    Plaintiff alleges that he was arraigned on July 18, 2020 and charged with criminal possession of a weapon in the second degree. (Compl. at 9.)

Plaintiff also complains that he "wanted to be present at the grand jury to exercise his right to testify, but his rights were not honored." (Id. at 9.) On August 22, 2019, Plaintiff was arraigned on additional charges, including criminal possession of a firearm, criminal possession of a controlled substance in the second degree, criminal sale of a controlled substance in the fifth degree, private sale or disposal of firearms, rifles, and shot guns, conspiracy in the second degree, and conspiracy in the fifth degree. (Id. at 10.) According to Plaintiff, his assigned counsel "waived plaintiff's rights to testify ... [at] the grand jury proceedings without consultation or consent by signing a waiver for re-indictment proceedings." [3] (Id.) Plaintiff also alleges that although ADA Murphy stated the People's readiness for trial on August 22, 2019, he alleges that subsequently (October 18, 2019, December 19, 2019, January 13, 2020, and February 28, 2020) ADA Murphy stated the People were not ready for trial. (Id. at 11.)

[3]
    Plaintiff also alleges that he "filed a CPL 190.50 motion because he was denied the right to testify and have his witnesses testify at grand jury on his behalf." (Compl. at 10.)

 **\*2**  In addition, Plaintiff alleges that Gov. Cuomo's March 13, 2020 declaration of a state of emergency due to the COVID-19 pandemic deprived Plaintiff of his speedy trial rights as guaranteed by the Sixth Amendment. (Id. at 11-12.) As a result, Plaintiff seeks an order from this Court dismissing the underlying criminal case against plaintiff. (Id. ¶ III, and at 14.) Apart from the caption, neither DA Singas nor

Haskell v. Cuomo, Not Reported in Fed. Supp. (2021)

Case 5:23-cv-01385-GTS-TWD   Document 8   Filed 02/06/24   Page 89 of 101

2021 WL 861802

Hoovler [4] are mentioned in the body of the complaint. See Compl. generally. Further, in addition to the dismissal of the indictment, Plaintiff seeks to recover a monetary award in the sum of $7.5 million, even though Plaintiff has left blank the space on the form complaint that calls for a description of any claimed injuries. (Id. ¶¶ II.A., III.)

[4]     Plaintiff names Hoovler and identifies him as employed by the District Attorney Association. See Compl. ¶ I, at 2. According to the complaint, the District Attorney Association "proposed to Gov. Andrew Cuomo that he suspend pretrial detainees CPL 30.30 and 240." Id. at 11.

## II. DISCUSSION

**A. In Forma Pauperis Application**

Upon review of Plaintiff's declaration in support of the application to proceed in forma pauperis, the Court finds that Plaintiff is qualified to commence this action without prepayment of the filing fee. 28 U.S.C. § 1915(a)(1). Therefore, Plaintiff's application to proceed in forma pauperis is granted.

**B. Standard of Review**

The Prison Litigation Reform Act requires a district court to screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint, or any portion of the complaint, if the complaint is "frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). Similarly, pursuant to the in forma pauperis statute, a court must dismiss an action if it determines that it "(i) is frivolous or malicious, (ii) fails to state a claim upon which relief may be granted, or (iii) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). The Court must dismiss the action as soon as it makes such a determination. 28 U.S.C. § 1915A(b).

Pro se submissions are afforded wide interpretational latitude and should be held "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam); see also Boddie v. Schnieder, 105 F.3d 857, 860 (2d Cir. 1997). In addition, the Court is required to read Plaintiff's pro se complaint liberally and interpret it to raise the strongest arguments it suggests. United States v. Akinrosotu, 637 F.3d 165, 167 (2d Cir. 2011) (per

curiam) (citation omitted); Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).

The Supreme Court has held that pro se complaints need not even plead specific facts; rather the complainant "need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (internal quotation marks and citations omitted); cf. Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). However, a pro se plaintiff must still plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678. While " 'detailed factual allegations' " are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " Id. at 678 (quoting Twombly, 550 U.S. at 555).

**C. Section 1983**

**\*3** Section 1983 provides:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured ....

42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979); Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999). In order to state a Section 1983 claim, a plaintiff must allege two essential elements. First, the conduct challenged must have been "committed by a person acting under color of state law." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010) (quoting Pitchell v. Callan, 13

Haskell v. Cuomo, Not Reported in Fed. Supp. (2021)

2021 WL 861802

F.3d 545, 547 (2d Cir. 1994)); see also Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful.") (internal quotation marks and citation omitted). Second, "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." Id.; see also Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999).

### i. Intervention in Pending State Criminal Proceedings

According to the information maintained by the New York State Unified Court System on its public database, the criminal charges against Plaintiff are currently pending. See https://iapps.courts.state.ny.us/webcrim (last visited on March 8, 2021). Under Younger v. Harris, 401 U.S. 37 (1971), and its progeny, the Court must dismiss any claims that Plaintiff asserts in which he asks the Court to intervene in his pending state criminal proceedings. It is long established that "a federal court may not enjoin a pending state-court criminal proceeding in the absence of special circumstances suggesting bad faith, harassment, or irreparable injury that is both serious and immediate." Lee v. Does 1 & 2, No. 20-CV-9290, 2020 WL 7264293, at *2-3 (S.D.N.Y. Dec. 9, 2020) (citing Gibson v. Berryhill, 411 U.S. 564, 573-74 (1973) (additional citation omitted)); see also Sprint Commc'ns, Inc. v. Jacobs, 134 S. Ct. 584, 588 (2013) ("Younger exemplifies one class of cases in which federal-court abstention is required: When there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution.").

Here, wholly absent from the complaint are any allegations of bad faith, harassment, or irreparable injury with respect to Plaintiff's on-going state-court criminal prosecution. See Compl., generally. Therefore, insofar as Plaintiff seeks to have this Court dismiss the indictments against him, this Court cannot intervene in his state criminal proceedings. Given this Court's abstention, such claims are thus dismissed. However, the Court cannot dismiss Plaintiff's damages claims under the Younger abstention doctrine. See, e.g., Kirschner v. Klemons, 225 F.3d 227, 238 (2d Cir. 2000) ("[A]bstention and dismissal are inappropriate when damages are sought ... even when a pending state [criminal] proceeding raises identical issues and [the federal district court] would dismiss otherwise identical claims for declaratory and injunctive relief."). However, such claims are not plausible for the reasons that follow.

### ii. There is No Federal Right to Testify or be Present at the Grand Jury

*4 It is well-established that "there is no federal constitutional right to testify before a grand jury, nor, for that matter, is there even a federal right to a grand jury in state criminal proceedings." See Franklin v. Warren Cty. D.A's Office, No. 08-CV-801, 2009 WL 161314, at *2 (N.D.N.Y. Jan. 21, 2009) (report and recommendation and order adopting report and recommendation) ("the lack of a preliminary hearing or appearance before the grand jury—do not implicate federal rights") (citing Burwell v. Supt. of Fishkill Corr. Fac., No. 06-CV-787, 2008 WL 2704319, at *8 (S.D.N.Y. July 10, 2008)) (citing, inter alia, Branzburg v. Hayes, 408 U.S. 665, 688 n.25 (1972)). Thus, insofar as Plaintiff seeks to bring a Section 1983 claim arising from the grand jury proceedings, such claims are implausible and are thus dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii), 1915A(b).

### iii. Speedy Trial

Plaintiff alleges that he was deprived of his right to a speedy trial as guaranteed by the Sixth Amendment and N.Y. C.P.L. § 30.30. However, "in order to adequately plead claims under Section 1983 that he was tried and convicted in violation of his Sixth Amendment right to a speedy trial, Plaintiff must allege that the state court criminal proceedings terminated in his favor." Bussey v. Devane, No. 13-CV-3660, 2013 WL 4459059, at *5 (E.D.N.Y. Aug. 16, 2013) (citing Montane v. Pettie, No. 10-CV-4404, 2012 WL 1617713, at *2 (E.D.N.Y. May 8, 2012)). Given that Plaintiff's state court criminal prosecution is on-going, he cannot allege that it terminated in his favor.

To the extent Plaintiff attempts to premise a federal speedy trial claim on CPL 30.30, any such claim is not plausible because, inter alia, "although CPL § 30.30 is entitled to a 'speedy trial' statute, the history of its adoption makes evident that it addresses only the problem of prosecutorial readiness, and is not a speedy trial statute in the constitutional sense." [5] Randolph v. Cuomo, No. 20-CV-4719, 2020 WL 6393015, at *4 (E.D.N.Y. Nov. 2, 2020) (citing People v. Haneigh, 745 N.Y.S.2d 405, 408 (Sup. Ct. Kings Cty. 2002)).

[5]     Moreover, as discussed below, the Court declines to exercise supplemental jurisdiction over any state law claims, including any state law claims based on CPL 30.30.

Haskell v. Cuomo, Not Reported in Fed. Supp. (2021)
2021 WL 861802

Accordingly, Plaintiff's speedy trial claim under § 1983, as pled, is not plausible and is dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

### iv. Personal Involvement

Although Plaintiff names DA Singas and Hoovler in the caption and the "Parties" section of the complaint, neither individual is again mentioned in the body of the complaint. See Compl., generally. In order to state a plausible claim for relief under Section 1983, a plaintiff must allege the personal involvement of the defendant in the alleged constitutional deprivation. Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010); McCoy v. Goord, 255 F. Supp. 2d 233, 245 (S.D.N.Y. 2003) (explaining that to state a Section 1983 claim for damages against an individual defendant, a plaintiff must allege specific facts to show that each defendant was directly or personally involved in the alleged violation, "that is, that there was 'personal participation by one who ha[d] knowledge of the facts that rendered the conduct illegal.' ") (quoting Provost v. City of Newburgh, 262 F.3d 146, 155 (2d Cir. 2001)). Where a Section 1983 claim fails to allege the personal involvement of the defendant, it fails as a matter of law. See Johnson v. Barney, 360 F. App'x 199, 201 (2d Cir. 2010).

Here, as is readily apparent, Plaintiff has not alleged that DA Singas and/or Hoovler were personally involved in any of the challenged conduct. Even affording the pro se complaint a liberal construction, to the extent that Plaintiff seeks to impose liability on DA Singas given the position she holds, he has not alleged a plausible supervisory liability claim. Indeed, an individual "cannot be held liable for damages under Section 1983 merely because he held a high position of authority." Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 127 (2d Cir. 2004); Randolph, 2020 WL 63930145, at *3 ("Liability under Section 1983 cannot be generally imposed on a supervisor solely based on his or her position."). Moreover, even if DA Singas was personally involved in the decisions to prosecute Plaintiff and to oppose his compassionate release motion (and there is no indication in the complaint that she was), DA Singas would be entitled to absolute immunity as set forth below. Accordingly, Plaintiff's Section 1983 claims against DA Singas and Hoovler are not plausible and are thus dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

### v. Immunity

**\*5** Plaintiff's Section 1983 claims seeking damages are implausible because immunity bars these claims. "[J]udges generally have absolute immunity from suits for money damages for their judicial actions" and "even allegations of bad faith or malice cannot overcome judicial immunity." Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009). Absolute immunity protects a judge from damages suits "unless [s]he 'acted in the clear absence of all jurisdiction.' " McKeown v. N.Y. State Comm'n on Judicial Conduct, 377 F. App'x 121, 123-24 (2d Cir. 2010) (summary order) (quoting Tucker v. Outwater, 118 F.3d 930, 933 (2d Cir. 1997)). Similarly, prosecutors are also eligible for such immunity. See Berlin v. Meijias, 15-CV-5308, 2017 WL 4402457, at *3 (E.D.N.Y. Sept. 30, 2017) (citing McKeown, 377 F. App'x at 124 ("Prosecutors, ... are eligible for absolute immunity....")). The Second Circuit has long held that "prosecutors sued under 42 U.S.C. § 1983 are entitled to absolute immunity from claims for damages arising out of prosecutorial duties that are intimately associated with the judicial phase of the criminal process." Parkinson v. Cozzolino, 238 F.3d 145, 150 (2d Cir. 2001) (internal citation and quotation marks omitted). Prosecutors are entitled to absolute immunity with respect to their "prosecutorial functions," which include their actions "as advocates and when their conduct involves the exercise of discretion." Flagler v. Trainor, 663 F.3d 543, 547 (2d Cir. 2011).

In addition, the Eleventh Amendment divests this Court of subject matter jurisdiction over any claim for monetary damages against a state actor acting in his or her official capacity. See Kentucky v. Graham, 473 U.S. 159, 169 (1985) ("The Court has held that, absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court."). "It is well-established that New York State has not consented to Section 1983 suits in federal court ... and that Section 1983 was not intended to override a state's sovereign immunity." Mamot v. Board of Regents, 367 F. App'x 191, 192 (2d Cir. 2010) (internal citation omitted).

Here, Judge O'Brien is alleged to have presided over pre-trial proceedings in Plaintiff's underlying state court criminal case and Plaintiff challenges his ruling relating to his motion for compassionate release filed during such proceedings. Likewise, ADA Murphy is the assistant district attorney who, on behalf of the People of the State of New York, opposed Plaintiff's motion during those proceedings. Because the conduct by Judge O'Brien and ADA Murphy as alleged by Plaintiff was clearly within the scope of their respective duties

**Haskell v. Cuomo, Not Reported in Fed. Supp. (2021)**
Case 5:23-cv-01385-GTS-TWD   Document 8   Filed 02/06/24   Page 92 of 101

2021 WL 861802

during the underlying state criminal prosecutions, together with the absence of any allegations that they acted "in clear absence of all jurisdiction", they are shielded by prosecutorial immunity. Corley v. Wittner, 811 F. App'x 62, 63 (2d Cir. 2020) (summary order) ("The district court correctly held that the state court judge and prosecutors were absolutely immune from suit as to [plaintiff's] speedy trial ... claims.") (citations omitted).

Similarly, to the extent that Judge O'Brien, ADA Murphy, DA Singas, and Gov. Cuomo are being sued in their official capacities, they are protected by sovereign immunity as guaranteed by the Eleventh Amendment. See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.") (citations omitted); see also Amaker v. N.Y. State Dep't of Corr. Servs., 435 F. App'x 52, 54 (2d Cir. 2011) (holding that a district attorney and an assistant district attorney "benefited from New York's Eleventh Amendment immunity against suit" because they were sued in their official capacities) (citing Ying Jing Gan v. City of New York, 996 F.2d 522, 529 (2d Cir. 1993)) (holding that district attorney represents the state, not the county, and so is entitled to Eleventh Amendment immunity); Morisset v. Cty. of Nassau, No. 16-CV-3908, 2017 WL 5312135, at *3 (E.D.N.Y. Nov. 13, 2017) ("Plaintiff's claims against DA Singas must also be dismissed because state officials acting in their official capacities are protected by sovereign immunity as guaranteed by the Eleventh Amendment.").

**\*6** Here, insofar as Plaintiff seeks monetary damages from Judge O'Brien, ADA Murphy, DA Singas, and Gov. Cuomo, the Eleventh Amendment precludes Plaintiff's Section 1983 claims. Accordingly, Plaintiff's Section 1983 claims against Judge O'Brien, ADA Murphy, DA Singas, and Gov. Cuomo are implausible and are dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii)-(iii), 1915A(b).

#### vi. State Law Claims

Under 28 U.S.C. § 1367(a), "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." However, courts "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." Id. § 1367(c); (c)(3); see Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 245 (2d Cir. 2011). The Supreme Court explained: "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988).

Here, given the absence of a viably pled federal law claim, the interests of judicial economy, convenience, fairness, and comity weigh in favor of not exercising supplemental jurisdiction at this time over any state law claims, including Plaintiff's purported speedy trial claim under CPL 30.30, that may be reasonably construed from the complaint. Accordingly, the Court declines to exercise supplemental jurisdiction over any potential state-law claims contained in Plaintiff's complaint and dismisses any such claims without prejudice.

### III. LEAVE TO AMEND

A pro se plaintiff should ordinarily be given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Shomo v. City of New York, 579 F.3d 176 (2d Cir. 2009) (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795-96 (2d Cir. 1999)) (internal quotation marks omitted)). Indeed, a pro se plaintiff who brings a civil rights action, "should be 'fairly freely' afforded an opportunity to amend his complaint." Boddie v. New York State Div. of Parole, No. 08-CV-911, 2009 WL 1033786, at *5 (E.D.N.Y. Apr. 17, 2009) (quoting Frazier v. Coughlin, 850 F.2d 129, 130 (2d Cir. 1988)) (internal quotation marks omitted). However, while "pro se plaintiffs are generally given leave to amend a deficient complaint, a district court may deny leave to amend when amendment would be futile." Id. (citations omitted).

Here, the Court has carefully considered whether Plaintiff should be granted leave to amend his complaint. Because the defects in Plaintiff's claims are substantive and could not be cured in an amended pleading, leave to amend the complaint is denied.

2021 WL 861802

### IV. CONCLUSION

For the forgoing reasons, Plaintiff's application to proceed in forma pauperis is granted, but Plaintiff's Section 1983 claims are sua sponte dismissed for failure to allege a plausible claim for relief pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and dismisses any such claims without prejudice to Plaintiff pursuing such claims in state court.

*7  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2021 WL 861802

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Henderson v. Fludd, Not Reported in Fed. Supp. (2019)

2019 WL 4306376

2019 WL 4306376
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Dwayne HENDERSON, #18002983, Plaintiff,
v.
Sheriff Vera FLUDD, Nassau County Sheriff;
Bridget Murphy, Newsday Reporter; District
Attorney Madeline Singas, Defendants.

19-CV-02675 (JMA)(AYS)
|
Signed 09/11/2019

**Attorneys and Law Firms**

Dwayne Henderson, East Meadow, NY, pro se.

**ORDER**

AZRACK, United States District Judge:

 **\*1** On May 6, 2019, incarcerated pro se plaintiff Dwayne
Henderson ("plaintiff") commenced this action against
Nassau County Sheriff Vera Fludd ("Sheriff Fludd"), Bridget
Murphy, who is alleged to be a reporter with Newsday
("Murphy"), and Nassau County District Attorney Madeline
Singas ("D.A. Singas" and collectively, "defendants")
pursuant to 42 U.S.C. § 1983 ("Section 1983"), alleging
a deprivation of his constitutional rights. Accompanying
the complaint is an application to proceed in forma
pauperis. However, plaintiff did not file the required Prisoner
Litigation Authorization Form ("PLRA") with the complaint.
Accordingly, by Notice of Deficiency also dated May 6, 2019
("Notice"), plaintiff was instructed to complete and return the
enclosed PLRA within fourteen (14) days from the date of
the Notice in order for his case to proceed. On May 15, 2019,
plaintiff timely filed the PLRA.

The Court grants plaintiff's request to proceed in forma
pauperis and, for the reasons that follow, plaintiff's claims
seeking injunctive relief are dismissed without prejudice and
plaintiff's claims seeking damages are stayed pending the
conclusion of the underlying criminal prosecution.

**I. BACKGROUND** [1]

[1]    All material allegations in the complaint are
assumed to be true for the purpose of this Order,
see, e.g., Rogers v. City of Troy, New York, 148
F.3d 52, 58 (2d Cir. 1998) (in reviewing a pro
se complaint for sua sponte dismissal, a court is
required to accept the material allegations in the
complaint as true).

Plaintiff's brief complaint is submitted on the Court's Section
1983 complaint form. In its entirety, plaintiff's statement of
claim alleges that, on December 17, 2018, at the Nassau
County Correctional Center: [2]

> Monday December 17[th] 2018 my
> cell was search. Officers came out
> my cell with a folded piece of paper
> that contained medication foot powder.
> These officers place me Ad/Seg for
> drug possession falsifying a report
> that the powder found was tested
> for a drug called ketamine. Vera
> Fludd Sheriff knew these allegations
> were false and falsely confined me.
> Causing this incident to reach the
> media. District Attorney Madeline
> Singas has violated my rights to a fair
> trial my Sixth Amendment. Madeline
> Singas office release my name to
> the public solely to heighten public
> condemnation of the accused. There
> was absolutely no reason to use a case
> I wasn't charged on with connection
> to jailhouse allegation I wasn't charged
> on. Putting that information into the
> public domain during my trial creates
> a substantial risk of prejudicing the
> trial. The Newspaper article was
> for no legitimate law enforcement
> purpose. Madeline Singas ignored
> my right to a fair trial guarantee
> to me by the US Constitution
> Sixth Amendment. Madeline Singas
> inexplicably and unlawfully created

Henderson v. Fludd, Not Reported in Fed. Supp. (2019)

2019 WL 4306376

embarrassing negative press attention
during my trial.

(Compl. ¶ II.) As a result, plaintiff claims to have suffered a
"violation of Constitutional Amendment right to a fair trial,
falsely confined, mental anguish. Defamation of character,
emotion distress, pain and suffering, falsely accused, cruel
and unusual punishment" for which he seeks to recover a
damages award in the total sum of $100 million as well as
have his "name erased from the public domain." (Id. ¶¶ II.A.,
III.)

2       Excerpts from the complaint are reproduced here
exactly as they appear in the original. Errors in
spelling, punctuation and grammar have not been
corrected or noted.

## II. DISCUSSION

### A. *In Forma Pauperis* Application

 **\*2** Upon review of plaintiff's declaration in support of
the application to proceed in forma pauperis, the Court
finds that plaintiff is qualified to commence this action
without prepayment of the filing fee. 28 U.S.C. § 1915(a)(1).
Therefore, plaintiff's application to proceed in forma pauperis
is granted.

### B. Standard of Review

The Prison Litigation Reform Act requires a district court
to screen a civil complaint brought by a prisoner against a
governmental entity or its agents and dismiss the complaint,
or any portion of the complaint, if the complaint is "frivolous,
malicious, or fails to state a claim upon which relief may be
granted." 28 U.S.C. § 1915A(b)(1). Similarly, pursuant to the
in forma pauperis statute, a court must dismiss an action if
it determines that it "(i) is frivolous or malicious, (ii) fails to
state a claim upon which relief may be granted, or (iii) seeks
monetary relief from a defendant who is immune from such
relief." 28 U.S.C. § 1915(e)(2)(B). The Court must dismiss
the action as soon as it makes such a determination. 28 U.S.C.
§ 1915A(b).

Pro se submissions are afforded wide interpretational latitude
and should be held "to less stringent standards than formal
pleadings drafted by lawyers." Haines v. Kerner, 404 U.S.
519, 520 (1972) (per curiam); see also Boddie v. Schnieder,

105 F.3d 857, 860 (2d Cir. 1997). In addition, the Court is
required to read the plaintiff's pro se complaint liberally and
interpret it as raising the strongest arguments it suggests.
United States v. Akinrosotu, 637 F.3d 165, 167 (2d Cir. 2011)
(per curiam) (citation omitted); Harris v. Mills, 572 F.3d 66,
72 (2d Cir. 2009).

The Supreme Court has held that pro se complaints need not
even plead specific facts; rather the complainant "need only
give the defendant fair notice of what the ... claim is and the
grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89,
93 (2007) (internal quotation marks and citations omitted);
cf. Fed. R. Civ. P. 8(e) ("Pleadings must be construed so
as to do justice."). However, a pro se plaintiff must still
plead "enough facts to state a claim to relief that is plausible
on its face." Bell Atlantic Corp. v. Twombly, 550 U.S.
544, 570 (2007). "A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the
misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678
(2009) (citations omitted). The plausibility standard requires
"more than a sheer possibility that a defendant has acted
unlawfully." Id. at 678. While " 'detailed factual allegations'
" are not required, "[a] pleading that offers 'labels and
conclusions' or 'a formulaic recitation of the elements of a
cause of action will not do.' " Id. at 678 (quoting Twombly,
550 U.S. at 555).

### 1. Abstention

Federal courts ordinarily must abstain from exercising
jurisdiction over constitutional claims seeking declaratory
or injunctive relief when: "1) there is an ongoing state
proceeding; 2) an important state interest is implicated in that
proceeding; and 3) the state proceeding affords the federal
plaintiff an adequate opportunity for judicial review of the
federal constitutional claims." Diamond "D" Constr. Corp.
v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002); see also
Younger v. Harris, 401 U.S. 37(1971).

 **\*3** In Sprint Communications, Inc. v. Jacobs, 571 U.S. 69
(2013), "the Supreme Court rejected this three-part test in
favor of a categorical approach." Mir v. Shah, 569 F. App'x
48, 50 (2d Cir. 2014) (summary order) (citing Sprint, 571
U.S. at 77–82). Instead, the Supreme Court held that the
Younger abstention doctrine applies only to three classes of
state court proceedings: (1) "state criminal prosecutions"; (2)
"civil enforcement proceedings"; and (3) civil proceedings
that "implicate a State's interest in enforcing the orders and
judgments of its courts." Sprint, 571 U.S. at 73, 78 (internal

Case 5:23-cv-01385-GTS-TWD   Document 8   Filed 02/06/24   Page 96 of 101

Henderson v. Fludd, Not Reported in Fed. Supp. (2019)

2019 WL 4306376

quotation marks and citations omitted) ("We have not applied <u>Younger</u> outside these three 'exceptional' categories, and today hold ... that they define <u>Younger</u>'s scope.").

Here, insofar as plaintiff seeks injunctive relief relating to his on-going state court criminal prosecution,[3] the Supreme Court's categorical approach requires this Court to abstain under the <u>Younger</u> abstention doctrine. Accordingly, plaintiff's claims for injunctive relief are implausible and are thus dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

[3]     Plaintiff is awaiting trial under Nassau County Court-Criminal Term case number 01678N-2018 having pled not guilty to, among other charges, felony drug possession and assaulting an officer.

Unlike claims for declaratory and injunctive relief, the Second Circuit has held that claims for monetary damages should not be dismissed under <u>Younger</u> abstention. Kirschner v. Klemons, 225 F.3d 227, 238 (2d Cir. 2000). However, given that plaintiff's claims are closely intertwined with the on-going criminal case, prosecution of such claims in this Court at this juncture would be premature. Accordingly, plaintiff's claims seeking damages are stayed pending the conclusion of the underlying criminal case. Therefore, the Clerk of the Court shall administratively close this case. Plaintiff may request, in writing, that this case be re-opened within

two (2) weeks of the conclusion of his state court criminal proceedings, if so warranted at that time.

## III. CONCLUSION

For the forgoing reasons, the plaintiff's application to proceed in forma pauperis is granted. However, plaintiff's claims seeking injunctive relief are sua sponte dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1) and plaintiff's remaining claims seeking damages are stayed pending the conclusion of the underlying criminal case. The Clerk of the Court shall administratively close this case. Plaintiff may request, in writing, that this case be re-opened within two (2) weeks of the conclusion of his state court criminal proceedings, if so warranted at that time.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 4306376

---

2009 WL 161314
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Harry L. FRANKLIN, Plaintiff,
v.
WARREN COUNTY D.A.'s OFFICE, et al., Defendants.

Civ. No. 1:08–CV–801 (GLS/RFT).
|
Oct. 10, 2008.

West KeySummary

**1**   **Civil Rights**  Criminal prosecutions

**Constitutional Law**  Appearance and testimony of accused

**Grand Jury**  Presence of accused or counsel

A convicted defendant's due process rights were not violated when he was denied or prevented from appearing before a grand jury as there was no federal constitutional right to testify before a grand jury. Many of defendant's claims resonated as challenges to his underlying conviction and thus were not cognizable pursuant to an action under § 1983 for civil rights violations. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

8 Cases that cite this headnote

**Attorneys and Law Firms**

Harry L. Franklin, Ray Brook, NY, pro se.

No Appearance on Record for the Defendants.

*REPORT RECOMMENDATION and ORDER*

RANDOLPH F. TREECE, United States Magistrate Judge.

**\*1**  The Clerk has sent to the Court for review a civil rights Complaint, pursuant to 42 U.S.C. § 1983, from *pro*

*se* Plaintiff Harry L. Franklin, who is currently incarcerated at Adirondack Correctional Facility. Dkt. No. 1, Compl. Plaintiff has also filed a Motion to Proceed *In Forma Pauperis* and an Inmate Authorization Form. Dkt. Nos. 2–3. By his Complaint, Plaintiff asserts that Kate Hogan, the District Attorney who criminally prosecuted him in Warren County Court, and John Wappett, the Public Defender who represented him, violated Franklin's Fourteenth Amendment due process right when they denied and/or prevented him from appearing before the grand jury. Franklin also accuses Ms. Hogan of violating his right to a speedy trial. Lastly, Plaintiff asserts that the Honorable John Hall, Jr., violated his Eighth Amendment right against excessive bail. For a complete statement of Plaintiff's claims, reference is made to the Complaint.

**II. DISCUSSION**

**A. *In Forma Pauperis* Application**

Turning first to Plaintiff's Motion to Proceed with this Action *In Forma Pauperis,* after reviewing the entire file, the Court finds that Plaintiff may properly proceed with this matter *in forma pauperis.*

**B. Plaintiff's Complaint**

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis,* "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Moreover, under 28 U.S.C. § 1915A, a court must, as soon as practicable, *sua sponte* review "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employees of a governmental agency" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who

is immune from such relief." 28 U.S.C. §§ 1915A(a) & (b); *see also Carr v. Dvorin,* 171 F.3d 115, 116 (2d Cir.1999) (*per curiam* ).

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which "establishes a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortgage Corp.,* 885 F.Supp. 537, 573 (S.D.N.Y.1995) (quoting *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990) & 42 U.S.C. § 1983); *see also Myers v. Wollowitz,* 1995 WL 236245, at *2 (N.D.N.Y. Apr.10, 1995) (stating that " § 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights").

 **\*2**  Plaintiff's 1983 action is problematic on multiple fronts. First, he fails to state causes of action for which relief can be granted; second, he has named parties who are absolutely immune from suit; third, at least one party has not acted under color of state law; and, fourth, the entire action is barred by *Heck v. Humphrey.* We address each of these obstacles below.

Plaintiff claims his due process rights and his right to confront his accuser were violated when Defendants Hogan and Wappett impeded his ability to attend the grand jury proceedings. However, there is no federal constitutional right to testify before a grand jury, nor, for that matter, is there even a federal right to a grand jury in state criminal proceedings. *Burwell v. Supt. of Fishkill Corr. Fac .,* 2008 WL 2704319, at *8 (S.D.N.Y. July 10, 2008) (citing, *inter alia, Branzburg v. Hayes,* 408 U.S. 665, 688 n. 25, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972)). Aside from failing to state actionable constitutional claims, at least two of the named Defendants, Kate Hogan and Judge Hall, are absolutely immune from suit. *Young v. Selsky,* 41 F.3d 47, 51 (2d Cir.1994) (noting that "[j]udges enjoy absolute immunity from personal liability for acts committed within their judicial jurisdiction"); *Collins v. Lippman,* 2005 WL 1367295, at *3 (E.D.N.Y. June 8, 2005) (judicial immunity applies to actions seeking monetary and injunctive relief); *see also Dory v. Ryan,* 25 F.3d 81, 83 (2d Cir.1994) (noting that prosecutors are absolutely immune from liability under § 1983 in matters involving the prosecution). And, with regard to Defendant Wappett, it is well-settled that parties may not be held liable under § 1983 unless it can be established that they have acted under the color of state law. *See, e.g., Rounseville v. Zahl,* 13 F.3d 625 (2d Cir.1994) (noting state action requirement under § 1983); *Wise v. Battistoni,* 186 A.D.2d 629, 588 N.Y.S.2d 412,

1992 WL 280914, at *1 (S.D.N.Y. Dec. 10, 1992) (same) (citations omitted). State action is an essential element of any § 1983 claim. *See Gentile v. Republic Tobacco Co.,* 1995 WL 743719, at *2 (N.D.N.Y. Dec.6, 1995) (citing *Velaire v. City of Schenectady,* 862 F.Supp. 774, 776 (N.D.N.Y.1994) (citation omitted). Nowhere in his Complaint does Plaintiff allege that Mr. Wappett was acting under color of state law, and indeed, it is clear that a public defender, in representing an indigent client, is not acting under color of state law. *Polk County v. Dodson,* 454 U.S. 312, 321, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Bourdon v. Loughren,* 386 F.3d 88, 90 (2d Cir.2004) (noting that a claim for ineffective assistance of counsel is not actionable in a § 1983 proceeding and further citing *Polk County* for the proposition that public defenders do not act under color of state law and are not subject to suit under § 1983). We note that in the caption of his Complaint, Plaintiff names the Warren County D.A.'s Office and the Warren County Public Defenders, however, these entities are not listed under the "Parties" section of his Complaint, nor does he assert any facts or causes of action against such entities. Because we find that the employees of these entities are not subject to suit under § 1983, it follows that, in the absence of any specific allegations of wrongdoing, no cause of action would ensue against these entities.

 **\*3**  Aside from the litany of reasons stated above why this § 1983 action cannot proceed under 28 U.S.C. § 1915(e), Plaintiff's Complaint suffers from a more dire quandary. Many of Plaintiff's claims herein resonate as challenges to his underlying conviction, namely, questioning the speediness by which he was brought before a grand jury, whether he was denied the right to confront his accusers in a grand jury, whether his own attorney hampered his ability to face such accusers, and whether the judge imposed excessive bail. To some extent, were any of these matters decided in Plaintiff's favor, it could call into question the validity of his underlying conviction for which he is currently serving time in prison. The Supreme Court has held that

> in order to recover damages for
> allegedly unconstitutional conviction
> or imprisonment, or for other harm
> caused by actions whose unlawfulness
> would render a conviction *or sentence*
> invalid, a § 1983 plaintiff must
> prove that the conviction or sentence
> has been reversed on direct appeal,
> expunged by executive order, declared

invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction *or sentence* that has *not* been so invalidated is not cognizable under § 1983.

*Heck v. Humprhey,* 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) (emphasis added). In this regard, it appears that § 1983 is not the proper vehicle for Plaintiff to seek judicial review of the claims herein.

**WHEREFORE,** it is hereby

**ORDERED,** that Plaintiff's *in Forma Pauperis* Application (Dkt. No. 2) is **granted;** and it is further

**ORDERED,** that the Clerk provide the Superintendent of the facility, designated by Plaintiff as his current location, with a copy of Plaintiff's Inmate Authorization Form (Dkt. No. 3), and notify the official that this action has been filed and that Plaintiff is required to pay the entire statutory filing fee of $350 .00 pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED,** that the Clerk provide a copy of Plaintiff's Inmate Authorization Form to the Financial Deputy of the Clerk's Office; and it is further

**RECOMMENDED,** that the entire Complaint be **dismissed** pursuant to 28 U.S.C. § 1915A, 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief can be granted and for naming Defendants protected by absolute immunity, or, in the alternative, pursuant to the dictates of *Heck v. Humphrey;* and it is further

**ORDERED,** that the Clerk serve a copy of this Report Recommendation and Order on Plaintiff by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human*

*Servs. .,* 892 F.2d 15 (2d Cir.1989)); *see also* 28 U.S.C. § 636(b) (1); FED. R. CIV. P. 72, 6(a), & 6(e).

**\*4  IT IS SO ORDERED.**

**HARRY L. FRANKLIN,**

**Plaintiff,**

**v.**

**WARREN COUNTY D.A.'S OFFICE; WARREN COUNTY PUBLIC DEFENDERS; JUDGE JOHN HALL, JR.,** *County Court Judge;* **JOHN WAPPETT,** *Public Defender;* **KATE HOGAN,** *Warren County District Attorney,*

**Defendants.**

### *MEMORANDUM–DECISION AND ORDER*

GARY L. SHARPE, District Judge.

### I. *Background*

*Pro se* inmate Harry L. Franklin ("Franklin") brings this action against defendants alleging violations of his constitutional rights and seeking monetary damages under 42 U.S.C. § 1983. Specifically, Franklin asserts that Warren County District Attorney Kate Hogan ("Hogan") and Public Defender John Wappett ("Wappett") violated his due process rights during his state criminal prosecution because he was not provided a preliminary hearing or allowed to appear before the grand jury. Franklin further alleges that his Eighth Amendment right against excessive bail was violated by Judge John Hall ("Judge Hall").

On October 10, 2008, Magistrate Judge Randolph F. Treece granted Franklin's *in forma pauperis* application, and *sua sponte* addressed the sufficiency of his complaint pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2)(B). Judge Treece's report-recommendation [1] ("R & R") recommended that Franklin's complaint be dismissed because: 1) it fails to state a claim for which relief can be granted; 2) it names parties who are absolutely immune from suit or did not act under color of state law; and 3) the action is barred by *Heck v. Humphrey.* (Dkt. No. 6.) Pending are Franklin's timely objections to the R & R. (Dkt. No. 7.) For the reasons that follow, and those stated in the R & R, Franklin's complaint is dismissed in its entirety.

Franklin v. Warren County D.A.'s Office, Not Reported in F.Supp.2d (2009)

2009 WL 161314

1     The Clerk is directed to append Judge Treece's report-recommendation, and familiarity therewith is assumed.

## II. *Discussion*

Before entering final judgment, this court reviews all report-recommendations in cases it has referred to a Magistrate Judge. If a party has objected to specific elements of the Magistrate Judge's findings and recommendations, the court reviews those particular findings and recommendations *de novo. See Green v. Foley,* No. 05–cv–0629, 2007 WL 3232268, at *1 (N.D.N.Y. Oct.31, 2007) (citation omitted). Even in those cases where no party has filed an objection, or only a vague, general, and/or partial objection has been filed, the court reviews the unchallenged findings and recommendations of a Magistrate Judge under a clearly erroneous standard. *See id.*

Here, Franklin objects to Judge Treece's R & R on multiple grounds. Franklin contends that Wappett, Hogan and Judge Hall are all amenable to suit under § 1983 as state officials being sued in their official capacity. He further asserts that *Heck* does not bar his claims because he is not challenging his conviction or sentence. Finally, Franklin contends that his inability to appear before the grand jury or at a preliminary hearing, and Judge Hall's imposition of an excessive bail amount, violated his Fourteenth and Eighth Amendment rights. The court reviews these objections *de novo,* and the remainder of the report for clear error.

**\*5** Initially, the court notes that Franklin's Fourteenth Amendment claims are not cognizable under § 1983, as the factual basis for such claims—the lack of a preliminary hearing or appearance before the grand jury—do not implicate federal rights. *See, e.g., Burwell v. Supt. of Fishkill Corr. Fac.,* No. 06 Civ. 787, 2008 WL 2704319, at *8 (S.D.N.Y. July 10, 2008) (citing *Branzburg v. Hayes,* 408 U.S. 665, 688 n. 25, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972)); *Bilbrew v. Garvin,* No. 97–CV–1422, 2001 WL 91620, at *9 (E.D.N.Y. Jan. 10, 2001) (citing *Gerstein v. Pugh,* 420 U.S. 103, 118–19, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Hurtado v. California,* 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884)).

Aside from this deficiency, Franklin's suit may not be maintained against Judge Hall or Hogan because they are entitled to absolute immunity in their personal capacities and sovereign immunity in their official capacities as state officials. *See Young v. Selsky,* 41 F.3d 47, 51 (2d Cir.1994) (reciting that "[j]udges enjoy absolute immunity from personal liability for acts committed within their judicial jurisdiction"); *Dory v. Ryan,* 25 F.3d 81, 83 (2d Cir.1994) (stating "that absolute immunity protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate"); *see also Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993) (state officials sued under § 1983 in their official capacity are entitled to sovereign immunity); *Baez v. Hennessy,* 853 F.2d 73, 77 (2d Cir.1988) (holding that county D.A.'s are state officials for purposes of their prosecutorial decisions, not municipal officials); *Myers v. Cholakis,* No. 8:08–CV–126, 2008 WL 5147042, at *1 (N.D.N.Y. Dec.5, 2008) (granting state judge sued in her official capacity sovereign immunity). Additionally, Wappett is not amenable to suit in his personal capacity because public defenders representing indigent clients are not acting under color of state law, as required for liability to attach pursuant to § 1983. *See Polk County v. Dodson,* 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Rodriguez v. Weprin,* 116 F.3d 62, 65–66 (2d Cir.1997).

Finally, to the extent Franklin brings suit against the Warren County District Attorney's Office, the Warren County Public Defender's Officer, and Wappett in their official capacities, his suit is in reality one against Warren County as a municipality. *See Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). However, Franklin's only potentially tenable claim here—that for excessive bail under the Eighth Amendment—is clearly stated solely against Judge Hall. As the court has indicated, *supra,* Judge Hall and Hogan are considered state officials to the extent they are sued in their official capacity under § 1983 for their judicial and prosecutorial acts. Thus Warren County, as a municipality, cannot be held liable for such acts. See *Baez,* 853 F.2d at 77 (finding that DA's prosecutorial actions were taken as state officer such that County could not be held liable for them). Further, municipal liability lies under § 1983 only where constitutional injury is inflicted pursuant to a municipal policy or custom. *See Monell v. Dept. of Soc. Servs. of the City of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Accordingly, Franklin's claims of municipal liability also fail in the present instance because there is no indication that any of his federal rights were violated pursuant to a Warren County policy or custom.

2009 WL 161314

### III. *Conclusion*

 **\*6**  For the reasons discussed above, Franklin cannot maintain suit against any of the named defendants in their personal or official capacities, and his complaint must therefore be dismissed. Accordingly, the court finds it unnecessary to address Franklin's objections to Judge Treece's finding that the present action is barred by *Heck*.

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that Judge Treece's Report and Recommendation (Dkt. No. 6) is adopted to the extent it is consistent with this opinion; and it is further

**ORDERED** that this action is DISMISSED pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2)(B); and it is further

**CERTIFIED** pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this matter would not be taken in good faith; and it is further

**ORDERED** that the Clerk of the Court serve a copy of this Order on the parties by regular mail.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 161314

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.